AMY JANE LONGO Cal. Bar No. 198304
Email: longoa@sec.gov
JUNLING MA Cal. Bar No. 213241
Email: maj@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Lorraine B. Echavarria, Associate Regional Director
John W. Berry, Regional Trial Counsel
444 South Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>     vs.<br><br>CAPITAL COVE BANCORP LLC;<br>CHRISTOPHER M. LEE aka<br>RASHID K. KHALFANI,<br>            Defendants. | Case No. SACV 15-00980 JLS(JCx)<br><br>**COMPLAINT**<br><br>**(FILED UNDER SEAL)**<br><br>**UNDER SEAL** |



Plaintiff Securities and Exchange Commission (the "SEC") alleges as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) and 77v(a); Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa; and Sections 209(d)-(e) and 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-9(d)-(e) and 80b-14.

2. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce or of the mails, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a); Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14, because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because both defendants reside in this district.

## SUMMARY

4. This is an action brought to halt an ongoing offering fraud by defendant Capital Cove Bancorp LLC ("CCB"), formerly an SEC-registered investment adviser, and defendant Christopher M. Lee, alias Rashid K. Khalfani ("Lee"), CCB's founder, owner, managing partner, chief compliance officer and sole control person (collectively with CCB, "Defendants"). Defendants raised at least $1.9 million from over fifteen U.S. investors over a two-year period by falsely claiming to invest proceeds in distressed real estate when in fact, they misappropriated investors' money. To date, Defendants have misappropriated 94% of the nearly $2 million invested with them.

5. To effectuate their scheme, CCB and/or Lee formed two private investment funds, the Rittenhouse Square Trust, LLC (the "Rittenhouse Fund"), and the Capital Cove REO Opportunities Fund II, LLC (the "REO Fund II") (collectively, the "Funds"), purportedly to invest in real estate for investors. Yet the Funds held no real estate for investors as CCB and Lee had promised; instead, Defendants pocketed the investors' money or used it to buy real estate for themselves. CCB and Lee made multiple misrepresentations to entice investors to invest with them, including falsely boasting online and in printed marketing materials that the Fund was "vetted, qualified and registered" with the SEC and several other government and regulatory

agencies, and administered by a third-party. Further, Defendants touted Lee's qualifications while soliciting investors, but never disclosed his criminal record, including his conviction for felony grand theft.

6. Defendants are continuing to solicit investors for the REO Fund II. In the last two weeks, Lee solicited an undercover FBI agent to invest in the Fund, providing him marketing materials, a private placement memorandum, and wiring instructions to invest in the REO Fund II. Defendants are running print advertisements in a local weekly paper, and appearing at investment conferences where their promotional materials tout investment opportunities in their REO funds. Lee appeared at one such investment conference on June 10, 2015, and advertised that he will appear at another one on June 20, 2015 in Santa Barbara, California.

7. Defendants also offered and sold membership interests in the REO Fund II without registering those transactions or securities with the SEC and with no applicable exemption from registration.

8. During its time as an SEC-registered investment adviser, CCB also filed numerous Forms ADV containing materially false statements and omissions.

9. The membership interests in the Funds that Defendants offered and sold in the Funds are securities under the federal securities laws.

10. In offering and selling these securities to U.S. investors, Defendants, acting with scienter, made material misrepresentations and omissions as to the uses of investors' monies, the Funds' characteristics, and Lee's criminal record. By this conduct, Defendants have violated and are violating the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q, and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder.

11. Defendants offered and sold the REO Fund II securities to U.S. investors in unregistered transactions, with no available exemption from registration. In doing so, Defendants have violated and are violating the registration provisions of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77f.

12. In willfully filing materially false Forms ADV with the SEC, Defendants violated Section 207 of the Advisers Act, 15 U.S.C. §80b-7.

13. CCB and Lee registered CCB as an investment adviser with the SEC without having at least $25 million in assets under management, and continued to have CCB registered with the SEC until January 2014 without ever having $25 million in assets under management. In doing so, CCB violated, and Lee aided and abetted CCB's violation of, Section 203A of the Advisers Act, 15 U.S.C. §80b-3A.

14. The SEC seeks a temporary restraining order and preliminary and permanent injunctions prohibiting future such violations and prohibiting Defendants from soliciting, accepting or depositing any investor monies; an order freezing Defendants' assets, appointing a temporary receiver, providing for expedited discovery, requiring preservation of documents, and ordering an accounting; and disgorgement of Defendants' ill-gotten gains, prejudgment interest, and civil penalties.

## THE DEFENDANTS

15. **Capital Cove Bancorp LLC** ("CCB"), dba Capital Cove Financial ("CCF"), and also dba Capital Cove Asset Management ("CCAM"), is a Delaware limited liability company with its principal place of business in Newport Beach, California. It became an SEC-registered investment adviser on January 10, 2011. Its last Form ADV, filed on December 23, 2013, reported $62 million in assets under management. On January 10, 2014, CCB filed a Form ADV-W to withdraw its SEC registration, which was immediately effective. CCB is not registered with any state authorities, and has never registered an offering of securities under the Securities Act or a class of securities under the Exchange Act.

16. **Christopher M. Lee aka Rashid K. Khalfani** ("Lee") is a resident of Long Beach, California. Lee is CCB's founder, 100% owner, managing partner, chief compliance officer and sole control person. Lee has three criminal convictions:

    a. On or about November 19, 2000, Lee pled guilty to a misdemeanor for

        carrying a loaded firearm (Case No. 0WH04898, Superior Court of California, County of Los Angeles);

    b. On or about May 14, 2004, Lee pled guilty to five counts of felony grand theft and was sentenced to two years in prison and ordered to pay criminal restitution of $1,174,847 (Case No. 01NF2026, Superior Court of California, County of Orange); and,

    c. On or about November 13, 2013, Lee pled guilty to misdemeanor forgery and was sentenced to 180 days in jail and three years' probation, and ordered to pay fines and fees totaling $10,143 (Case No. KA102218, Superior Court of California, County of Los Angeles).

17. On or about December 9, 2013, Lee purported to change the name on his social security card from Christopher Mark Lee to Rashid Khalid Khalfani.

## OTHER RELEVANT ENTITIES

18. **Rittenhouse Square Trust LLC** (the "Rittenhouse Fund"), a Delaware limited liability company formed on or about January 3, 2012, purports to be an investment fund for acquiring foreclosed properties and is managed by Lee. Lee is the Rittenhouse Fund's sole control person.

19. **Capital Cove REO Opportunities Fund II LLC** (the "REO Fund II"), a California limited liability company formed on or about February 13, 2012, purports to be an investment fund for acquiring, rehabilitating, managing and reselling real properties, and is managed by CCB and Lee. Lee is the REO Fund II's sole control person.

20. **Aspyration Capital Advisors Inc.** ("Aspyration") is a suspended California corporation formed on or about March 22, 2007, which was owned by Lee. Formerly a California licensed real estate broker, it surrendered its license in October 2013, following an investigation by the California Bureau of Real Estate. In March 2013, Lee transferred approximately $55,000 from the Rittenhouse Fund's bank account into Aspyration's bank account, and used the money for Aspyration's

business and Lee's own personal use.

21. **Capital Cove International Inc.** ("CCI") is a California corporation formed on or about July 6, 2010, which is owned and managed by Lee. CCI is a California licensed real estate brokerage firm. Between July 2012 and January 2014, Lee directly deposited approximately $346,000 of investor monies raised for the REO Fund II into CCI's bank accounts, and transferred over $270,500 from the REO Fund II's and the Rittenhouse Fund's bank accounts into CCI's bank accounts.

22. **Capital Cove Asset Management, Inc.** ("CCAM") is a California corporation formed on or about October 2, 2012, which is a dba for CCI and/or for CCB. It purports to be REO Fund II's "operations manager" for acquiring, rehabilitating, managing and reselling REO properties and distressed mortgage portfolio assets of the Fund. Lee is CCAM's sole control person.

## THE FRAUDULENT SCHEME

23. Since March 2012, Defendants have raised about $1.9 million from more than fifteen U.S. investors through unregistered securities offerings of two private investment funds, the Rittenhouse Fund and the REO Fund II. Defendants' solicitations of investors for the REO Fund II are ongoing.

A. **Defendants' Solicitations of Fund Investors**

24. CCB purports to be a real estate and investment services firm focused primarily on real estate-owned properties (*i.e.*, properties owned by a lender as a result of foreclosure).

25. Beginning in 2012, CCB touted real estate investment opportunities for the REO Fund II on its website, www.capitalcove.com. Additionally, Lee orally solicited investors for the REO Fund II, representing that monies invested in the Funds would be used to purchase distressed real estate. Lee also gave investors a marketing flyer for the REO Fund II.

26. To invest in the REO Fund II, Defendants directed investors to open accounts at third-party custodians (primarily custodians for self-directed IRAs), from

which Defendants could invest the monies in "Class A membership interests" in either Fund, pursuant to subscription agreements that Lee counter-signed under the alias Khalfani. CCB and Lee then transferred investors' monies from the self-directed IRA accounts to bank accounts in the name of the respective Funds (or, in some instances, directly to the accounts of CCB and CCI). Investors were promised returns on their investments in these membership interests in the Funds, and that these returns would be predicated on the Funds' investing in real estate.

27. CCB's website and the marketing flyer falsely stated that: (1) the REO Fund II had been "vetted, qualified and registered by the BRE, FDIC, HUD, FINRA, SEC and other government agencies and corporate entities to purchase discounted loans, foreclosure real estate and REO assets directly"; (2) the REO Fund II had a third-party administrator; and (3) CCB was an "SEC-registered Fund Manager" and "FINRA member."

28. From March 2012 to January 2014, Defendants raised at least $1,933,500 from at least 17 investors, as follows:

   a. In March 2012, Defendants raised approximately $487,000 for the Rittenhouse Fund from three investors, located in California and North Carolina; and,

   b. From July 2012 through January 2014, Defendants raised approximately $1,446,500 for the REO Fund II from 14 investors located in California and New Jersey.

**B. Defendants' Misappropriation of Investors' Monies**

29. Of the approximately $1,933,500 raised for the Funds between March 2012 to January 2014, Defendants misappropriated $ 1,812,143, or 94%, as follows:

7

| Use of Proceeds | Amount | % of Money Raised |
|---|---|---|
| Real properties bought in CCB's name, rather than in the Funds' names | $397,368 | 21% |
| CCB's general business | $657,767 | 34% |
| Transferred to CCB and its affiliates (comprised of $346,000 deposited directly into bank and brokerage accounts of CCB and CCI, and $325,500 transferred to CCB, CCI and Aspyration | $671,500 | 35% |
| Lee cash withdrawals | $81,014 | 4% |
| Lee's personal use (meals, gas, etc.) | $4,494 | 0.2% |
| **Total** | $ $1,812,143 | 94% |

30. Thus, while Defendants used approximately $397,368 of the Funds' monies to purchase three properties, they purchased those properties in CCB's name, not the Funds' names. Of the three properties, Defendants subsequently sold two, but none of the sales proceeds were ever deposited into either Fund's known bank accounts.

31. Defendants deposited approximately $346,000 of the REO Fund II's monies into the bank and brokerage accounts of CCB and CCI, rather than into the Fund's accounts.

32. Defendants transferred approximately $325,500 of the Funds' monies to accounts Lee controlled for Aspyration and CCI.

33. Defendants transferred approximately used $657,767 of the Funds' monies for CCB's general business operations.

34. Lee had sole control over all of the Funds', CCB's, CCI's, and Aspyration's bank and brokerage accounts during the relevant period, and was the sole authorized signatory for these accounts.

35. Defendants' representations concerning the intended use of investors' monies were materially false and misleading. In fact, investors' monies were not used to purchase distressed real estate through or in the name of the two Funds. Instead, Defendants used investor funds to purchase real estate in CCB's name; to continue their own business operations, and for Lee's personal benefit.

C. **Defendants' Misrepresentations and Omissions to Investors**

36. Beyond misstating the intended use of the Funds' proceeds, Defendants made other materially false and misleading statements and omissions in soliciting investors for the REO Fund II.

37. First, on CCB's website and in the marketing flyer Lee gave to investors, Defendants falsely stated that: (1) the REO Fund II "has been vetted, qualified and registered by the BRE, FDIC, HUD, FINRA, SEC and other government agencies and corporate entities to purchase discounted loans, foreclosure real estate and REO assets directly"; (2) a third party entity was the Fund's administrator; and (3) CCB was an "SEC-registered Fund Manager" and "FINRA member." None of these statements were true.

38. Second, on CCB's website and in the marketing flyer, Defendants solicited investors for the REO Fund II by touting the qualifications and expertise of the "Fund Managers," which included Lee, aka Khalfani. Yet Defendants omitted Lee's record of criminal convictions.

39. Defendants' representations concerning CCB's and the REO Fund II's characteristics and Lee's credentials were materially false and misleading. In fact, the REO Fund II was neither "vetted, qualified or registered by" any government agency nor administered by any third-party, and Lee had an extensive criminal record that he concealed from investors.

9

40. Lee knew, or was reckless or negligent in not knowing, that these misrepresentations and omissions were false and misleading when made.

**D. Defendants' Offer and Sale of the REO Fund II Without Registration or Exemption**

41. Defendants did not register with the SEC any of the transactions or securities they offered or sold for either Fund.

42. For the REO Fund II, CCB and Lee engaged in the offer and sale of the Fund's membership interests without registering those transactions or securities with the SEC, and the offers and sales were not exempt from registration.

43. While the subscription agreements for the REO Fund II state that it was offered only to accredited investors, at least seven actual investors were unaccredited.

44. In soliciting investors, Defendants failed to inquire regarding the investors' financial condition or sophistication; failed to provide copies of the Fund's private placement memorandum; and failed to provide financial information about the Fund or CCB.

45. Defendants' solicitations for the REO Fund II are ongoing:
   a. Defendants are running a weekly advertisement in a local paper promoting investment opportunities with CCAM;
   b. In the advertisement for an appearance at an investment conference on June 10, 2015 in Newport Beach, Defendants advertised their "REO Opportunities Funds" and CCB's "private equity real estate" investments; and
   c. In the advertisement for an appearance at an investment conference on June 20, 2015 in Santa Barbara, Defendants advertised CCB's "private equity real estate fund" and the "flagship REO Fund II"; and
   d. On June 5, 2015, Lee, under the name Khalfani, met with an undercover FBI agent and solicited his investment in the REO Opportunities Fund. Lee also provided the agent with marketing materials and a private

placement memorandum for the REO Fund II, and emailed the agent wire instructions where he could send his investment money for the REO Fund II.

46. By his actions described herein, in addition to directly selling REO Fund II membership interests to investors, and being a sponsor, organizer and manager of the REO Fund II, Lee was a necessary participant and a substantial factor in the offer and sale of the REO Fund II.

E. **Defendants' False and Misleading Forms ADV**

47. From November 26, 2010, when CCB and Lee first filed CCB's application to register as an investment adviser with the SEC, through December 2013, CCB's Forms ADV repeatedly contained false and misleading statements, including:

- Falsely identifying CCB's managing director, control person, and chief compliance officer as Khalfani, instead of identifying Lee by his legal name, under which all of his criminal convictions appeared;
- Misrepresenting that no one affiliated with CCB had a criminal history within the previous ten years despite Lee's felony and misdemeanor convictions in that time period;
- Fabricating the amounts of CCB's assets under management by tens of millions of dollars, without ever having at least $25 million in assets under management as required to be registered with the SEC as an investment adviser; and
- Listing CCB's outside counsel's name as the signatory for two Forms ADV, without her knowledge or authorization.

48. These false and misleading statements and omissions appeared in the following Form ADV filings:

| Form ADV Filing Date | False and Misleading Statements and Omissions |
|---|---|
| 11/26/2010 | Item 1.J (contact person), Schedule A (owner & officer), Schedule D, §10A (control person), and Signature: use of name "Khalfani" |
| | Item 5.F: CCB had assets under management of $39 million |
| | Item 11A(1): answered "no" to the question whether CCB or "any advisory affiliate" had "been convicted of or plead guilty or nolo contendere ('no contest') in a domestic … court to any *felony*" in the past ten years |
| 07/03/2012 | Item 1.J (contact person), Schedule A (owner & officer), Schedule D, §10A (control person): Use of name "Khalfani" |
| | Item 5.F: CCB had assets under management of $45 million |
| | Item 11A(1) (conviction or plea, felony): answered "no" |
| | Signature by CCB's outside legal counsel |
| 07/05/2013 | Item 1.J (contact person), Schedule A (owner & officer), Schedule D, §10A (control person), and Signature: Use of name "Khalfani" |
| | Item 5.F: CCB had assets under management of $62 million |
| | Item 11A(1) (conviction or plea, felony): answered "no" Item 11(A)(2) (charged with any felony): answered "no" |
| 12/10/2013, 12/18/2013, and 12/23/2013 | Item 5.F: CCB had assets under management of $62 million |
| | Item 11A(1) (conviction or plea, felony): answered "no" |
| | Item 11B(1) (conviction or plea to a misdemeanor involving any fraud, false statement or forgery): answered "no" |
| 12/10/2013 | Signature by CCB's outside legal counsel |

49. These statements in CCB's Forms ADV were materially false and misleading because: (1) Khalfani was not Lee's legal name; (2) CCB fabricated, by a factor of at least ten, the amount of its assets under management; (3) CCB failed to disclose Lee's guilty pleas to felony grand theft in 2004 and to misdemeanor forgery in 2013; and (4) CCB's counsel did not sign or review any of the Forms ADV.

50. Lee, as CCB's founder, 100% owner, managing partner, chief compliance officer and sole control person, and as a signatory and/or person with responsibility for the filing of CCB's Forms ADV, over which he had ultimate authority, willfully misrepresented these material facts from CCB's ADVs filed in 2010-2013.

51. These misrepresentations were material because they were required disclosures in the Forms ADV.

## FIRST CLAIM FOR RELIEF

### Unregistered Offer and Sale of Securities

### Violations of Section 5(a) and (c) of the Securities Act

### (against all Defendants)

52. The SEC realleges and incorporates by reference paragraphs 1 through 51 above.

53. The membership interests in the REO Fund II that were offered and sold to U.S. customers as alleged herein constitute "securities" as defined by the Securities Act and the Exchange Act.

54. Defendants, by engaging in the conduct described above, directly or indirectly, singly and in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

55. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined, will continue to violate, Section 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e.

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a) of the Securities Act

### (against all Defendants)

56. The SEC realleges and incorporates by reference paragraphs 1 through 51 above.

57. Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

    (a) with scienter, employed devices, schemes, or artifices to defraud;

    (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

58. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined, will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## THIRD CLAIM FOR RELIEF

### Fraud in Connection with the Purchase or Sale of Securities

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

### (against all Defendants)

59. The SEC realleges and incorporates by reference paragraphs 1 through

1. 51 above.

2. 60. Defendants, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities or interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

   (a) employed devices, schemes, or artifices to defraud;

   (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

   (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons.

61. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined, will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## FOURTH CLAIM FOR RELIEF

### Violation of Section 207 of the Advisers Act

### (against all Defendants)

62. The SEC realleges and incorporates by reference paragraphs 1 through 51 above.

63. Section 207 of the Advisers Act, 15 U.S.C. §80b-7, provides that it is unlawful for any person willfully to make any untrue statement of a material fact in any registration application or report filed with the Commission under Section 203, or to omit to state in any such application or report any material fact which is required to be stated therein. A Form ADV is a registration application or report filed with the Commission pursuant to Section 203.

64. As set forth above, Defendants' filings on Forms ADV were materially false and misleading.

65. As a result, Defendants violated and, unless enjoined, will continue to violate Section 207 of the Advisers Act, 15 U.S.C. §80b-7.

### FIFTH CLAIM FOR RELIEF

### Violation of Section 203A of the Advisers Act

### (against CCB, and against Lee for aiding and abetting)

66. The SEC realleges and incorporates by reference paragraphs 1 through 51 above.

67. Section 203A of the Advisers Act, 15 U.S.C. §80b-3a, provides that no investment adviser subject to state regulation and with assets under management of less than $25 million may register with the Commission as an investment adviser. Rule 203A-3(d), 17 C.F.R. § 275.203A-3, provides that "assets under management" means securities portfolios over which an investment adviser provides "continuous and regular supervisory or management services . . ."

68. As set forth above, Defendant CCB registered with the Commission without having at least $25 million in assets under management.

69. As a result, Defendants violated and, unless enjoined, will continue to violate Section 203A of the Advisers Act, 15 U.S.C. §80b-3a.

70. Lee aided and abetted CCB's violation and, unless enjoined, will continue to aid and abet CCB's violations, of Section 203A of the Advisers Act, 15 U.S.C. §80b-3a.

### PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining Defendants and their agents, servants,

employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 5(a) and (c) and Section 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a) and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. §§ 240.10b-5; and issue an order permanently enjoining CCB and Lee from violating Sections 203A and 207 of the Advisers Act, 15 U.S.C. §§ 80b-3A and 80b-7.

### III.

Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining Defendants and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from soliciting, accepting, or depositing any monies from actual or prospective investors in connection with any offering of securities pursuant to Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act; provided, however, that such injunction shall not prevent CCB or Lee from purchasing or selling securities listed on a national securities exchange for their own personal accounts.

### IV.

Issue in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction freezing the assets of Defendants CCB, Lee, the Rittenhouse Fund and the REO Fund II; prohibiting each of the Defendants from destroying documents; and ordering accountings by each of the Defendants, and the Rittenhouse Fund and the REO Fund II; and appointing a receiver over the Rittenhouse Fund, the REO Fund II and CCB.

### V.

Order Defendants to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

## VI.

Order Defendants to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3); and Section 209(e) of the Advisers Act, 15 U.S.C. §80b-9(e).

## VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VIII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: June 18, 2015

Respectfully submitted,

/s/Amy Jane Longo
Amy Jane Longo
Junling Ma
Attorneys for Plaintiff
Securities and Exchange Commission