1    RASHID K. KHALFANI
     PRO SE
2    228 POMELLO DRIVE
     CLAREMONT, CA  91711
3    (310) 350-1792

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   Southern Division

11

12

13   SECURITIES AND EXCHANGE              Case No.  SACV 15-00980 JLS (JCx)
     COMMISSION,
14
15              Plaintiff,
                                          **FINAL PRETRIAL CONFERENCE
16        vs.                             ORDER**

17   CAPITAL COVE BANCORP LLC;
     CHRISTOPHER LEE, aka RASHID
18   K. KHALFANI,                         Final Pretrial
                                          Conference: September 9, 2016
19              Defendants.               Trial Date:   October 4, 2016
                                          Time:         1:30 p.m.
20                                        Ctrm:         10A
                                          Judge:        Hon. Josephine L. Staton
21

22

23

24

25

26

27

28
                                          Case No. SACV 15-00980 JLS (JCx)

Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, IT IS ORDERED:

I.  **PARTIES**

1.  The parties are:

Plaintiff:  United States Securities and Exchange Commission ("SEC") .

Defendants:  Capital Cove Bancorp LLC ("CCB") and Christopher M. Lee, also known as Rashid K. Khalfani ("Khalfani").

Each of these parties have been served and have appeared.  No other parties are named in the pleadings.

The pleadings which raise the issues are:  Plaintiff's Complaint (Dkt. No. 1), filed under seal by the SEC on June 18, 2015 and Khalfani's Answer (Dkt. No. 49), filed by Khalfani on July 22, 2015.

No answer or response was ever filed on behalf of CCB.  On November 16, 2015, the Court appointed Receiver, on behalf of CCB, consented to entry of a judgment of liability for each of the SEC's claims against CCB on a no-admit, no-deny basis, and (Dkt. No. 184).  On February 5, 2016, the Court denied the stipulated judgment and "instruct[ed] the SEC to file a renewed request when it resolves its claims against Khalfani." (Dkt. No. 255).

2.  **SEC:** The SEC believes that federal jurisdiction and venue are invoked upon the following grounds:  This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) and 77v(a); Sections 21 (d)(1), 21 (d)(3)(A), 21 (e), and 27 of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa; Sections 209(d)-(e) and 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-9(d)-(e) and 80b-14.  Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce or of the mails, in connection with the

1    transactions, acts, practices and courses of business.  Khalfani admitted in his Answer
2    the SEC's assertion that federal jurisdiction was proper (Dkt. No. 49).

3    **Khalfani**:  "Khalfani does not believe, and will oppose Federal jurisdiction and
4    venue in this case. The real estate businesses of Khalfani are governed and regulated
5    by State authorities and regulators in each respective state regarding the purchase,
6    sale and financing of real property transactions. The SEC has no such jurisdiction,
7    and the SEC's erroneous attempts to apply Federal Securities Laws to the Real Estate
8    and Rehab Construction industries represent excessive government overreach and
9    prosecutorial misconduct at its worse.  The corporate office of Capital Cove was
10    located in Rancho Cucamonga, California during the entire time of its operation.
11    This jurisdiction is San Bernardino County, not Orange County.  Mr. Khalfani and his
12    companies do not engage in the securities business, nor have they ever sold stock or
13    shares in real estate loans, real estate investment trusts (REITS), real estate tenant in
14    common agreements (TICs) or mutual funds."

15         2.      The trial is estimated to take approximately 5-7 days (Dkt. No. 146).

16    3.    **SEC:**   The SEC believes the trial is to be non-jury trial.  After all, no party has
17    made a jury demand, and the SEC would oppose any such request for a jury trial at
18    this late date.  The SEC's position in consistent with the parties' Joint Rule 26(f)
19    Report (Dkt. No. 113 at 7) and the matter has been set for a bench trial since
20    September 29, 2015 (Dkt. No. 146).

21    **Khalfani**:  "The Trial is to be a JURY TRIAL.  Mr. Khalfani indicated to the
22    SEC through his original attorney in August 2015, via Mr. Harry Douglas IV, that he
23    is invoking his constitutional rights to a Jury Trial.  In former filings, Khalfani has
24    also stated this fact repeatedly.  At no time during this TRO action and subsequent
25    hearings has Khalfani given up or relinquished his right to a Jury Trial, with a fair
26    and impartial jury.  Mr.  Khalfani would rigorously oppose any such request or action
27    forcing him to succumb or acquiesce to a bench trial.  Mr. Khalfani is also prepared
28    to file a Title VI civil rights action if necessary to protect his civil rights, which have

1   clearly been violated by the SEC throughout these proceedings."

2       At least seven (7) days prior to the trial date the parties shall lodge and

3   serve by email, fax, or personal delivery the findings of fact and conclusions of law

4   the party expects the Court to make upon proof at the time of trial as required by L.R.

5   52-1.

6       4.   **SEC** : The SEC believes the following facts are admitted and require no

7    proof:

8           a.   Khalfani was formerly known as Christopher M. Lee and later had

9   his name legally changed to Rashid K. Khalfani.

10  **Khalfani** states: "Khalfani has never been know to any Capital Cove client or real

11  estate partner as "Christopher M. Lee" in his public life or in the public domain. This

12  name is the birth name of Mr. Khalfani only, and his birth name was originally

13  changed as a 10 year old by an older sister.  This sister had parental custody of him at

14  this time in his childhood. Mr. Khalfani further re-filed his same legal name in 1990

15  as an undergraduate college student.

16          b.   In 2004, Khalfani pled guilty to six counts of felony grand theft

17  and was ordered to pay over $1 million in restitution and to serve two years in state

18  prison.   Khalfani was allowed to serve only 1 year of custody in a restitution center

19  (similar to a half-way house).

20  **Khalfani** states: "The circumstances of this case originated in 1998, almost 20 years

21  ago, and are not related to the businesses of Capital Cove or Khalfani. All restitution

22  has been paid to all companies involved."

23          c.   CCB was incorporated on September 8, 2010.

24          d.   Khalfani was the founder, one hundred percent owner, sole

25  managing member and officer of CCB.

26          e.   On November 26, 2010, CCB filed a Form ADV to register with

27  the SEC as an investment adviser and was registered by the SEC as an investment

28  adviser. CCB filed subsequent Forms ADV with the SEC (July 3, 2012, July 5, 2013,

December 10, 2013, December 18, 2013, and December 23, 2013). All of the Forms ADV erroneously claimed that CCB was managing assets ranging between $39 and $62 million.

**Khalfani** states: "Khalfani and the staff of other entities registered CCB and other companies. Only CCB was required to file an ADV. There have been no erroneous claims by CCB. In the history of Khalfani's companies, real estate assets under management and ownership have ranged from $17M to $42M based on company records at their respective times of compilation by staff."

      f.    The Forms ADV did not list the name Christopher M. Lee and were also marked with a "No" response to the Item 11 (Disclosure Information), which asked whether Khalfani or anyone else associated with CCB "[i]n the past ten years, [had] … (1) been convicted of or plead guilty … to any felony; (2) been charged with any felony; or (3) been convicted of or plead guilty … to a misdemeanor involving … false statements [or] forgery…?"

**Khalfani** states: "CCB staff were unaware of this former case or pleading involving Khalfani at the time of these electronic filings."

      g.    CCB has never registered with any state authorities.

**Khalfani** states: "CCB has been registered with the Delaware Secretary of State since its formation."

      h.    CCB has never registered an offering of securities under the Securities Act nor a class of securities under the Exchange Act.

**Khalfani** states: "CCB has never issued securities or an offering of securities requiring registration."

      i.    CCB's website and marketing flyer that Khalfani reviewed and gave to investors used the name Khalfani (not Christopher M. Lee) and falsely stated that (1) the REO Fund II "has been vetted, qualified and registered by the BRE, FDIC, HUD, FINRA, SEC and other government agencies and corporate entities to purchase discounted loans, foreclosure real estate and REO assets directly;" and (2)

1    the "Capital Cove REO Opportunities Fund" had been "formed, operative, and

2    funded."

3    **Khalfani** states: "CCB has no exclusive website or marketing flyers. The SEC is

4    confused about Capital Cove entities and their relation to their respective client base."

5           j.     CCB held itself out as a real estate and investment services firm

6    focused primarily on distressed or real estate-owned properties (i.e., properties owned

7    by a lender as a result of foreclosure).

8    **Khalfani** states: "CCB is a real estate advisory and investment services firm as it

9    related to real estate properties, via standard real estate transactions, portfolios and

10   foreclosure."

11          k.     Khalfani was the founding member of both the Rittenhouse

12   Square Trust, LLC ("the Rittenhouse Fund") and the Capital Cove REO

13   Opportunities Fund II ("the REO Fund II").

14   **Khalfani** states: "Rittenhouse Square Trust LLC is NOT a fund of any kind. It is an

15   LLC entity, and at the jury trial, Khalfani will easily prove this. The Capital Cove

16   REO Opportunities Fund II LLC, was the only fund being launched, with a Form D

17   filing and Administrator."

18          l.     Khalfani counter-signed nineteen (19) investor subscription

19   agreements in the Rittenhouse Fund and the REO Fund II.

20   **Khalfani** states: "Over a 5 year period (2010 to 2015), Khalfani signed subscription

21   agreements which were all null and void by the 4th quarter 2014. At the time of the

22   SEC TRO, there was not a single active subscription agreement by any client, and no

23   investor in any Fund existed that had not specifically changed the status and

24   characteristic of their respective investment account at this time."

25          m.     Khalfani founded and owned Capital Cove Asset

26   Management, Incorporated ("CCAM") and the real estate brokerage firm Capital

27   Cove International ("CCI").

28   **Khalfani** states: "Khalfani founded CCAM, and founded CCI with minor partners."

1        n.     The REO Fund II's private placement memorandum ("PPM")

2  stated, among other things, that the proceeds would be used for real estate acquisition

3  ("If Investor subscribes for the entire Offering, and following the payment of Selling

4  Commissions and Fees, approximately $45,500,000 of net proceeds from the

5  Offering will be available for the Fund's business purpose of acquiring,

6  rehabilitating, managing and reselling Notes and Properties Pursuant to the Fund

7  Operating Agreement").

8  **Khalfani** states: "The PPM is a valid and accurate draft at the time of compilation,

9  and was reviewed by several independent custodian of investor assets over a 5 year

10  period, in addition to the investors themselves."

11        o.     On December 6, 2010, Khalfani signed a Bank of America

12  account opening document for CCI for the accounts ending in 7802 and 7864, using

13  the name Christopher M. Lee.

14        p.     On February 21, 2012, Khalfani signed a Bank of America

15  account opening document for the Rittenhouse Square Trust LLC for an account

16  ending in 0533, using the name Christopher M. Lee.

17        q.     On August 21, 2012, Khalfani signed a TD Ameritrade account

18  opening document for CCB for the account ending 6465, using the names Rashid K.

19  Khalfani and Christopher M. Lee.

20        r.     On June 5, 2013, Khalfani signed a Bank of America account

21  opening document for the Capital Cove REO Opportunities Fund II LLC for account

22  ending in 8434, using the name Christopher M. Lee.

23        s.     On June 19, 2013, Khalfani signed a Bank of America account

24  opening document for CCI for the account ending in 7864, using the name

25  Christopher M. Lee.

26        t.     On July 31, 2013, Khalfani signed JP Morgan Chase account

27  opening document for CCI for the account ending in 7221, using the name Rashid K.

28  Khalfani.

1          u.     On November 13, 2013, Khalfani pled guilty to misdemeanor

2 forgery and was sentenced to 180 days in jail, three years' probation, and ordered to

3 pay a $10,000 fine.

4 **Khalfani** states: "Case was dismissed in its entirety, which was the only reason for

5 the plea in the first place. It is totally unrelated to this case in every material way."

6          v.     On January 10, 2014, CCB withdrew its SEC investment adviser

7 registration.

8 **Khalfani** states: "CCB did not renew its SEC registration on December 31, 2013.

9 CCB has not been under the SEC regulatory authority since this date."

10          w.     On May 26, 2015, CCB filed a petition for Chapter 11 bankruptcy

11 in the Central District of California. That petition was dismissed on June 10, 2015 for

12 failure to file the required documentation.

13 **Khalfani** states: "CCB filed a BK as a strategic maneuver only, and it had no

14 discernible effect on our operations whatsoever. At the jury trial, the BK attorney will

15 be called to testify and will clarify these facts for the jury. Also, the lender

16 representative will also confirm the electronic communications and conversations that

17 took place with regard to this action, which was NEVER acted upon after the filing

18 by anyone, and never would have been as all defaults were either reinstated already

19 or modified by the lender."

20    5.     The following facts, though stipulated, shall be without prejudice to any

21 evidentiary objection:

22         a.     None.

23    7.    <u>Plaintiff:</u>

24        (a)     Plaintiff plans to pursue the following claims against Khalfani at

25 trial:

26    <u>Claim 1</u>:  Khalfani engaged in an unregistered offer and sale of securities, in

27 violation of Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a), (c).

28    <u>Claim 2</u>:  Khalfani engaged in fraud in the offer and sale of securities, in

1   violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

2       <u>Claim 3</u>:   Khalfani engaged in fraud in the sale of securities, in violation

3   Section 10(b) of the Securities Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17

4   C.F.R. § 240.10b-5.

5       <u>Claim 4</u>:    Khalfani made and caused others to make material misstatements to

6   the SEC, in violation of Section 207 of the Advisers Act, 15 U.S.C. § 80b-7.

7       <u>Claim 5</u>:    Khalfani aided and abetted CCB in registering with the SEC

8   without the requisite assets under management, in violation of Section 203A of the

9   Advisers Act, 15 U.S.C. § 80b-3a.

10       (b)    The elements required to establish Plaintiff's claims are:

11   <u>Claim 1:  Sections 5(a) and (c) of the Securities Act</u>

12       For its claim under Section 5 of the Securities Act, the SEC has the burden of

13   proving each of the following elements by a preponderance of the evidence:

14       1.    that defendant directly or indirectly offered or sold securities;

15       2.    that the securities sold were not registered with the SEC;

16       3.    that the mails or the means and instrumentalities of interstate commerce

17               were used to offer or sell the stock.

18   Ninth Circuit Manual of Model Jury Instructions (2007): Criminal § 9.9A (modified)

19   (sale of unregistered securities); *SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007).

20       "Scienter is not an element of liability for civil enforcement of 15 U.S.C. § 77e.

21   *See Aaron v. SEC,* 446 U.S. 680, 714 n.5 (1980)  ('The prohibition in § 5 of the 1933

22   Act, 15 U.S.C. § 77e, against selling securities without an effective registration

23   statement has been interpreted to require no showing of scienter.')" Ninth Circuit

24   Manual of Model Jury Instructions (2007): Criminal § 9.9A (modified) (sale of

25   unregistered securities).

26       Once the SEC establishes a *prima facie* violation, the defendant bears the

27   burden of proving that an exemption applies.  *SEC v. Ralston Purina Co.*, 346 U.S.

28   119, 126 (1953).  Any claimed exemption is strictly construed against the claimant.

1  *SEC v. Murphy*, 626 F.2d 633, 640-41 (9th Cir. 1980); Ninth Circuit Manual of
2  Model Jury Instructions (2007): Criminal § 9.9A (modified) (sale of unregistered
3  securities) ("Exemptions from registration provisions are construed narrowly 'in
4  order to further the purpose of the Act:  To provide full and fair disclosure of the
5  character of the securities, and to prevent frauds in the sale thereof").

6       The terms "security" and "instrumentality of interstate commerce" have the
7  same meaning that they do with regard to Section 17(a) of the Securities Act (*see*
8  *infra*, discussion of Claim 2).

9       A person can be held primarily liable for directly or indirectly offering or
10 selling securities.  "Liability under § 5 is not confined only to the person who passes
11 title to the security"; rather, a person can be held liable for actively participating in
12 the unregistered offer or sale. *See Murphy*, 626 F.2d at 649; *SEC v. Rogers*, 790 F.2d
13 1450, 1456 (9th Cir. 1986).

14      For a defendant to be liable for "indirectly" offering to sell securities in
15 violation of Section 5, "their role in the transaction must be significant one.  A
16 significant role includes a defendant who was both a 'necessary participant' and a
17 'substantial factor' in the transaction." *SEC v. CMKM Diamonds, Inc.*, No. 2:08-cv-
18 0437-LRH-RJJ, 2011 WL 3047476, *2 (D. Nev. July 25, 2011), *aff'd in part, rev'd*
19 *on other grounds*, 729 F.3d 1248 (9th Cir. 2013) (citing *Murphy,* 626 F.2d at 648,
20 652, *Rogers*, 790 F.2d at 1456); *see also Rogers*, 790 F.2d at 1456 ("defendant's
21 conduct [must] be both necessary to, and a substantial factor in, the unlawful
22 transaction").

23      Claim 2:  Section 17(a) of the Securities Act

24      For its claim under Section 17(a) of the Securities Act, the SEC has the burden
25 of proving each of the following elements by a preponderance of the evidence:

26      1.     the defendant:

27             a.     employed a device, scheme or artifice to defraud; or

28             b.     obtained money or property by means of any untrue statement of a

material fact or omitted a material fact necessary under the
circumstances to keep the statements that were made from being
misleading; or

   c.    engaged in an act, practice or course of business that operated as a
fraud or deceit upon the purchaser of securities;

2.    the defendant acted with scienter with regard to 1.a. or with negligence
with regard to 1.b. or 1.c.; and

3.    the defendant used or caused the use of an instrumentality of interstate
commerce, such as mail or telephone in the offer or sale of securities,
regardless whether the instrumentality itself was used to make an untrue
statement or a material omission.

*See* Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.1 (10b-5
claim instruction (modified)); 3 L. Sand, et al., Modern Federal Jury Instructions ¶
57.02, Inst. 57-15 (Criminal) (2006) (modified); *SEC v. Dain Rauscher, Inc.*, 254
F.2d 852, 856 (9th Cir. 2001) (violations of Section 17(a)(1) require a showing of
scienter; violations of Section 17(a)(2) and (3) require at least a showing of
negligence).

### a.    Security

    A security is an investment of money in a commercial, financial or other
business enterprise, with the expectation of profit or other gain produced by the
efforts of others. *See* Ninth Circuit Manual of Model Jury Instructions (2007): Civil
§ 18.0 (definition of recurring terms); *SEC v. W. J. Howey Co.*, 328 U.S. 293, 298-99
(1946); *SEC v. Murphy*, 626 F.2d 633, 640-41 (9th Cir. 1980).

### b.    Device, scheme or artifice to defraud

    A device, scheme or artifice is merely a plan for the accomplishment of an
object. A scheme or artifice to defraud is any plan, device, or course of action to
obtain money or property by means of false or fraudulent pretenses, representations
or promises reasonably calculated to deceive persons of average prudence. It is not

defined according to a technical standard, but a standard that is a reflection of moral uprightness, fundamental honesty, fair play and right dealing.  A "scheme or artifice to defraud" is limited only by a man's ingenuity in devising new methods to defraud the community.  "Fraud" is a general term which embraces all the various means by which human ingenuity can devise and which are resorted to by an individual to gain an advantage over another by false representation, suggestion or suppression of the truth, or deliberate disregard for the truth.  Thus a "scheme to defraud" is merely a plan to deprive another of money or property by trick, deceit, deception or swindle. *See United States v. Lay*, 566 F. Supp. 2d 652, 696-97 (N.D Ohio 2008); 4 Sand, et al. Modern Federal Jury Instructions, ¶ 82.02, Inst. 82-4 (Civil) (2012) (modified); *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds sub nom., Avis Budget Group Inc. v. Cal. State Teachers' Ret. System*, 552 U.S. 1162 (2008).

### c.   Misrepresentation

A misrepresentation is a statement of material fact that is false or misleading when it is made.  A statement may be misleading even if it is literally true if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs.  *See* Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.0 (definition of recurring terms).

### d.   Omission

An omission is a failure to disclose a material fact that had to be disclosed to prevent other statements that were made from being misleading.  *See id*. (definition of recurring terms).

### e.   Materiality

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether or not to buy or sell that security.  An omission concerning a security is material if a reasonable investor would have regarded what was not

1   disclosed to him or her as having significantly altered the total mix of information he

2   or she took into account in deciding whether to buy or sell the security. Whether

3   something was material is based on the circumstances as they existed at the time of

4   the statement or omission. *See id.*, Civil § 18.2 (modified) (definition of

5   "materiality"); *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *TSC Indus., Inc.*

6   *v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

7                     **f.      Scienter (knowingly or recklessly)**

8           A defendant acts with scienter if he acts knowingly or recklessly.   Scienter is

9   proven with "'knowing or reckless conduct,' without a showing of 'willful intent to

10  defraud.'" *Vernazza v. SEC*, 327 F.3d 851, 860 (9th Cir. 2003); *Hollinger v. Titan*

11  *Capital Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990).  Scienter may be established

12  by a showing of either "deliberate recklessness" or "conscious recklessness," and

13  may be inferred from circumstantial evidence. *SEC v. Platforms Wireless*, 617 F.3d

14  1072, 1092 (9th Cir. 2010); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390-

15  91, n.30 (1983); *SEC v. Burns*, 816 F.2d 471, 474 (9th Cir. 1987).

16          A defendant acts knowingly when he makes an untrue statement with the

17  knowledge that the statement was false or with reckless disregard for whether the

18  statement was true.  A defendant acts knowingly if he or she omits necessary

19  information with the knowledge that the omission would make the statement false or

20  misleading or with reckless disregard for whether the omission would make the

21  statement false or misleading. *See* Ninth Circuit Manual of Model Jury Instructions

22  (2007): Civil § 18.3 (definition of "knowingly").

23          Recklessness means highly unreasonable conduct that is an extreme departure

24  from ordinary care, presenting a danger of misleading investors, which is either

25  known to the defendant or is so obvious that the defendant must have been aware of

26  it. *See id.*, Civil § 18.3 (discussed in definition of "knowingly").

27                     **g.      Negligence**

28          A person acts "negligently" when he or she fails to act with reasonable

prudence or fails to conform to the standard of care that would be exercised by a reasonable person.  *See Dain Rauscher*, 254 F.2d at 856.

### h.    Instrumentality of interstate commerce

An instrumentality of interstate commerce includes the postal mails, e-mails, telephone, telegraph, telefax, interstate highway system, Internet and similar methods of communication and travel from one state to another within the United States.  *See* Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.0 (modified) (definition of recurring terms).

Claim 3:  Section 10(b) of the Exchange Act (and Rule 10b-5)

For its claim under Section 10(b) of the Exchange Act (and Rule 10b-5 thereunder), the SEC has the burden of proving each of the following elements by a preponderance of the evidence:

1. the defendant:

   a. employed a device, scheme or artifice to defraud

   b. made an untrue statement of a material fact or omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading or

   c. engaged in an act, practice or course of business that operated as a fraud or deceit in connection with the purchase or sale of securities;

2. the defendant acted with scienter; and

3. the defendant used or caused the use of an instrumentality of interstate commerce, such as mail or telephone or the facility of a national securities exchange in connection with the purchase or sale of securities, regardless whether the instrumentality or facility itself was used to make an untrue statement or a material omission.

*See* Ninth Circuit Manual of Model Jury Instructions (2007):  Civil § 18.1 (10b-5

1  claim instruction (modified), *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12

2  (1976) (scienter is a "mental state embracing intent to deceive, manipulate or

3  defraud").

4        The terms "security", "device, scheme or artifice to defraud,"

5  "misrepresentation," "omission," "material," "scienter" and "instrumentality of

6  interstate commerce," all have the same meaning that they do with regard to Section

7  17(a) of the Securities Act.

8        The phrase "in connection with" means that there was some nexus or

9  relationship between the allegedly fraudulent conduct and the sale or purchase of the

10  securities.  *See* Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.0

11  (definition of recurring terms).

12        Claim 4:  Section 207 of the Advisers Act

13        For its claim under Section 207 of the Advisers Act, the SEC has the burden of

14  proving each of the following elements by a preponderance of the evidence:

15        1.      the defendant filed an application or report with the SEC under the

16                Advisers Act;

17        2.      the filing contained an untrue fact or omitted a fact necessary to make

18                the statements contained therein not misleading; and

19        3.      the defendant acted willfully.

20  *See Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000); *Vernazza v. SEC*, 27 F.3d

21  851, 858 (9th Cir. 2003); *SEC v. K.W. Brown and Co.*, 555 F. Supp. 2d 1275 (S.D. Fl.

22  2007).

                        **a.      Misrepresentation**

23

24        A misrepresentation is a statement of material fact that is false or misleading

25  when it is made.  A statement may be misleading even if it is literally true if the

26  context in which the statement was made caused the listener or reader to remain

27  unaware of the actual state of affairs.  *See* Ninth Circuit Manual of Model Jury

28  Instructions (2007): Civil § 18.0 (definition of recurring terms).

### b.   Omission

An omission is a failure to disclose a material fact that had to be disclosed to prevent other statements that were made from being misleading. *See id.* (definition of recurring terms).

### c.   Materiality

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether or not to buy or sell that security. An omission concerning a security is material if a reasonable investor would have regarded what was not disclosed to him or her as having significantly altered the total mix of information he or she took into account in deciding whether to buy or sell the security. Whether something was material is based on the circumstances as they existed at the time of the statement or omission. *See id.*, Civil § 18.2 (modified) (definition of "materiality"); *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

### d.   Willfully

A finding of willfulness does not require proof of intent to violate or proof of scienter, but merely an intent to do the act which constitutes a violation. *Wonsover v. SEC*, 205 F.3d 408, 413-15 (D.C. Cir. 2000); *SEC v. K.W. Brown and Co.*, 555 F. Supp. 2d 1275 (S.D. Fl. 2007).

Claim 5: Aiding and Abetting CCB's Violation of Section 203A of the Advisers Act

For its aiding and abetting claim under Section 203A of the Advisers Act, the SEC has the burden of proving each of the following elements by a preponderance of the evidence:

1.   the existence of a primary violation of Section 203A of the Advisers Act by CCB;

2.   that the defendant acted with actual knowledge or reckless disregard of

1  the wrong and of his/her role in furthering it; and

2     3.    that the defendant substantially assisted in the accomplishment of the

3         primary violation.

4  15 U.S.C. §80b-3a; 17 C.F.R. § 275.203A-3; *SEC v. Fehn*, 97 F.3d 1276, 1288 (9th

5  Cir. 1996).

6         **a.**    **Primary violation of Section 203A of the Advisors Act**

7      A primary violation of Section 203A of the Advisers Act requires proof that

8  CCB is (a) an investment adviser that was subject to state regulation, (b) held assets

9  under management of less than $25 million, and (c) registered with the SEC as an

10  investment adviser.  15 U.S.C. §80b-3a.

11         **b.**    **Subject to state regulation**

12      Section 25230 of the California Corporations Code requires registration of

13  investment advisers in the state of California, as defined at Cal. Corp. Code Section

14  25009.

15         **c.**    **Assets under management**

16      "Assets under management" means securities portfolios over which an

17  investment adviser provides "continuous and regular supervisory or management

18  services . . ."  17 C.F.R. § 275.203A-3(d).

19         **d.**    **Actual knowledge**

20      A defendant acts knowingly when he or she makes an untrue statement with

21  the knowledge that the statement was false.  A defendant acts knowingly if he or she

22  omits necessary information with the knowledge that the omission would make the

23  statement false or misleading.  *See id*., Civil § 18.3 (definition of "knowingly");

24  modified.

25         **e.**    **Reckless disregard**

26      Recklessness means highly unreasonable conduct that is an extreme departure

27  from ordinary care, presenting a danger of misleading investors, which is either

28  known to the defendant or is so obvious that the defendant must have been aware of

1   it.  *See id.*, Civil § 18.3 (discussed in definition of "knowingly").

2   **f.   Substantial assistance**

3   The term "substantial assistance" means that the defendant "'in some sort

4   associated himself with the venture, that he participated in it as something that he

5   wished to bring about, and that he sought by his action to make it succeed.'"  *SEC v.*

6   *Subaye, Inc.*, No. 13 Civ. 3114, 2014 WL 448414, at *9 (S.D.N.Y. Feb. 4, 2014)

7   (citing *SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012)).

8   (c)    In brief, the key evidence Plaintiff relies on for each of the claims

9   is as follows:

10   Claim 1: Securities Act, Section 5

11   The SEC will introduce evidence showing the absence of any registration of

12   securities or securities transactions by Khalfani or CCB relating to the Rittenhouse

13   Fund or the REO Fund II.  Despite this lack of registration, the SEC will introduce

14   evidence demonstrating that between early 2012 and the filing of the SEC's

15   complaint, Khalfani raised approximately $1.9 million from at least seventeen (17)

16   different investors located in California and New Jersey, by offering and selling units

17   in the REO Fund II, which are securities.

18   Claims 2 & 3:  Securities Fraud, Sections 17(a) and 10(b)

19   The evidence that the SEC anticipates presenting in support of its second and

20   third claims—that Khalfani engaged in fraud in connection with the sale of these

21   securities—will be substantially the same.  *See SEC v Dain Rauscher, Inc.*, 254 F. 3d

22   852, 856 (9th Cir. 2001); *SEC v. TLC Investments and Trade Co.*, 179 F. Supp. 2d

23   1149, 1153 (C.D. Cal. 2001).   The SEC will call the receiver appointed by the Court,

24   and its own staff accountant, to testify that Khalfani did not use the money invested in

25   the Funds to purchase distressed real estate as he claimed, but instead

26   misappropriated the investment funds by, among other things, using a bulk of the

27   funds to pay for CCB's general business operations, real estate in the names of CCB

28   and other affiliates, cash and personal expenses.  The receiver is anticipated to further

17

1   testify that even in those few instances when Khalfani did use the investors' money to

2   purchase real estate, he purchased those properties in the name of CCB, not in the

3   name of the Funds, and when he later sold those properties, none of the proceeds

4   were deposited into the Funds' known bank accounts.  To show this was all done as

5   part of an overall scheme to defraud the investors in the Funds, the SEC will

6   introduce evidence that the marketing materials Khalfani created in connection with

7   the Funds contained false and erroneous statements, like the statement that the REO

8   Fund II had "been vetted, qualified and registered by the BRE, FDIC, HUD, FINRA,

9   SEC and other government agencies and corporate entities to purchase discounted

10  loans, foreclosure real estate and REO assets directly."

11          In addition, the SEC will introduce evidence that Khalfani withheld material

12  information from the investors, like failing to disclose the fact that his true name was

13  Christopher Lee and that he had an extensive criminal history directly related to his

14  character for truthfulness.  The SEC will introduce court records showing that in 2004

15  Khalfani pled guilty to six counts of felony grand theft and was order to pay over $1

16  million in restitution and serve two years in state prison.  Then, in 2013, Khalfani

17  pled guilty to misdemeanor forgery and was sentenced to 180 days in jail, three years

18  of probation, and order to pay a fine of $10,000.  Several of the investors are

19  anticipated to testify that had they known Khalfani's true identity and his criminal

20  history they would not have invested in the Funds.

21          Finally, the SEC will introduce evidence that Khalfani also misappropriated the

22  money he raised through other CCB programs, such as the "equity joint venture" and

23  the "trust deed" programs.  Although this money was not raised through the Funds,

24  the SEC will introduce business records showing that Khalfani commingled the

25  money he raised through these other programs with the money that he raised through

26  the Funds, treating them like a unitary enterprise and using some of the money to

27  make large cash withdrawals and Ponzi-like payments to keep the whole scheme

28  afloat.

Claim 4:  Section 207 of the Advisers Act

The SEC will prove that Khalfani willfully made several false statements to the SEC in CCB's Form ADV filings.  The SEC will introduce evidence that Khalfani was CCB's managing director, control person and chief compliance officer, and was responsible for CCB's Form ADV filings, four of which he signed under penalty of perjury.  One of the items on the Form ADV was Item 11 (Disclosure Information), which asked whether Khalfani or anyone associated with CCB "[i]n the past ten years, [had] … (1) been convicted of or plead guilty … to any felony; (2) been charged with any felony; or (3) been convicted of or plead guilty … to a misdemeanor involving … false statements [or] forgery…?"  The SEC will prove that between 2010 and 2013, despite his two criminal convictions in 2004 and 2013, Khalfani submitted and caused others to submit Forms ADV that falsely answered "No" to these questions.  The SEC will prove that Khalfani submitted and caused others to submit false Forms ADV that substantially overstated, by tens of millions of dollars, the amount of CCB's assets under management.  The SEC will prove that the Form ADVs did not contain Khalfani's alias, Christopher M. Lee, which was the name that Khalfani used in connection with CCB's and its affiliates' bank accounts and under which his criminal record appeared.  Finally, the SEC will prove that Khalfani twice submitted and caused others to submit Forms ADV that purported to be signed by CCB's outside counsel, Thomasina Reed.  The SEC anticipates that Ms. Reed will testify that she had no idea these Forms ADV were being submitted in her name because she had not prepared or reviewed them, and had not authorized Khalfani or anyone else at CCB to use her signature.

Claim 5: Aiding and abetting violation of Section 203 of the Advisers Act

Finally, the SEC will prove that Khalfani aided and abetted in CCB overstating the value of its assets under management as exceeding $25 million, and improperly registered CCB as an investment adviser with the SEC.  The SEC will rely heavily on the admissions Khalfani made during his SEC investigative testimony and in written

1  submissions to the SEC.  Specifically, the SEC will introduce portions of Khalfani's

2  testimony where he admits that he overstated these figures by tens of millions of

3  dollars, claiming that CCB managed assets ranging between $39 million and $62

4  million.  CCB, which was regulated by California's investment adviser provisions,

5  was ineligible to register with the SEC because its actual assets were below $25

6  million.  Khalfani, who admitted to being CCB's managing director, control person,

7  and chief compliance officer and to deciding to register CCB with the SEC, was

8  responsible for the accuracy of CCB's Form ADV filings and knew (or was reckless

9  in not knowing) the actual value of its assets under management.

10  **Defendant:**

11  (a)  Khalfani states that he plans to pursue the following defenses at trial,

12  which the SEC disputes and believes do not constitute affirmative defenses:

13  Affirmative Defense 1:

14  At the jury trial, Khalfani will show that he and his businesses engaged in the

15  real estate investment, asset management and advisory business only as it related to

16  real property investments. It will also be easily proven to the jury that while a dozen

17  or so subscription agreements were issued early on in the formation of CCB, the

18  underlying assets of the investors were always real property. It will also be show by

19  Khalfani at the jury trial that NO investor ever had an account, investment or

20  transaction that resembles what the SEC is erroneously claiming.

21  Affirmative Defense 2:

22  At the jury trial, Khalfani will prove that neither he nor anyone at the company

23  engaged in fraud of any kind. In fact, Khalfani will show that many of its investors

24  were on their third and fourth investments with the company at the time of the

25  unwarranted and unsubstantiated TRO action forced by the SEC. The investments of

26  clients involved real estate and related real property benefits, never securities.

27  Affirmative Defense 3:

28  At the jury trial, Khalfani will disprove these false and biased claims by

the SEC that there was any fraud involved in signing these early subscription agreements. He will also prove and demonstrate that the "checks and balances" at the company were more than sufficient to guard against this, or any other reckless and false claims stated by the SEC.

Affirmative Defense 4:

Khalfani will prove at the jury trial that Khalfani and everyone at the firm was highly trained and competent in their jobs. All relevant and material facts related to real estate investments and joint ventures sponsored by the company were relayed to investors in a simple, easy to understand format. In addition, Khalfani will show that the company documentation was provided to all clients, in addition to supporting documentation by custodians, escrow companies, title officers and independent 3rd parties (inspectors).

Affirmative Defense 5:

As it relates to the real estate businesses of Khalfani, he will show that the company had the requisite assets under management at the time of the initial registration with the SEC. Moreover, it will be proven that CCB activities made up less than 10% of the firm's overall business activity even at the beginning of its registration. CCB did not, and has never needed any SEC registration to operate or support the company's other businesses.

(b)    Khalfani claims that the elements required to establish these defenses are:

i.    CCB is not and has never been the primary business of Khalfani or his Capital Cove businesses.

ii.    All investors of Capital Cove were paid from profits and revenues generated by the real estate businesses of Khalfani.

iii.    The registration and operating processes of Khalfani and his businesses demonstrated good faith intentions and followed industry best practices at any and all times.

1        iv.    Individuals called to testify on behalf of Capital Cove will be

2  employees, vendors, investors and actual participants and beneficiaries of the

3  businesses of Khalfani, who are the actual parties to these transactions.

4        v.    Khalfani will demonstrate and show that by the end of 2014, there

5  were no active subscription agreements in the company records, due to the fact that

6  Junling Ma continued to call around and sabotage any attempts by the company to

7  procure a new administrator or maintain existing custodians.

8        vi.    Khalfani will introduce irrefutable evidence that the primary

9  business model of his companies is real estate brokerage, asset management and

10  related real estate services.

11        vii.    Khalfani will show at the jury trial that all funds invested by

12  investors was utilized for real estate and related activities of that particular real

13  property transaction.

14        viii.    Khalfani will introduce publicly recorded trust deeds titled under

15  the Capital Cove REO Opportunities Fund II LLC, that far exceed any amounts listed

16  on these early subscription agreements presented by the SEC.

17        ix.    Khalfani will produce written facts, and verbal testimony from

18  several early subscription agreement holders that their accounts were paid off in full

19  well before this TRO action erroneously put forth by the SEC.

20        x.    Khalfani will demonstrate through testimony and written

21  documentation that his businesses have never been insolvent to the point of failing to

22  remain an ongoing concern at any time in its entire corporate history.

23        xi.    It will be shown and proven through the cross examination of the

24  SEC "witnesses" that both Junling Ma and Amy Longo were unduly influenced by

25  disgruntled ex-employees, unsuccessful litigants, business partners, and industry

26  competitors in bringing this TRO action in the first place, and brought this TRO

27  action to offer competitive benefits to this group.

28        xii.    Publicly recorded trust deeds and other documentation produced

will show that NO investor or client funds were misappropriated by Khalfani for his own personal use. This is a flat out lie on the part of the SEC and its Receiver.

xiii.   Registration forms for clients and investors will be produced showing the level of experience and intentions of Khalfani's clients and business entities.

xiv.   Khalfani will produce publicly available documentation that his legal and true name is Rashid "RK" Khalfani, and has been throughout his professional career.

xv.   All documentation presented at the jury trial will show that Khalfani is a real estate investment advisor and asset manager, not a registered investment advisor or securities advisor as falsely implied by the SEC.

xvi.   Documentation will be presented that demonstrates and shows that Khalfani, his staff, and his businesses present all relevant and material facts concerning a real property PRIOR to any investment by any individual or firm.

xvii.   Documentation and testimony will show that all investors and clients are compensated for use of their capital from day one of funding to the final exit of the transaction on a monthly or quarterly basis.

xviii.   Documentation will show that at the time of this TRO, the total portfolio value of the Capital Cove portfolio was approximately $22 million, with only approximately $13 million owed against it; The Receiver, acting under this erroneous TRO, liquidated this portfolio in a reckless and ill planned "auction process" for only 60% of its value, and lied about the true value in his very first Receivership report to the Court.

xix.   Publicly available escrow and title records will show substantial real estate sales and investment activity by Khalfani and his businesses over the years. It will be proven by this documentation that Khalfani and his companies have a) never lost money on a rehab property, b) never lost a penny of investor principal on any transaction, c) never lost a property to a foreclosure auction, and d) never

1 failed to finish the completion of a rehab property titled under a Capital Cove entity.

2         xx.    Transaction records will show that Khalfani and his businesses

3 operate primarily in the State of California, and have done so since inception of the

4 company.

5         xxi.    The entire business model of Khalfani and his businesses are

6 based on real property and subsequent real estate services. Substantial documentation

7 will be produced and reviewed at the jury trial to support the assertion that the firm is

8 NOT in the business of securities.

9         xxii.  It will be proven that Khalfani did NOT attend nor speak at any

10 investor event scheduled for June 10, 2015. Moreover, it will be show through

11 testimony of 3rd parties that Khalfani only attended and presented at standard real

12 estate industry events, and occasional "wine and cheese" evening seminars. No

13 money was raised or solicited at these events, as this is against the sponsors written

14 and posted policy.

15         xxiii.  All programs and investment opportunities of the company

16 submitted for the jury trial follow standard real estate industry protocols (i.e. Generic

17 nature of Trust Deeds and Private Loan Documents).

18         xxiv.  Khalfani will produce registration forms and related documents

19 showing that all investors and clients are sophisticated in matters related to their real

20 estate investments, including being educated professionals, military members,

21 property owners, investors, lenders and professional real estate investors themselves.

22         xxv.  Khalfani will present adequate and supported claims that the SEC

23 violated his civil rights under Title VI (1983 provisions). Khalfani rigorously opposes

24 and is seeking the following resolution at a jury trial: a) No permanent injunction

25 issued, as this will further assist the SEC in discriminating against him, and ban him

26 from an industry that he was never a part of in the first place. b) No disgorgement and

27 the immediate release of all monetary funds and profits in excess of what was due all

28 secured investors (holders of publicly recorded trust deeds and equity positions) of

Khalfani's companies. This attempt by the SEC to steal Khalfani's equity and deferred compensation constitutes legal theft. c) No civil penalties to Khalfani, as any damages to clients and investors was caused after and by this erroneous TRO and subsequent Receiver actions, not Khalfani or his companies. d) No permanent injunction related to any other individuals or entities, which would act as a permanent excuse for Junling Ma and Amy Longo to continue to harass Khalfani and his subsequent companies indefinitely after the successful resolution of this jury trial.

xxvi.   The facts will show that Khalfani does NOT have an "extensive criminal history" as purported by Junling Ma and Amy Longo of the SEC. This was a single case, which originated in 1998, in which Khalfani was NOT the target or said owner of the company (Tricor).

xxvii.   It will be show that Khalfani and his companies completed and maintained all of the corporate licensing, registration and insurance requirements necessary to conduct its businesses in good order.

8.   The following issues remain to be tried:

(a)   Whether Khalfani engaged in an unregistered offer and sale of securities, in violation of Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a), (c).

(b)   Whether Khalfani engaged in fraud in the offer and sale of securities, in violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and, in particular.

(c)   Whether Khalfani engaged in fraud in the sale of securities, in violation Section 10(b) of the Securities Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

(d)   Whether Khalfani made and caused others to make material misstatements to the SEC, in violation of Section 207 of the Advisers Act, 15 U.S.C. § 80b-7.

(e)   Whether Khalfani aided and abetted CCB in registering

with the SEC without the requisite assets under management, in violation of Section 203A of the Advisers Act, 15 U.S.C. § 80b-3a.

        (f)    Whether the SEC is entitled to the following relief:

             i.    permanent injunction prohibiting future violations of the above provisions;

             ii.    disgorgement of ill-gotten gains and prejudgment interest thereon;

             iii.    payment of civil penalties under Section 20(d) of the Exchange Act, 15 U.S.C. § 77t(d) and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3); and

             iv.    an order permanently enjoining defendants and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from soliciting, accepting, or depositing any monies from actual or prospective investors in connection with any offering of securities pursuant to Section 20(b) of the Securities Act and Section 21 (d) of the Exchange Act.

9.    All discovery is complete.

10.    All disclosures under F.R.Civ.P. 26(a)(3) have been made by the SEC.

The SEC was unable to obtain the participation of Khalfani, who is *pro se*, in the filing of a joint exhibit list; instead, each of the parties has filed a separate exhibit list. (Dkt. Nos. 395-2, 395-4, 396). As discussed in the declaration of SEC Trial Attorney Douglas M. Miller filed concurrently herewith, on August 22, 2016, the SEC requested that Khalfani provide it with copies of the exhibits Khalfani disclosed, which the SEC learned of for the first time on August 19, 2016. *See* Miller Decl., ¶¶ 2-6. The SEC reiterated its request for Khalfani's exhibits on August 24, 2016 and

August 26, 2014, but still has not received them as of the date of this filing.

Khalfani states that he objects to Exhibit Nos: 5, 13, 25, 145-147, 177, 209-214, 218, 225, 242, 256, 353 and 354-379.  Khalfani states that his objections to the remaining exhibits are on the following grounds:

| EXHIBIT | OBJECTION |
|---------|-----------|
| 5 | Unrelated to CCB or Khalfani |
| 13 | Not "CCB Website" |
| 25 | Not related to CCB |
| 145-147 | Not relevant to CCB |
| 177 | Inaccurate amounts and account status |
| 209-214 | Inaccurate statements and assumptions |
| 218 | Not related to CCB |
| 225 | Not related to CCB |
| 242 | Taylor Chapman is not an investor or client |
| 256 | Not related to CCB |
| 353 | Not related to CCB |
| 354-379 | Not rendered in original filing |

11.     Witness lists of the parties have been filed with the Court.

1     Only the witnesses identified in the lists will be permitted to testify

2 (other than solely for impeachment).

3     Each party intending to present evidence by way of deposition testimony

4 has marked such depositions in accordance with L.R. 16.2.7.  For this purpose, the

5 following depositions shall be lodged with the Clerk as required by L.R. 32-1:

6     a.     Deposition of Rashid K. Khalfani, dated April 29, 2016.

7     Plaintiff shall also lodge with the Clerk the following investigative

8 testimony:

9     a.     Investigative Testimony of Rashid K. Khalfani, dated January 14,

10           2014.

11    b.     Investigative Testimony of Jeanette Adler, dated May 6, 2015.

12    c.     Investigative Testimony of Jorge Martinez, dated May 7, 2015.

13    d.     Investigative Testimony of Anthony Hooks, dated March 27,

14           2014.

15    e.     Investigative Testimony of Jorge Martinez, dated May 7, 2014.

16    f.     Investigative Testimony of Mark Latimer, dated February 26,

17           2014.

18    g.     Investigative Testimony of Roland Palencia, dated October 16,

19           2014.

20    h.     Investigative Testimony of Alan M. Peterson, dated September

21           24, 2014.

22    i.     Investigative Testimony of Billy Ray Pitt, dated November 5,

23           2014.

24    j.     Investigative Testimony of Samuel Campbell, dated February 26,

25           2014.

26    i.     Investigative Testimony of Sadayoshi Tanahashi, dated April 27,

27           2015.

28    j.     Investigative Testimony of Thomasina Reed, dated April 17,

2014.

12.    The following law and motion matters and motions in limine, and no others, are pending or contemplated:

a.    Unopposed Motion In Limine by Plaintiff Securities and Exchange Commission To Preclude Evidence and For Adverse Inference Based on Assertion of Fifth Amendment, filed on August 12, 2016 (Dkt. No. 389).

13.    The Court will making findings of fact during the liability phase and deciding the appropriate remedies, so no bifurcation of issues will be ordered.

14.    This Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

DATED:    August 31, 2016

Respectfully submitted,

/s/ Rashid K. Khalfani

Defendant

Pro Se as of 8/31/16

Defendant, Rashid K. Khalfani, Pro Se