KATHY BAZOIAN PHELPS (State Bar No. 155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

*Counsel for Robert P. Mosier, Permanent Receiver*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL COVE BANCORP LLC; CHRISTOPHER M. LEE aka RASHID K. KHALFANI,<br><br>Defendants | Case No. CV15-00980-JLS(JCx)<br><br>**MOTION TO: (1) APPROVE RECEIVER'S FINAL REPORT AND ACCOUNT; (2) APPROVE FINAL DISTRIBUTION PLAN; (3) ABANDON PROPERTY; (4) CLOSE THE RECEIVERSHIP; (5) DISCHARGE THE RECEIVER;  AND (6) AUTHORIZE STORAGE AND DESTRUCTION OF RECEIVERSHIP RECORDS; DECLARATION OF ROBERT P. MOSIER**<br><br> **[PROPOSED ORDER FILED CONCURRENTLY HEREWITH]**<br>Date:    April 13, 2018<br>Time:    2:30 p.m.<br>Dept.    10 A<br>Place:   Southern Division<br>            411 West Fourth Street<br>            Room 1053<br>            Santa Ana, CA 92701-4516 |

# TABLE OF CONTENTS

I.    FACTUAL BACKGROUND ................................................................4

      Procedural History ......................................................................4

      Activities of Receivership...........................................................6

      The Settlement Agreements and Undisputed Claims with Investors ...................................8

      The Settlement Agreements with Hard Money Lenders ....................................13

      Constructive Trust Ruling..........................................................14

      Receiver's Proposed Closing of the Receivership and Related Relief...............................15

II.   THE PROPOSED PLAN FOR FINAL DISTRIBUTION OF RECEIVERSHIP
      ESTATE ASSETS SHOULD BE APPROVED...................................16

III.  DESTRUCTION OF DOCUMENTS AND OTHER MISCELLANEOUS
      PROPERTY ...............................................................................23

III.  CLOSE RECEIVERSHIP AND DISCHARGE RECEIVER ............................23

IV.   NOTICE OF MOTION IS APPROPRIATE ................................................24

V.    CONCLUSION...........................................................................25

      **DECLARATION OF ROBERT P. MOSIER** ................................................26

MOTION FOR APPROVAL OF FINAL REPORT AND
DISTRIBUTION PLAN

1

## **TABLE OF AUTHORITIES**

2

3
<u>Cases</u>

4
*CFTC v. Capital Street Financial, LLC*,
 2010 U.S. Dist. LEXIS 75113 ............................................................20

5

6
FTC v. Crittenden,
 (1993) 823 F. Supp. 699 ............................................................17

7
*Norwest Bank Wisc., N.A. v. Malachi Corp.*, (2007) 245 Fed. App'x 488......................................20

8
*Quilling v. Trade Partners*, (2006) U.S. Dist. LEXIS 101381 ................................................16, 21

9
*SEC v. Basic Energy*,
 (2001) 273 F.3d 657 ............................................................16

10

11
*SEC v. CapitalStreet*, 2010 U.S. Dist. LEXIS 75133 ............................................................21

12
*SEC v. Forex Asset Mgmt. LLC*,
 (2001) 242 F.3d 325 ............................................................16

13
*SEC v. Hardy*,
 (1986) 803 F.2d 1034 ............................................................16

14

15
*SEC v. Harris*, 2016 U.S. Dist. LEXIS 51708............................................................21

16
*SEC v. HKW Trading LLC*,
 2009 U.S. Dist. LEXIS 77215 ............................................................20, 21

17
*SEC v. Wang*,
 (1991) 944 F.2d 80 ............................................................16

18

19
*SEC v.Elliott*,
 (1992) 953 F.2d 1560 ............................................................16

20
*U.S. Commodity Futures Trading Comm'n v. PrivateFX Glob. One, (2011)* 778 F. Supp. 2d 775 21

21

22

23

24

25

26

27

28

ii

Robert P. Mosier, the Permanent Receiver (the "Receiver") of Capital Cove Bancorp LLC and its affiliates and subsidiaries ("Capital Cove"), will and does hereby move the Court for an order for the following relief to: (1) Approve Final Report and Account; (2) Approve Final Distribution Plan; (3) Abandon Property; (4) Close the Receivership; (5) Discharge the Receiver; and (6) Authorize Storage and Destruction of Receivership Records and Miscellaneous Property ("Receivership Closing Motion") as follows:

1. Approving the Receiver's Final Report and Accounting, a copy of which is attached hereto as Exhibit "1." The Receiver's completed Standardized Fund Accounting Report is attached hereto as Exhibit "2." The Receiver requests a finding that all actions and activities taken by or on behalf of the Receiver and all payments made by the Receiver in connection with the administration of the Receivership Estate are confirmed and approved.

2. Approving the Receiver's Distribution Plan and authorizing the Receiver to distribute all assets of the Receivership Estate in the following priority: (a) pay all allowed administrative expenses and approved fees and expenses of his professionals as a first priority payment of assets from the Estate; (b) make a final distribution of all remaining assets of the Receivership estimated to be in the total amount of $2,413,291 to the allowed administrative claims, secured claims, and claims of Investors based on the constructive trust imposed pursuant to prior order, as set forth in the Receiver's proposed distribution plan attached hereto Exhibit "3"; and (c) subordinate payment of all other claims against the estate, including pre-receivership claims of taxing agencies and pre-receivership claims of general unsecured creditors, to the allowed investor claims and make no distribution thereon until after payment in full of all estate administrative expenses and allowed Investor claims.

3.      Authorizing the Receiver to turn over to the California Department of Financial Services Bureau of Unclaimed Property those distributions to claimants which are not negotiated within sixty (60) days of the date of issuance of the check or are otherwise deemed void, and any other surplus funds. As to those funds to be turned over to the California Department of Financial Services, to the extent possible, the Receiver proposes to remit those funds in the name of the party to whom the distributions were due so that those persons, or their heirs or successors, may claim those funds in the future;

4.      Authorizing abandonment of the remaining nominal assets, whether known or unknown, including but not limited to 5 unidentified lots of real property in the states of Hawaii, Colorado, Oregon, California and Arkansas which were never specifically identified by Rashid Khalfani.

6.      Authorizing the Receiver to take all steps necessary or appropriate to complete the administration of the Receivership and its assets in accordance with the relief granted in this Receivership Closing Motion;

7.      Authorizing the Receiver to retain the books and records necessary to support the tax returns filed by the Receiver for a period of five (5) years and to thereafter destroy those books and records.

8.      Authorizing the Receiver to destroy, or otherwise dispose of, all books, records, computer equipment, other computer related-devices, and other items related to the Receivership in the Receiver's discretion and at such time as he deems proper (other than those necessary to support the tax returns filed by the Receiver as set forth above) if within thirty (30) days after written notice to the SEC, the SEC does not take custody of such records and other items;

9.      Discharging the Receiver and his agents, employees, members, officers, independent contractors, attorneys, representatives, predecessors, successors and assignees, and relieving the Receiver and his agents, employees, members, officers,

independent contractors, attorneys, accountants, representatives, predecessors, successors, and assignees of all duties, liabilities and responsibilities pertaining to the Receivership previously established in this action effective upon the Receiver filing a Closing Declaration in which he attests that he has completed the final distribution as specified herein, filed the final necessary tax returns, and paid the final fees and costs of the Receivership. The Receiver requests an order that he and his agents, employees, members, officers, independent contractors, attorneys, accountants, representatives, predecessors, successors, and assignees are: (i) discharged; (ii) released from all claims and liabilities arising out of and/or pertaining to the Receivership herein; and (iii) relieved of all duties and responsibilities pertaining to the Receivership previously established in this action.

10.     Enjoining all persons from commencing or prosecuting, without leave of this Court, any action against the Receiver or his agents in connection with or arising out of the Receiver's or his agents' services to this Court in this Receivership. Neither the Receiver nor any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver shall have any liability to any person or entity for any action taken in good faith in connection with carrying out the Receiver's administration of this Receivership Estate;

11.     Retaining jurisdiction over any and all matters relating to the Receiver and the Receivership Estate, including any matters relating to the distribution of funds received by the Receiver in connection with his obligations as Receiver or otherwise received after the Receivership is closed, and to the extent any dispute arises concerning the Receiver's administration of the Receivership Estate or to the extent any person or entity seeks to pursue or assert any claim or action against the Receiver or any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver, arising out of or related to this Receivership, the Court shall retain jurisdiction to hear and resolve any such dispute or claim. The

Court shall expressly retain jurisdiction for the purpose of (a) implementing and enforcing the provisions of the order on the Receivership Closing Motion, including but not limited to for the purpose of enforcing the above injunctive relief; and (b) reopening the case to administer any subsequently obtained assets;

12.    Closing this Receivership without further order from this Court effective upon the Receiver filing a Closing Declaration in which the Receiver attests that he has completed the final distribution as specified herein, has received final tax clearance (after what could be an 18 month delay by the IRS), and paid the final fees and costs of the Receivership.

## MEMORANDUM IN SUPPORT OF RECEIVERSHIP CLOSING MOTION

### I.    FACTUAL BACKGROUND

**Procedural History**

On June 18, 2015, the SEC brought this action to halt the alleged ongoing fraud perpetuated by Capital Cove and Rashid Khalfani, and the Receiver was appointed temporary receiver on June 18, 2015 and then permanent receiver on September 1, 2015 over Capital Cove Bancorp LLC and its affiliates and subsidiaries, including but not limited to: Capital Cove International, Inc., Capital Cove Asset Management, Inc., Capital Cove Financial, Capital Cove Asset Management, Capital Cove Real Estate, Capital Cove Real Estate Advisors, Capital Cove Realty Group, Capital Cove REO Opportunities Fund LLC, Capital Cove REO Opportunities Fund II, Capital Cove REO Opportunities Fund III, Capital Cove REO Opportunities Fund IV, REO Multi Asset Fund Holdings Inc., Capital Cove Investment Management, Inc., Capital Cove Advisory, Capital Cove Financial Advisory Services LLC, Rittenhouse Square Trust LLC, Rittenhouse Square Advisory LLC, Aspyration Capital Advisors Inc., Aspyration Financial Group, Inc., Nepenthe Capital Management Inc., Diversified Realty and Financial Services Inc., and Nepenthe Capital (collectively, "Capital Cove").

On August 15, 2015, the Court approved the Receiver's Motion to Approve Employment of Diamond McCarthy LLP as General Counsel, Mosier & Company, Inc. as Forensic Accountants and Law Offices of Kirk S. Rense as Special Counsel [Docket No. 87]. On March 16, 2017, the Court approved the employment of LoBuglio & Sigman as tax accountants. [Docket No. 462].

On October 14, 2015, the Court entered its Amended Order Establishing Claims Bar Date, Approving Form and Manner of Notice, Approving Proof of Claim Form and Summary Procedures, Staying Post-Receivership Interest, and Establishing the Net Investment Method for Fixing Investor Claims [Docket No. 169] (the "Bar Date Order"). Pursuant to the Bar Date Order, the Court established a deadline for the filing of claims of January 15, 2016. The Court established the following parameter, among others, for the filing of claims in this case: "Election for Secured Claims. Claimants holding a lien, trust deed or other security interest against any property or collateral of the estate were to make a selection as to whether they wanted their claim treated either as: (i) a secured claim and therefore would accept the collateral or proceeds of the sale of the collateral, if any, as full satisfaction of the claim; or (ii) an unsecured claim and therefore would waive and release the security interest and have an allowed unsecured claim." Only one creditor made the election to have its claim treated as a secured claim – Mosqueda. Mosqueda has now requested to amend his claim from secured to unsecured, which the Receiver approves subject to the Court's approval.

The Receiver sent an additional notice of a claims bar date to the taxing authorities that he determined had not received notice of the original claims bar date, providing them with an additional 90 days to submit a proof of claim (the "Tax Claims Bar Date"). The Tax Claims Bar Date was confirmed by the Court by Order entered on January 24, 2017, and the Tax Claims Bar Date ran on December 19, 2016 [Docket No. 451]. No tax claims were timely submitted. However, the

Employment Development Department ("EDD") submitted a Statement of Account to the Receiver reflecting an amount owed of $300,247.42, and the Franchise Tax Board ("FTB") submitted a Notice of Proposed Assessment on December 16, 2016, reflecting an amount owing of $11,797.07.  The IRS filed an untimely proof of claim for $4,680 on January 22, 2018, which has been disallowed by the Receiver as untimely. No proof of claim or other statement was submitted by the Internal Revenue Service.

**Activities of Receivership**

The Receiver has reported regularly to the Court on his progress and activities in the case. On June 29, 2015, the Receiver filed his Report on the Operational and Financial Aspects of Capital Cove [Docket No. 35] (the "Report"), which set forth his very initial findings in the case. On June 30, 2015, Receiver filed his First Supplement to his Report [Docket No. 37]. On July 21 2015, Receiver filed his Second Supplement his Report [Docket No. 48]. On August 19, 2015, the Receiver filed his Third Supplement to his Report [Docket No. 85]. On December 31, 2015, the Receiver filed his Second Report on the Operational and Financial Aspects of Capital Cove [Docket No. 229] ("Second Report"). On April 27, 2016, the Receiver filed his Third Report Through March 31, 2016 on the Operational and Financial Aspects of Capital Cove [Docket No. 327], and a Fourth Report was filed on November 29, 2016 [Docket No. 438]. Each of the Receiver's reports and supplements has provided an overview of the fraud he has uncovered. The Receiver requests that the Court take judicial notice of the First, Second , Third and Fourth Reports.

1.      This case has involved the unwinding of a Ponzi scheme of significant magnitude. The so-called investment program lured in more than 70 victims. Proofs

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

of claim for investors and unsecured creditors were submitted to the Receiver in an amount of approximately $17 million.

2.     On August 31, 2016, the Court entered its Order Granting the SEC's Motion for Summary Judgment against Rashid K. Khalfani finding, among other things, that Khalfani engaged in securities violations and imposing a permanent injunction against Khalfani [Docket No. 407].

3.     The only assets left at the time the SEC shut down the business were the real properties which Capital Cove had not yet sold. Those properties were encumbered by numerous and substantial liens, leaving little to no equity in the properties. At the time of the appointment of the Receiver, those properties were heavily encumbered, leaving only nominal value, if any at all, available for creditors. The recoveries available in this case are solely attributable to the work of the Receiver and his professionals who negotiated with junior lienholders, commenced and resolved litigation, and were able to clear off a substantial number of liens from the properties which generated equity for the benefit of the investors.

4.     Brought on a contingency basis to eliminate the burden to the estate of hourly fees in the event of loss, the Receiver commenced three lawsuits against the hard money lenders seeking to avoid those liens which are identified as: Mosier v. Creative Asset Management, et al. (Case No. 15-01851);  Mosier v. Center Street Lending et al. (Case No. 15-01852); and Mosier v. Norkat et al. (Case No. 15-01850)

5.     The Receiver settled all three of those lawsuits and cleared the liens off the net sales proceeds from the sale of the properties, which has been the primary source of income for the receivership estate. As a result of the Receiver's efforts in reaching settlements with the junior lienholders and settlements with the three hard

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

money lenders,[1] the Receiver was able to realize some equity in the properties and to create the pool of funds now available to pay investors.

6.     The Receiver also filed one other lawsuit seeking to avoid and recover the allegedly fraudulent transfer of the property located at 228 Pomello Dr., Claremont California (the "Pomello Property"), entitled Mosier v. Lee et al. (Case No. 15−02110). Judgment was entered on January 11, 2017, avoiding and recovering the Pomello Property for the benefit of the estate, among other things. The Pomello Property had been transferred by Khalfani signing a grant deed on behalf of Capital Cove to a trust in which Khalfani is a co-trustee.  The Judgment required the defendants to turnover the Pomello Property to the Receiver by January 25, 2017, which they did not do. The Receiver subsequently obtained an order finding Mr. Khalfani in contempt and ordering him to pay $70,524.88 to the Receiver. Mr. Khalfani has refused to pay the contempt amount. The Receiver also sold the Pomello Property at public auction which generated additional funds for the estate.

**The Settlement Agreements and Undisputed Claims with Investors**

7.  The Receiver settled with a number of investors who held security interests in property of the estate. The settlements provided for the release of liens in exchange for the allowance of claims so that the Receiver could proceed to sell the real properties and net some funds for the unsecured investors as well. Depending on how much equity was in the properties to secure given liens, the settlements reached with these investors provided for allowance of unsecured claims, or in some instances, unsecured claims along with a percentage of equity on a secured basis,

---

[1] The court-approved settlement with the Center Street defendants netted the estate $1.4 million and resulted in the waiver of several million dollars of claims. Settlements with Norkat Financial Inc. and Creative Asset Management, LLC also resulted in the freeing up of sales proceeds to which liens were attached and also obtained a waiver of hundreds thousands of dollars of claims that were filed against the estate.

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

where the amount ultimately paid on a secured basis would serve to reduce the amount of the unsecured claim.

8.  As a result of the Receiver's settlement efforts and the cooperation of the investors, the Receiver was able to remove liens from the properties, sell them, and net funds for the benefit of all investors. As part of his Distribution Plan, the Receiver proposes to pay those investors who retained a secured interest in certain properties based upon their equity positions and to fix the amount of their remaining unsecured claims.

9. The Receiver has entered into the following Settlement Agreements with investors that resulted in the retention of a secured interest in sales proceeds arising from the sale of the particular property against which they held a lien and has calculated the amount of their remaining unsecured claims.

**Gary Bartley**:  The Receiver's Settlement Agreement with Gary Bartley was approved by Order entered on December 28, 2015 [Docket No. 211]. The Bartley Agreement provided that Bartley would be allowed a general unsecured claim of $208,000 and that, of that amount he would be paid on a secured basis, the following amounts from the following properties:

| | |
|---|---|
| Allowed Unsecured Claim Before Payment: | $280,000.00 |
| Agreed Secured Claim: | |
| 15% of net proceeds on 2979 Birch St. | $  7,247.00 |
| 15% of net proceeds on 1208 Hollencrest | $ 0 |
| Amount Previously Paid as Secured Claim | $ 0 |
| Amount of Secured Claim to be Paid | $  7,247.00 |
| Balance of Allowed Unsecured Claim | $272,753.00 |

**Jorge Martinez and Portovelo Management**: The Receiver's Settlement Agreement with Jorge Martinez and Portovelo Management LLC was approved by Order entered on September 30, 2016 [Docket No. 149]. The Martinez Agreement provided that Martinez would be allowed a general unsecured claim of

$1,978,800.00 and that, of the amount he would be paid on a secured basis, the following amounts from the following properties:

| | |
|---|---|
| Allowed Unsecured Claim: | $1,978,800.00 |
| Agreed Secured Claim: | |
| 50% of net proceeds on 1539 Pumalo | $  243,458.00 |
| 50% of net proceeds on 1447 Pumalo | $    39,497.00 |
| Amount Previously Paid as Secured Claim | $    39,497.00 |
| Amount to Be Paid as Secured Claim | $  243,458.00 |
| Balance of Allowed Unsecured Claim | $1,695,845.00 |

**Gary Winings:** The Receiver entered into two Settlement Agreements with Gary Winings as set forth below. The Winings Agreement provided that Winings would be allowed general unsecured claims of $400,000.00 and $150,000.00 and that, of the amount he would be paid on a secured basis, the following amounts from the following properties:

**Claim 1** [Settlement Approved at Docket No. 185 entered 11/19/15]

| | |
|---|---|
| Allowed Claim: | $400,000.00 |
| Agreed Secured Claim: | |
| 1452 2nd St., Simi Valley | $150,000.00 |
| 864 20th St., San Bernardino | $  50,000.00 |
| 50% of net proceeds on 842 Sheffield | $ 0 |
| Amount Previously Paid as Secured Claim | $200,000.00 |
| Amount of Secured Claim to be Paid | $0 |
| Balance of Allowed Unsecured Claim | $200,000.00 |

**Claim 2**  [Settlement Approved at Docket No. 314 on 4/7/16]

| | |
|---|---|
| Allowed Claim: | $150,000.00 |
| Agreed Secured Claim: | |
| 25% of net proceeds on Camino Sierra | $0 |
| Amount Previously Paid as Secured Claim | $0 |
| Amount to Be Paid as Secured Claim | $0 |
| Balance of Allowed Unsecured Claim | $150,000.00 |

**Billy Ray Pitt Jr.**: The Receiver's Settlement Agreement with Billy Ray Pitt Jr. was approved by Order entered on December 28, 2015 [Docket No. 211]. The Pitt

Jr. Agreement provided that Pitt Jr. would be allowed a general unsecured claim of $221,750.00 and that, of the amount he would be paid on a secured basis, the following amounts from the following properties:

| | |
|---|---|
| Amount of Allowed Unsecured Claim | $221,750.00 |
| Agreed Secured Claim: | |
| 15% of net proceeds on 9565 Del Mar | $0 |
| Amount Paid as Secured Claim | $0 |
| Amount to Be Paid as Secured Claim | $0 |
| Balance of Allowed Unsecured Claim | $221,750.00 |

**Divine Prosperity LLC**:  The Receiver's Settlement Agreement with Divine Prosperity was approved by Order entered on September 30, 2015 [Docket No. 149]. The Divine Agreement provided that Divine would be allowed a general unsecured claim of $148,100 and that, of the amount it would be paid on a secured basis, the following amounts from the following properties:

| | |
|---|---|
| Allowed Claim: | $148,100.00 |
| Agreed Secured Claim: | |
| 50% of net proceeds on 7830 Elden | $ 40,516.00 |
| 40% of net proceeds on 864 W. 20th St. | $ 26,931.00 |
| Flat payment on Pumalo properties | $ 5,000.00 |
| Amount Previously Paid as Secured Claim | $ 72,447.00 |
| Amount to Be Paid as Secured Claim | $0 |
| Balance of Allowed Unsecured Claim | $ 75,653.00 |

**Roger Roberts aka Roger Hollins**: The Receiver's Settlement Agreement with Roger Roberts was approved by Order entered on April 7, 2016 [Docket No. 314]. The Roberts Agreement provided that Roberts would be allowed a general unsecured claim of $124,596.00 and that, of that amount he would be paid on a secured basis, the following amounts from the following properties:

| | |
|---|---|
| Amount of Allowed Unsecured Claim | $ 124,596.00 |
| Agreed Secured Claim: | |
| Up to 50% of net proceeds on Camino Sierra | $0 |
| Amount Paid as Secured Claim | $0 |

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

| | |
|---|---|
| Amount to Be Paid as Secured Claim | $0 |
| Balance of Allowed Unsecured Claim | $ 124,596.00 |

**Mosqueda**:  Roman P. Mosqueda and Ryan Christopher Mosqueda submitted an Amended Proof of Claim Form on March 29, 2016, in which they elected to accept the remaining equity in their collateral in full satisfaction of their claim. However, Mosqueda subsequently requested to further amend the claim to request payment as an unsecured claimant. The Receiver does not oppose this request and asks that the Court approve the seconded amended Mosqueda claim in the amount of $186,957.50 as a general unsecured claim. Mosqueda would not have received any distribution as a secured creditor.

**Fellows:** Investor Fellows held two deeds of trust on properties of the estate and he was paid at the time of the sale of those properties the principal amount of his claim less prior distributions made to him. His claim has been satisfied in full and there are no remaining amounts to be paid.

| | |
|---|---|
| Allowed Unsecured Claim: | $0 |
| Amount Paid as Secured Claim | |
| 2979 W. Birch | $136,875.00 |
| 600 Central Ave. #363 | $100,000.00 |
| Balance of Allowed Unsecured Claim | $0 |

**Green:** Investor Green held a valid deed of trust and was paid at the time of the sale of those properties the principal amount of his claim less prior distributions made to him. His claim has been satisfied in full and there are no remaining amounts to be paid.

| | |
|---|---|
| Allowed Unsecured Claim: | $0 |
| Amount Paid as Secured Claim | |
| 1200 Wilmington | $49,375 |
| Balance of Allowed Unsecured Claim | $0 |

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

**LaTorre:** Investor LaTorre held a valid deed of trust and was paid in full at the time of the sale of his collateral. His claim has been satisfied in full and there are no remaining amounts to be paid.

| | |
|---|---|
| Allowed Unsecured Claim: | $0 |
| Amount Paid as Secured Claim | |
| 2208 Gregory Ave. | $97,795.00 |
| Balance of Allowed Unsecured Claim | $0 |

**The Settlement Agreements with Hard Money Lenders**

10.     Many of the properties referenced above were subject to senior secured liens held by the hard money lenders who loaned Capital Cove much of the money used to purchase the properties. Although many of the investors were promised senior secured positions, they in fact received junior liens against the properties.

11.   The Receiver commenced three lawsuits on a contingency basis as detailed above to avoid the liens of the hard money lenders that were placed against most of the properties on a fraudulent transfer theory. The Receiver settled all three of those lawsuits and as a result cleared the liens off the net sales proceeds from the sale of the properties. This was the primary source of income for the receivership estate. The settlements each provided that the lenders would be paid a portion of their claims in cash from the sales proceeds, and their liens would otherwise be removed from the sales proceeds.

12.   The Center Street settlement netted the estate $1.4 million of funds that were freed up to pay to investors and also resulted in the waiver of several million dollars of claims asserted by Center Street. Additionally, the estate received the benefit of the Center Street liens that were assigned to the estate as a result of the settlement.  See Paragraph 6 of the Center Street Settlement Agreement approved by order entered on August 31, 2016 [Docket No. 405].

13.   Settlements with Norkat Financial Inc. and Creative Asset Management, LLC also resulted in the freeing up of sales proceeds to which liens were attached

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

and also obtained a waiver of hundreds of thousands of dollars of claims that were filed against the estate. [See Docket Nos. 440 and 463]. As a result of the Receiver's efforts in reaching settlements with the junior lienholders and settlements with the three hard money lenders, the Receiver has been able to create the pool of funds now available to pay creditors.

14.  The settlements with the hard money lenders impacted the amounts available to the secured investor claims set forth herein to the extent that the lenders held senior lien positions. The settlements freed up equity in the properties for the junior lienholders as well as for the unsecured investor pool. The Receiver spread the amount of the hard money lenders' remaining lien amounts following settlement on a pro rata basis against each of the properties in which the lenders respectively held a secured interest. An accounting of the disposition of the sales proceeds on all of the properties of the estate reflecting the manner in which the settlement sums were applied on a property by property basis is attached hereto as Exhibit "4" (the "Accounting").  The Accounting reflects the amount of the Center Street liens that were assigned to the Receiver as of August 31, 2016, the date of Court approval of the settlement, including interest and other charges as of that date as reported by Center Street. The Accounting further reflects a pro rata distribution of the settlement amounts paid to Norkat and Creative Asset Management based upon the original loan amounts of those transactions.

15. The settlement amounts owed to the Secured Investors in junior positions were calculated based upon the amount of remaining equity in the properties. This calculation resulted in the amounts proposed to be paid herein to each of the investors holding secured interests in the sales proceeds pursuant to their settlement agreements and claims.

**Constructive Trust Ruling**

16.  The Receiver concluded that assets of the Receivership Entities as of the

MOTION FOR APPROVAL OF FINAL REPORT AND
DISTRIBUTION PLAN

commencement of the receivership should be deemed assets held in constructive trust for the benefit of the investors in the Receivership Entities. The Receiver obtained a determination from the Court that those assets constitute constructive trust assets held for the benefit of the Receivership Entities/investors and that as a result the funds held in the Receivership Estate, after payment of estate administrative expenses, should be distributed to the defrauded investors on their allowed claims. *See* Order Granting Receiver's Motion for Order (1) Establishing Constructive Trust; and (2) Approving Bar Date Notice for Taxing Agencies entered on March 16, 2017 [Docket No. 460].

**Receiver's Proposed Closing of the Receivership and Related Relief**

17.   The Receiver has filed a final consolidated tax return for the Receivership Entities based on the finding of a constructive trust, and will retain the records necessary to support those returns.  Upon the completion of the Receiver's distribution of estate assets under the approved Final Distribution Plan and other administrative duties necessary or appropriate to wind up the estate, the Receiver seeks an order formally discharging him as receiver. The Receiver will file a Declaration with the Court confirming that the administrative tasks are completed and the estate is closed and requests that the Court enter an order discharging him as receiver upon receipt of that declaration. The Receiver notes, however, the final tax clearance from the IRS could take 18 months, so there may be a delay in the filing of a final Declaration to close the receivership. The Receiver is evaluating whether it is appropriate to make an interim distribution to investors prior to receiving final tax clearance, without jeopardizing the position of the estate or creating any personal liability for the Receiver.

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

## II.    THE PROPOSED PLAN FOR FINAL DISTRIBUTION OF RECEIVERSHIP ESTATE ASSETS SHOULD BE APPROVED

The Receiver proposes the following distribution plan, subject to approval of professional and administrative fees and costs which are the subject of a separate fee application filed concurrently herewith. The Receiver is currently holding cash on hand of approximately $2.4 million.   Applicable law supports the Court's approval of the Receiver's plan for final distribution of the estate assets as reasonable and appropriate under the circumstances

The Court's power over an equity receivership and to determine appropriate procedures for administering a receivership is "extremely broad." *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986); *see SEC v. Basic Energy*, 273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th  Cir. 1992). The primary purpose of an equity receivership is to promote the orderly and efficient administration of the estate for the benefit of the creditors. *See Hardy*, 803 F.2d at 1038. The relief requested by the Receiver best serves this purpose. The Court has wide latitude when it exercises its inherent equitable power to approve a plan of distribution of receivership funds. *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331 (5th Cir.  2001)  (affirming District Court's approval of plan of distribution because court used its discretion in "a logical way to divide the money"); *Quilling v. Trade Partners, Inc.*, 2007 WL 107669, * 1 (W.D. Mich. 2007) ("In ruling on a plan of distribution, the standard is simply that the district court must use its discretion in a logical way to divide the money" (internal quotations omitted)). In approving a plan of distribution in a receivership, "the district court, acting as a court of equity, is afforded the discretion to determine the most equitable remedy." *Forex*, 242 F.3d at 332. The Court may adopt any plan of distribution that is logical, fair, and reasonable. *SEC v. Wang*, 944 F.2d 80, 83-84 (2d Cir. 1991); *Basic Energy*, 273 F.3d at 671; *Quilling*, 2007 WL 107669 at *1.

---

16

The Receiver believes the proposed final distribution set forth below is logical, fair, and reasonable.  The expenses of administration of the receivership incurred for the services of the Receiver and his professionals and those who provided goods, services, and use of property to the Receiver post-receivership as part of the administration of the estate are properly paid as a priority before distribution of the receivership assets to creditors since the Receiver collected the assets of the receivership estate. *FTC v. Crittenden*, 823 F. Supp. 699, 704 (CD Cal. 1993).

Courts in equity approve distribution plans that subordinate the noninvestor claims to the allowed investor claims. As a matter of equity, courts have concluded that returning funds traceable to the fraud back to the defrauded victims first is a reasonable and equitable approach to distribution in a receivership case. Additionally, this Court's Order Granting Receiver's Motion for Order: (1) Establishing Constructive Trust; and (2) Approving Bar Date Notice for Taxing Agencies [Docket No. 164] approves of and mandates such a result.

A. **Proposed Classes of Distribution**

**Class 1: Administrative Professional Fees**

There are actual and estimated remaining professional administrative expenses of the estate of $844,902.06.  As detailed in the Receiver's Second and Final Fee Application filed concurrently with this Motion, these sums include estimated fees and expenses of the Receiver and his professionals necessary to complete the administration of estate assets, distribute the remaining assets and close the estate. However, only actual fees and expenses incurred not to exceed the amounts requested will be paid. The Receiver seeks final approval of the amounts previously paid to his professionals as well as additional amounts set forth in the fee application filed concurrently herewith herein. The Receiver and his professionals had agreed to a 30% holdback on their previously allowed fees which have not yet been paid. The previously awarded amounts, the holdback amounts, and the

MOTION FOR APPROVAL OF FINAL REPORT AND
DISTRIBUTION PLAN

concurrently requested amounts through the close of this case are as follows:

**Previous Fee Award and Holdbacks**

The Receiver has already paid Court-approved professional fees and costs in the total amount of $514,631.30 as follows:

| Professional | Fees Paid | Expenses Paid | Holdback |
|---|---|---|---|
| Receiver | $145,441.45 | $5,412.84 | $62,332.05 |
| Mosier & Co | $97,259.93 | | $41,682.82 |
| Mosier & Co. (litigation cost) | $12,827.50 | | |
| Diamond McCarthy LLP[2] | $183,686.95 | $24,685.30 | $78,722.98 |
| Brandlin & Associates | $45,317.33 | | |
| **Totals:** | **$484,533.16** | **$30,098.14** | **$182,737.85** |

**Current Fee Request**

The accrued fees and costs of the professionals[3] incurred during the reporting period of January 1, 2016 through the close of the case, are as follows:

| Professional | Fees Incurred | Reserve | Costs | Total Requested |
|---|---|---|---|---|
| Receiver | $129,077.61 | | $3,737.67 | $132,815.28 |
| Mosier & Company Inc. | $144,655.50 | | $0 | $144,655.50 |
| Diamond McCarthy LLP | $314,461.60 | $6,500[4] | $28,756.70 | $349,718.30 |
| LoBuglio & Sigman | $29,623.05 | $5,000[5] | $352.09 | $34,975.14 |
| **Total Requested** | **$617,817.76** | | **$32,846.46** | **$662,164.22** |

---

[2] Diamond McCarthy has also been paid contingency fees of $805,623.68 and reimbursed costs in the contingency litigation of $22,314.99 which were paid directly from the funds generated as a result of that litigation and which were approved by the Court.

[3] Kirk S. Rense is not seeking allowance of fees or reimbursement of costs at this time.

[4] In addition to these fees, Diamond McCarthy has requested that a reserve of $6,500 be allocated to pay for any fees or costs actually incurred to close out the case.

[5] In addition to these fees, LoBuglio & Sigman has requested that a reserve of $5,000 be allocated to pay for any fees or costs actually incurred to close out the case.

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

Therefore, the total additional amounts to be paid to all professionals for fees, inclusive of prior holdbacks of $182,737.85, is $800,203.52,   reimbursement of costs of $32,846.46, and reserves of $11,500, for a total of $844,902.06 to be set aside for administrative fees.

**Class 2:     Investors' Secured Claims**

As set forth above, the settlements entered into with secured investors have resulted in the following secured creditors remaining to be paid the following amounts:

**Amounts to be Paid as Secured Claims on Settlements and Claims**

| Property | Claimant | Amount |
|---|---|---|
| 2979 W. Birch | (Bartley 15% of net) | $7,247.00 |
| 1208 Hollencrest | (Bartley 15% of net) | $0 |
| 1539 Pumalo | (Martinez/Portovelo  50% of net) | $243,458.00 |
| 842 Sheffield | (Winings 50% of net) | $0 |
| 9564 Delmar | (Pitt Jr 15% of net) | $0 |
| 215 Briar Creek | (Mosqueda, 100% of net)[6] | $0 |
| Camino Sierra | (Roberts, 50% of net) | $0 |
| Miscellaneous | (Divine Prosperity, misc) | $0 |

<u>**Class 3:     Investor Unsecured Claims**</u>

The Receiver has resolved all objections to the 76 claims of Investors that were timely submitted. Those claims are identified by last name of claimant or name of company and the allowed amount of the claim in Exhibit "3" attached hereto. The allowed Investor Claims total $10,703,877. This figure reflects a reduction of over $6.5 million from the initially filed claims in the amount of approximately $17,322,760 due to the work of the Receiver and his professionals in obtaining voluntary amendments of claims that were incorrectly filed and the

---

[6] The Receiver seeks approval of Mosqueda's request to amend the claim to an unsecured claim as set forth herein, so no amounts will be paid to him on a secured basis.

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

objections to two claims which were filed and sustained by the Court.

The Receiver proposes to distribute the sum of $1,317,684 to the Investor Claims on a *pro rata* basis pursuant to the schedule set forth in Exhibit "3."

In addition to the constructive trust finding in this case which warrants the payment of the Investor Claims ahead of NonInvestor Claims, payment of the Investor Claims in a higher priority than other types of creditors is appropriate in an equitable proceeding of this nature.[7] Specifically, in equity receiverships, courts have approved distribution plans which give higher priority to defrauded investors than to general unsecured creditors.  In *CFTC v. Capital Street Financial, LLC*, the court approved differing treatment for investors as compared to general creditors as follows:

> The Receivership Estate shall be distributed in the
> following order:
>
> A. To claims for expenses of the administration of the
> Receivership Estate, including legal and accounting fees;
> expenses to preserve the value of assets; and costs of
> realization and payment of any taxes due on property or
> income of property of the Receivership Estate incurred
> during the pendency of the receivership (the
> "Administrative Claimants");
>
> B. To the return of investments to Investors; and
>
> C. To any General Creditors, should any assets remain in
> the Receivership Estate.[8]

### Class 4:  Tax Claims

The Franchise Tax Board and the EDD have both agreed in writing to subordinate their pre-receivership Tax Claims to payment in full to the investors.

---

[7] *See, e.g.*, *Norwest Bank Wisc., N.A. v. Malachi Corp.*, 245 Fed. App'x 488, 495 (6th Cir. 2007).

[8] *CFTC v. Capital Street Financial, LLC*, 2010 U.S. Dist. LEXIS 75113, at *4 (W.D.N.C. June 18, 2010); *see also SEC v. HKW Trading LLC*, 2009 U.S. Dist. LEXIS 77215 (M.D. Fla. Aug. 14, 2009) ("Payment to claimants whose property was unlawfully taken from them is given a higher priority than payment to the general creditors.").

The IRS provided verbal confirmation of subordination of its claim but has not provided a writing confirming the subordination. The Receiver has filed his final tax returns and has requested a prompt assessment from the IRS. The Receiver believes that no tax liability is due; however, he may not receive final word from the IRS for 18 months or more. He is actively seeking confirmation of written subordination and discharge of the Receiver, but will not be able to make a distribution until he receives such confirmation or approval of his final tax returns.

### Class 5:      Noninvestor Claims

The claims of Noninvestors that were filed total $449,241. These claims are identified in Exhibit "3" attached hereto.  As set forth above, the Receiver proposes to pay the Noninvestor claims only following payment in full to the Investor Claims, which is unlikely. Accordingly, no payment would be made on the Noninvestor Claims at this time.

The Receiver's proposed Final Distribution Plan is founded upon the Court's finding that the assets of the receivership estate are subject to a constructive trust in favor of the Investors and that after payment of allowed administrative expenses, the investor creditors are entitled to be paid their allowed claims before receivership assets are distributed to pay claims of Noninvestor creditors. Accordingly, the Receiver does not intend to make payment on the Noninvestor claims.

Courts in equity approve distribution plans that subordinate the Noninvestor Claims to the allowed investor claims.[9] As a matter of equity, courts have concluded

---

[9] *See, e.g., Quilling v. Trade Partners*, U.S. Dist. LEXIS 101381 (W.D. Mich. Dec. 1, 2006) ("In receivership proceedings arising out of securities fraud, the class of fraud victims takes priority over the class of general creditors with respect to proceeds traceable to the fraud."); see also *SEC v. CapitalStreet*, 2010 U.S. Dist. LEXIS 75133 (approving plan that return investments to Investors, then to general creditors should any assets remain in Receivership Estate); *SEC v. Harris*, 2016 U.S. Dist. LEXIS 51708 (N.D. Tex. April 18, 2016) (approving modified plan to pay 3 classes: Qualified Professional Claims and Administrative Expenses; Defrauded Investors; and General Creditors Prior to Inception of the Receivership); *U.S. Commodity*

(footnote continued…)

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

that returning funds traceable to the fraud back to the defrauded victims first is a reasonable and equitable approach to distribution in a receivership.

### Summary of Plan

With estimated estate assets available for distribution to investors of $1,317,684 and allowed Investor claims of $10,087,599, under the Receiver's proposed Final Distribution Plan, all remaining receivership assets would be distributed *pro rata* to Investor claimants based on the proportion the specific investor's allowed claim represents of the total allowed investor claims of $10,087,599.  Attached hereto as Exhibit "3" is a summary of the Investor claims, the pro rata percentage of each investor claim and the estimated distribution amount based on the Receiver's estimate of the net assets available for distribution on the investor claims.  The Receiver estimates investors will receive a distribution of 13.062% of the amount of their allowed claims.  Under the Final Distribution Plan, there would be no assets distributed to Noninvestors, whose claims would be subordinate to the claims of Investor creditors based on the Court's constructive trust finding in favor of the Investor claimants.

The Receiver requests leave to make this final distribution in the amounts specified on Exhibit "3," or as may be modified slightly depending on the funds available for distribution. The Receiver anticipates making a partial interim distribution within 30 days or so of the date of the order approving the Final Distribution Plan, provided in his business judgment he believes distribution is appropriate before final tax clearance is obtained. A final distribution will be made

---

(continued)

*Futures Trading Comm'n v. PrivateFX Glob. One,* 778 F. Supp. 2d 775, 786 (S.D. Tex. 2011); *SEC v. HKW Trading LLC,* 2009 U.S. Dist. LEXIS 77215, 2009 WL 2499146, at *3 (M.D. Fla. Aug. 14, 2009) (citing Ralph Ewing Clark, *Treatise on the Law and Practice of Receivers* (3d ed. 1959)).

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

upon receipt of tax clearance from the IRS. The Receiver will mail checks to each claimant holding an Allowed Claim by U.S. Mail. The Receiver proposes that all distribution checks be required to be negotiated within sixty (60) days of the date of issuance and that checks returned without a valid forwarding address or checks not negotiated before the end of the sixty-day period be deemed void. In the event there are checks not negotiated or deemed void, the Receiver requests the authority to turn over those and any other surplus funds to the California Department of Financial Services Bureau of Unclaimed Property.

## III. DESTRUCTION OF DOCUMENTS AND OTHER MISCELLANEOUS PROPERTY

In connection with this Receivership, the Receiver accumulated more than 50 boxes of documents and other materials, which are located in the Receiver's office and the offices of the professionals he has retained to assist him in this matter. Accordingly, the Receiver requests the authority to destroy, or otherwise dispose of, all documents and other items relating to the Receivership, in the Receiver's discretion and at such time as he deems proper if within thirty (30) days after written notice to the Commission, the Commission does not take custody of such records or items. The Receiver will hold all tax records that he is required to retain for the requisite amount of time and then thereafter destroy them.

## IV. CLOSE RECEIVERSHIP AND DISCHARGE RECEIVER

The Receiver has seized and liquidated all known Receivership assets. All litigation involving the Receiver has been resolved. There are no remaining unpaid or uncollected judgments with the exception of the Khalfani Sanction Order which the Receiver may seek authority to sell for $5,000 or more. Further, with the payment of the accrued and final fees and costs of the Receivership and the final distribution to claimants as requested herein and in the Second and Final Fee Application, all assets of the Receivership will be subject to disbursement. As such, the Receiver will have

completed his responsibilities under the Order Appointing Receiver and respectfully requests that the Court enter an order, in substantially the form of the proposed order attached as Exhibit "6" that closes the Receivership and discharges the Receiver without further order from this Court effective upon the Receiver filing a Closing Declaration in which he attests that he has completed the final distribution as specified herein, received final tax clearance, and paid the final fees and costs of the Receivership. The Receiver requests the Court's order discharge him and his agents, employees, members, officers, independent contractors, attorneys and representatives and relieve the Receiver, his agents, employees, members, officers, independent contractors, attorneys and representatives of all duties, liabilities,  and responsibilities pertaining to this Receivership.

## V.    NOTICE OF MOTION IS APPROPRIATE

The Receiver has provided notice of this Motion pursuant to Local Rule 66-7 and requests an order finding that such notice is deemed sufficient if completed as described as follows:  At least 40 days prior to the hearing on the Motion, the Receiver shall mail and/or email the form of Notice attached hereto as Exhibit "5" to all known claimants, including Investors, Noninvestors, and taxing authorities. The Notice recites that the Receiver will post the Notice as well as the Motion on his website at cloud.mosierco.com, Username: CapitalCove, Password: investor. The Receiver shall post the Notice and the Motion on his website concurrently with the filing of the Notice and Motion.

The Receiver further requests that notice of any modifications to the Receiver's original Proposed Order is deemed sufficient and approved if a copy of the Court's Order on the Motion is posted on his website within fourteen (14) calendar days of being issued.

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

## VI.    CONCLUSION

The Receiver respectfully requests that the Court: (1) approve the Receiver's Final Report and Accounting; (2) approve the Receiver's Distribution Plan including the amendment of the Mosqueda claim to unsecured; (3) authorize the abandonment of property; (4) close the Receivership; (5) discharge the Receiver; and (6) authorize retention of certain records and the destruction of Receivership records and miscellaneous property. The Receiver requests all other appropriate relief.

DATED: February 13, 2017             DIAMOND McCARTHY LLP

By:   /s/ *Kathy Bazoian Phelps*
      Kathy Bazoian Phelps
      Counsel for Robert P. Mosier
      Permanent Receiver

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

## DECLARATION OF ROBERT P. MOSIER

1.     I am the Permanent Receiver ("Receiver") in the matter of *SEC v. Capital Cove Bancorp LLC, et. al*.   I have personal knowledge of all of the facts in this declaration and, if called as a witness, could competently testify to these facts.

2.     I have reviewed and participated in the preparation of the Motion to: (1) Approve Final Report and Account; (2) Approve Final Distribution Plan; (3) Sell or Abandon Property; (4) Close the Receivership; (5) Discharge the Receiver; and (6) Authorize Destruction of Receivership Records and Miscellaneous Property ("Receivership Closing Motion").

3.     I have, through my counsel, met and conferred with the SEC regarding the relief sought in the Motion and am advised that the SEC does not oppose the Motion.

4.     My Final Report and Account is attached hereto as Exhibit "1," which describes my activities in this case and the financial reporting of my activities.

5.     The Standardized Fund Accounting Report required by the SEC is attached hereto as Exhibit "2."

6.     My proposed Distribution Plan is attached hereto as Exhibit "3." I believe that this plan is reasonable and achieves a fair and equitable result under the circumstances in this case. The Plan proposes to (a) pay all allowed administrative expenses and approved fees and expenses of my professionals as a first priority payment of assets from the estate; and (b) make a final distribution of all remaining assets of the Receivership estimated to be in the total amount of $2,413,291 to the allowed administrative claims and claims of Investors based on the constructive trust imposed pursuant to prior order. Since Investors will not receive all of the amounts owed to them, there will be insufficient funds to pay any other classes of creditors. The taxing agencies have agreed to subordinate their claims to payment to Investors and accordingly will not be receiving any payment, nor will general

unsecured creditors. This result is in line with the constructive trust finding that the Court previously made in this case, finding that the funds I am holding are held in constructive trust for the benefit of the investors.

7. A true and correct copy of my accounting of the sales proceeds received from the sale of the properties, the manner in which I spread the settlement amounts with the hard money lenders, and the payments to be paid to secured investors pursuant to approved settlements and allowed claims, is attached hereto as Exhibit "4."

8. I commenced litigation to avoid the liens of the hard money lenders that were placed against most of the properties on a fraudulent transfer theory. I commenced three lawsuits seeking to avoid those liens which are identified as:

- Mosier v. Creative Asset Management, et al. (Case No. 15-01851)
- Mosier v. Center Street Lending et al. (Case No. 15-01852)
- Mosier v. Norkat et al. (Case No. 15-01850)

9. I settled all three of those lawsuits and have been able to clear the liens off the net sales proceeds from the sale of the properties, which has been the primary source of revenue for the receivership estate. The settlements each provided that the lenders would be paid a portion of their claims in cash from the sales proceeds, and their liens would otherwise be removed from the sales proceeds.

10. The settlement agreement with the Center Street defendants additionally provided that the liens of Center Street were assigned to me and were preserved for the benefit of the receivership estate. See Paragraph 6 of the Settlement Agreement approved by order entered on August 31, 2016 [Docket No. 405].

11. The court-approved settlement with the Center Street defendants netted the estate $1.4 million of funds that were freed up to pay to investors and also resulted in the waiver of several million dollars of claims. Additionally, the estate

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

has received the benefit of the Center Street liens that were assigned to the estate as a result of the settlement.

    12.    Settlements with Norkat Financial Inc. and Creative Asset Management, LLC also resulted in the freeing up of sales proceeds to which liens were attached and also obtained a waiver of hundreds of thousands of dollars of claims that were filed against the estate. As a result of my and my professional's efforts in reaching settlements with the junior lienholders and settlements with the three hard money lenders, I have been able to create the pool of funds now available to pay investors. The settlements with Norkat and Creative Asset Management reduced the senior lien positions, which freed up equity in the properties for the junior lienholders as well as for the unsecured investor pool. I have spread the amount of the hard money lenders' remaining lien amounts following settlement on a pro rata basis against each of the properties in which the lenders respectively held a secured interest.

    13.    The settlements with the hard money lenders impacted the amounts available to the secured investor claims set forth herein to the extent that the lenders held senior lien positions.  The Accounting attached hereto as Exhibit "4" reflects the amount of the Center Street liens that were assigned to me as of August 31, 2016, the date of Court approval of the settlement, including interest and other charges as of that date as reported by Center Street. The Accounting further reflects a pro rata distribution of the settlement amounts paid to Norkat and Creative Asset Management based upon the original loan amounts of those transactions.

    14.    The settlement amounts owed to the Secured Investors in junior positions were calculated based upon the amount of remaining equity in the properties. This calculation resulted in the amounts proposed to be paid herein to each of the investors holding secured interests in the sales proceeds pursuant to their settlement agreements and claims.

MOTION FOR APPROVAL OF FINAL REPORT AND DISTRIBUTION PLAN

15.   My proposed distribution plan seeks to return as much money as is possible to the defrauded victims in this case. I received 76 claims submitted by the Investors prior to the Claims Bar Date. I have also received 14 claims from Noninvestors.  Following payment to allowed secured claimants, I propose to pay the balance of the funds in the estate to claimants in the priority scheme attached hereto as Exhibit "3."

16.   In connection with this Receivership, I have accumulated more than 50 boxes of documents and other materials, which are located in my office and the offices of the professionals I have retained to assist me in this matter. Accordingly, I request the authority to destroy, or otherwise dispose of, all documents and other items relating to the Receivership, in my discretion and at such time as I deem proper if within thirty (30) days after written notice to the SEC, the SEC does not take custody of such records or items. I will hold all tax records that I am required to retain for the requisite amount of time and then thereafter destroy them.

17.   I have seized and liquidated all possible meaningful Receivership assets known to me. There is no pending litigation involving the estate or estate assets. There are no remaining unpaid or uncollected judgments with the exception of the contempt amount owed by Rashid Khalfani. Further, with the payment of the accrued and final fees and costs of the Receivership and the final distribution to claimants as requested herein and in the Motion for Fees, all assets of the Receivership will be subject to disbursement. As such, I will have completed my responsibilities under the Orders Appointing Receiver and respectfully request that the Court enter an order pursuant to this Motion that closes the Receivership and discharges me as the Receiver without further order from this Court effective upon my filing a Closing Declaration in which I attest that I have received final tax clearance from the IRS, and paid the final fees and costs of the Receivership. I request the Court's order discharge me and my agents, employees, members,

1  officers, independent contractors, attorneys and representatives and relieve me, my
2  agents, employees, members, officers, independent contractors, attorneys and
3  representatives of all duties, liabilities, and responsibilities pertaining to this
4  Receivership.

5      18.   I will mail and/or email the form of Notice attached hereto as Exhibit
6  "5" to all known claimants, including Investors, Noninvestors, and taxing
7  authorities. The Notice recites that I will post the Notice as well as the Motion on
8  my website at cloud.mosierco.com, Username: CapitalCove, Password: investor. I
9  will post the Notice and the Motion on his website concurrently with the filing of
10 the Notice and Motion.

11

12     I declare under penalty of perjury under the laws of United States of America
13 that the foregoing is true and correct.

14     Executed at Costa Mesa, California, on February 19, 2018.

15

16

17 ROBERT P. MOSIER

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR APPROVAL OF FINAL REPORT AND
DISTRIBUTION PLAN

EXHIBIT 1

1   Robert P. Mosier
    Craig M. Collins, CPA
2   Ryan Baker, Senior Financial Analyst
    MOSIER & COMPANY, INC.
3   3151 Airway Avenue, Suite A-1
    Costa Mesa, California   92626
4   Telephone:   (714) 432-0800
    Facsimile:   (714) 432-7329
5   E-Mail:  Rmosier@Mosierco.com

6   Court Appointed Receiver

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  **SECURITIES AND EXCHANGE**          ) Case No: SACV 15-00980
    **COMMISSION,**                      ) JLS(JCX)
12                                       ) Assigned for all purposes to the
                 **Plaintiff,**          ) Honorable Josephine L. Staton
13                                       )
    **vs.**                              ) **RECEIVER'S FINAL ACCOUNT**
14                                       ) **AND REPORT.  DECLARATION**
                                         ) **OF THE RECEIVER, ROBERT P.**
15  **CAPITAL COVE BANCORP LLC;**        ) **MOSIER.**
    **CHRISTOPHER M. LEE aka**           )
16  **RASHID K. KHALFANI,**              ) **[No Hearing Set]**
                                         )
17               **Defendants.**         )
                                         )
18                                       )
19

20        Robert P. Mosier, the duly appointed Receiver ("Receiver") for Capital

21  Cove Bancorp LLC and its subsidiaries and/or affiliates (collectively "CCB"),

22  respectfully submits this Final Account and Report ("FAR") for the

23  Receivership estate of CCB.  The Receivership is thirty-one months old

24

25  (June 18, 2015 through January 31, 2018), and the last Receiver's report

26  was submitted to Court on November 29, 2016.  With respect to this FAR,

27

28  your Receiver respectfully represents the following:

---

CCB FAR 2-6-18 Final CMC                    1                    2/12/2018 4:20 PM

**Receiver's Final Account and Report**

Exhibit 1
Page No. 000031

**Limitation and Organization:**   This FAR is being prepared near the conclusion of the case.  While most of the data is known at this point, there is still the possibility that new information could change the calculations and conclusions of this FAR.   This report is organized into three sections: (A) Overview; (B) Financial Review; and (C) Fees and Costs Summary.

## A. OVERVIEW

1.    Activity Update:   All claims over the known Receivership assets of value have been resolved.  The last asset recovered was the personal residence of Defendant R. K. Khalfani ("RKK"), which was sold for $1,419,000 million; and after paying the underlying mortgage, the estate netted $340,000.  The house sold in July and closed on September 1, 2017. The Court has ordered RKK to pay $70,524.88 to the Receivership estate for the damages he did to the residence before moving out; nevertheless, RKK has not paid, and his attorney has failed to respond to demands for payment.  Tax returns for CCB were filed on November 10, 2017; the tax authority has until mid-May 2018 to review.   At this point, and subject to change, the Receiver estimates that investors will ultimately recover 10% to 13% of their net investment.   Timing for an initial distribution is the second quarter, 2018, depending on approval of this FAR, the status of final tax clearance and assuming there are no complications or continuances of the tax review process.

2.  <u>Litigation Resolved:</u>  As set forth in Exhibit "A," the Receiver filed three lawsuits against hard money lenders that had secured 1st priority trust deeds on many of the residential, fix and flip properties.  These lenders originally sought to be paid $7.9 million per their recorded trust deeds. Through litigation and the resulting settlements, the three lenders were paid off for $5.3 million.  Per the Court approval, the litigation against these lenders was handled by lawyers on a contingent fee basis given the uncertainty of the litigation results, and the contingent fees with costs were approximately $828 thousand or 32.6% of the recovery.  As a result, the Receivership estate recovered over $1.7 million, which can be distributed to the investors/victims.

3.  <u>Tax Returns:</u>  The final matter in the Receivership Estate was to prepare and file tax returns for CCB, which CCB had never done in its entire history.  Recreating several years of tax returns generally would have been a monumental task; however, in this case, it was made seeking constructive trust status.  The result of this means that just one return for all of the entities had to be filed for 2015, 2016 and 2017.  As noted above, the Receiver filed these returns on November 10, 2017, which are under review by the taxing authorities until mid-May 2018.  If the taxing authorities challenge any of the returns, the process could take another two years which will likely impact the final distribution.

## B. FINANCIAL REVIEW

4.    Receipts to the General Fund: Exhibit "B" presents a summary of cash receipts and disbursements for the Receivership estate from inception to date.  The total receipts are $15.3 million, consisting of proceeds from the sale of properties ($15.1 million), balances from closing bank accounts of the Defendant, and miscellaneous rents and other income (for an additional $245,000).

5.    Disbursements from the General Fund: Exhibit "B" presents four categories of disbursements over the case life plus a summary as follows:

a.  The largest disbursements went to the secured hard money lenders.  As outlined above, the three hard money defendants in the Receiver-filed litigation were paid $6.2 million including contingent fees paid to counsel – an important expenditure to limit the amount ultimately paid.

b.  The second largest expenditure was for uncontested mortgages that had been properly recorded against the properties.  Including the sale commissions, property taxes and other expenses, this expenditure totals $5.9 million.

c.  The costs to operate and to preserve the properties prior to the auction was $241.1 thousand, the largest single expenditure going for repairs and maintenance.

d.  The next category of expenses are the Receivership costs that total $514.6 thousand that has been paid to date.  Also included in this category are salaries for those CCB employees that were retained to assist the Receiver going forward.  The total for this final category was $551 thousand.

e.  The expenditures to date total $12.9 million, leaving a current cash balance of $2.4 million.

6.   _Prospective Expenditures_: Exhibit "C" is a summary of proposed expenditures/distribution of the $2.4 million cash on hand.  As noted below, most of these remain subject to Court approval.  On the top of Exhibit "C," there are five classes of claimants: (a) Estimated Administrative Professional Fees ($844,902.06); and (b) Investors' Secured Claims ($250,705) – both categories "a" and "b" will be paid, subject to Court approval.   The next line item on the schedule is the Investors' Unsecured Claims that are currently scheduled to receive $1,317,684.  The last two classes of claimants are scheduled to receive nothing – non-investor claims and finally, tax claims based upon this Court's Order Establishing a Constructive Trust.

7.   _Reconciliation of the Claims_: Exhibit "D" is a reconciliation of the Investor Unsecured Claims.  The Exhibit shows the Investor claims started at $17.3 million.  Through the claims process, the amount was reduced to $10.9 million, which is further reduced by a secured portion that was already paid ($595,989).  The amount of cash remaining in the Receivership Estate for distribution to investors is currently calculated to be $1,317,684, which is a distribution of 13.062% of the current claims' outstanding balance.  As noted above, this number is still subject to change either up or down, but it represents the current status subject to review of the tax return, approval of fees and costs (items that might reduce the recovery) and a potential collection of the RKK judgment (that might increase the recovery).

**Receiver's Final Account and Report**
Exhibit 1
Page No. 000035

## D. FEES AND COSTS SUMMARY

8.      Fees/Costs To-Date for the Receiver and Staff. Exhibit "E" is a summary of the fees/costs for the entire case, from June 18, 2015 through the close of the case. Detailed times slips from January 1, 2016 through the close of the case are submitted in the Second and Final Fee Application.

9.      Receiver: The total fees for the entire case for Robert P. Mosier, Receiver, are $220,043.60.   Costs are $0.   The total amount owing is $134,094.52.  The average hourly rate for the Receiver is $336.47.

10.     Receiver's Administrative Staff:   This is the field agent and bookkeeping staff.   The individuals are Jim LeSieur (on sight), Nancy Michenaud/Controller,  Aurora  Bloom/Assistant  Bookkeeper  and  two sequential paralegals.   The total fees are $116,034.80; notary and other costs are $611.60. The total amount owing is $58,435.42.   The blended hourly rate is $90.52.  Total administrative costs, including storage and the eventual destruction of records, is $8,538.91, of which $2,616.89 is owing.

11.     Receiver's In-House Accounting Staff: This category includes Craig M. Collins/CPA and Financial Analyst Ryan C. Baker, with total fees of $283,236.50, for the forensic accounting effort.  Direct Costs are $362.25. The unpaid balance is $186,338.83.  The blended hourly rate is $219.68. This in-house forensic effort replaced an accounting firm that reduced the projects fees in this category by more than half.

12.   Total Receiver Fees and Costs:  All in, the fees for the Receiver and his staff are $619,314.90 with costs of $9,512.76.  The amount owing is $381,485.65.  The blended hourly rate is $192.02.  As a percent of revenues, the total equals 4.0% of total revenues.

13.   Comparison of the Receiver's Fees to What Is Allowed Under the Bankruptcy Code:   A federal equity receiver is in the same genre as a Federal Bankruptcy Trustee.   The U. S. Bankruptcy Code approved by Congress allows the bankruptcy trustee personally to be compensated at approximately 3.2% of gross revenues that pass through the estate (in a comparably sized case).   External accountants and counsel are in addition to this percentage.   In this case, the Receiver plus all staff members have total fees and costs of roughly 4%.  The Receiver's fee alone as a percent of gross revenues is 1.3%.   This is a favorable result for the investors.

14.   Counsel Diamond McCarthy:  The total hourly fees for counsel total $583,371.53 (including a $6,500 reserve for fees & costs to close-out the case) with costs of $53,442.00.   The unpaid balance is $428,441.28.  *See* Second and Final Fee Application filed separately for details.

15.   Tax Preparer Accountant:  Dominic Lobuglio, CPA, Inc. is the firm that prepared and filed the tax returns. The fees of $34,623.05 (including a reserve of $5,000 for fees & costs to close-out the case) plus costs of $352.09 total $34,975.14.  Nothing has been paid to date.

16.   <u>Original Forensic Accountants:</u>   Brandlin & Associates started as forensic accounts but were replaced by the Receivers' in-house accountants. Brandlin was paid $45,317.33, and is not owed any additional fees or costs.

Date:  February 6, 2018

_____
Robert P. Mosier
Federal Equity Receiver

**Receiver's Final Account and Report**

Exhibit 1
Page No. 000038

## DECLARATION OF ROBERT P. MOSIER

I, Robert P. Mosier, declare and affirm as follows:  I am the duly appointed Receiver in this matter and have first-hand knowledge about the following facts except where otherwise noted.  If called upon to testify, I could do so competently.

I have personally prepared this Final Account and Report.  The descriptions of the activities of the Receiver are accurate to the best of my knowledge and belief.   Exhibit "A" is a summary of cash flow related to the contingent fee litigation.   Exhibit "B" is summary of cash flow for the entire case through January 30, 2018.   Exhibit "C" is a proposed payment to selected priority creditors.  Exhibit "D" is a reconciliation of Investor claims and other non-priority claims. Exhibit "E" is a summary of the fees and costs of the Receiver and his staff for the entire case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.   This declaration is executed on the 6th day of February 2018 in Costa Mesa, California.

Robert P. Mosier
Federal Equity Receiver

**Receiver's Final Account and Report**

Exhibit 1
Page No. 000039

## INDEX OF EXHIBITS

1

2

3  **Exhibit A:**     **Summary of Contingent Fee Litigation Cash Flow**

4  **Exhibit B:**     **Summary of Cash Flow through January 30, 2018**

5
   **Exhibit C:**     **Proposed Payments to Priority Creditors**
6

7  **Exhibit D:**     **Summary of Unsecured Investor Claims Plus Other Non-Priority Claims**

8

9  **Exhibit E:**     **Summary of Fees and Costs**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INDEX OF EXHIBITS

**Exhibit A:**     Summary of Contingent Fee Litigation Cash Flow

**Exhibit B:**     Summary of Cash Flow through January 30, 2018

**Exhibit C:**     Proposed Payments to Priority Creditors

**Exhibit D:**     Summary of Unsecured Investor Claims Plus Other Non-Priority Claims

**Exhibit E:**     Summary of Fees and Costs

EXHIBIT "A"

Exhibit 1
Page No. 000042

# CAPITAL COVE BANCORP, LLC
## COMPROMISES WITH HARD MONEY LENDERS

| | Total Loan Balances | Amount Paid | Amount Compromised | | Contingent Fees Paid | Related Costs | Total Contingent Fees plus Costs | | Total Benefit |
|---|---|---|---|---|---|---|---|---|---|
| | (A) | (B) | (C) = (A-B) | | (D) | (E) | (F) = (D+E) | | (G) = (C-F) |
| Lender #1 | $5,338,546 | $3,238,546 | $2,100,000 | | $700,000 | $22,315 | $722,315 | | $1,377,685 |
| Lender #2 | 2,215,440 | 1,985,000 | 230,440 | | 76,045 | 9,579 | 85,624 | | 144,816 |
| Lender #3 | 358,111 | 150,000 | 208,111 | | 20,000 | 0 | 20,000 | | 188,111 |
| | $7,912,097 | $5,373,546 | $2,538,551 | | $796,045 | $31,894 | $827,939 | | $1,710,612 |
| | | | | | | | 32.61% | | 67.39% |

K:\1700FLDR\1713 Capital Cove SEC\[LENDER COMPROMISES on LOAN BALANCES.xlsx]LENDER CLAIMS

2/12/2018 15:33

Exhibit 1
Page No. 000043

EXHIBIT "B"

Exhibit 1
Page No. 000044

# CAPITAL COVE BANCORP LLC et al
## SCHEDULE of CASH FLOW
### from JUNE 18, 2015 through JANUARY 30, 2018



| # | Description | | | | |
|---|---|---|---|---|---|
| 1 | CASH RECEIPTS: | | | | |
| 2 | TOTAL GROSS PROPERTY SALES PROCEEDS | | | | $15,066,036 |
| 3 | TURNOVER of FUNDS at BEGINNING of CASE: | | | | |
| 4 | CHASE BANK | | | $151,830 | |
| 5 | BANK of AMERICA | | | 3,487 | |
| 6 | TOTAL TURNOVER of FUNDS | | | | 155,317 |
| 7 | OTHER RECEIPTS: | | | | |
| 8 | RENTAL INCOME | | | 55,961 | |
| 9 | REFUND of ESCROW DEPOSIT at 4448 ROSE | | | 17,500 | |
| 10 | ALL OTHER RECEIPTS | | | 16,836 | |
| 11 | TOTAL OTHER RECEIPTS | | | | 90,297 |
| 12 | TOTAL CASH RECEIPTS | | | | 15,311,650 |
| 13 | CASH DISBURSEMENTS: | | | | |
| 14 | SETTLEMENT AGREEMENTS with LENDERS: | LENDER #1 | | 3,238,546 | |
| 15 | | LENDER #2 | | 1,985,000 | |
| 16 | | LENDER #3 | | 150,000 | |
| 17 | DIAMOND McCARTHY's CONTINGENT FEES & COSTS | | | 827,939 | |
| 18 | TOTAL SETTLEMENT AGREEMENTS with LENDERS | | | 6,201,485 | |
| 19 | ITEMS PAID through ESCROW: MORTGAGES | | $4,551,894 | | |
| 20 | COMMISSIONS | | 884,110 | | |
| 21 | PROPERTY TAXES | | 350,781 | | |
| 22 | OTHER | | 118,162 | | |
| 23 | TOTAL ITEMS PAID through ESCROW | | | 5,904,946 | |
| 24 | PROPERTY COSTS: | | | | |
| 25 | REPAIRS & MAINTENANCE | | 74,734 | | |
| 26 | SUBCONTRACTORS | | 46,534 | | |
| 27 | PROPERTY INSURANCE | | 41,828 | | |
| 28 | WATER & SEWER | | 15,456 | | |
| 29 | LANDSCAPING | | 13,378 | | |
| 30 | TAKEOVER & SECURE PROPERTIES | | 9,063 | | |
| 31 | ELECTRICITY | | 9,429 | | |
| 32 | POOL SERVICE & MAINTENANCE | | 6,279 | | |
| 33 | PROPERTY MANAGEMENT | | 3,550 | | |
| 34 | TRASH | | 3,270 | | |
| 35 | GAS | | 2,689 | | |
| 36 | HEATING & VENTILATION | | 2,072 | | |
| 37 | SECURITY / ALARM SERVICE | | 1,940 | | |
| 38 | ALL OTHER DISBURSEMENTS | | 10,881 | | |
| 39 | TOTAL PROPERTY COSTS | | | 241,102 | |
| 40 | TOTAL SETTLEMENTS, ESCROW ITEMS & PROPERTY COSTS | | | 12,347,533 | |
| 41 | HEADQUARTER'S EXPENSES: | | | | |
| 42 | PROFESSIONALS' FEES & COSTS: | | | | |
| 43 | DIAMOND McCARTHY (HOURLY FEES) | | 208,372 | | |
| 44 | MOSIER & COMPANY, INC. | | 260,942 | | |
| 45 | BRANDLIN & ASSOCIATES | | 45,317 | | |
| 46 | LoBUGIO & SIGMAN | | 0 | | |
| 47 | TOTAL PROFESSIONALS' FEES & COSTS | | 514,631 | | |
| 48 | CCB STAFF HELDOVER | | 16,892 | | |
| 49 | RENT, MOVING & STORAGE | | 13,545 | | |
| 50 | ADMINISTRATIVE COSTS | | 3,100 | | |
| 51 | ADVERTISING & MARKETING (SIGNS) | | 1,379 | | |
| 52 | TELEPHONE & COMMUNICATIONS | | 780 | | |
| 53 | MIRROR THE COMPUTERS | | 500 | | |
| 54 | TOTAL HEADQUARTER'S EXPENSES | | | 550,827 | |
| 55 | TOTAL of ALL CASH DISBURSEMENTS | | | | 12,898,359 |
| 56 | TOTAL CASH CURRENTLY on HAND | | | | $2,413,291 |

EXHIBIT "C"

Exhibit 1
Page No. 000046

# CAPITAL COVE BANCORP, LLC - CLAIMS SUMMARY

**ESTIMATED TOTAL CASH AVAILABLE for ALL ALLOWED CLAIMS** $2,413,291

## PROPOSED DISTRIBUTION by CLASS of CLAIM:

|  |  | Amount of Claims | Amount to be Paid | Percent of Claims Paid |
|---|---|---|---|---|
| CLASS 1 | ADMINISTRATIVE PROFESSIONAL FEES | $844,902 | $844,902 | 100.000% |
| CLASS 2 | INVESTORS' SECURED CLAIMS (from Property Sales) | 250,705 | 250,705 | 100.000% |
|  | TOTAL CLAIMS TO BE PAID at 100% | 1,095,607 | 1,095,607 |  |
| CLASS 3 | INVESTORS' UNSECURED CLAIMS | 10,087,599 | 1,317,684 | 13.062% |
| CLASS 4 | TAX CLAIMS | 422,144 | 0 | 0.000% |
| CLASS 5 | NON-INVESTOR CLAIMS | 449,241 | 0 | 0.000% |
|  | TOTAL PROPOSED DISTRIBUTIONS | $12,054,591 | $2,413,291 |  |

## CLASS 1:  ADMINISTRATIVE PROFESSIONAL FEES

| First Fee Award & Holdbacks: | Fees Paid | Expenses Paid | Holdback | Total Requested | Proposed Final Distribution Amounts |
|---|---|---|---|---|---|
| 1  Receiver | $145,441.45 | $5,412.84 | $62,332.05 | $213,186.34 | $62,332.05 |
| 2  Mosier & Company, Inc. | 110,087.43 | 0.00 | 41,682.82 | 151,770.25 | 41,682.82 |
| 3  Diamond McCarthy LLP | 183,686.95 | 24,685.30 | 78,722.98 | 287,095.23 | 78,722.98 |
| 4  Brandlin & Associates | 45,317.33 | 0.00 | 0.00 | 45,317.33 | 0.00 |
| 5  Total First Fee Award | $484,533.16 | $30,098.14 | $182,737.84 | $697,369.14 |  |

| Second (and Final) Fee Request: | Fees Incurred | Reserve Requested | Expenses | Total Requested |  |
|---|---|---|---|---|---|
| 6  Receiver | $129,077.61 | $0.00 | $3,737.67 | $132,815.28 | 132,815.28 |
| 7  Mosier & Company, Inc. | 144,655.50 | 0.00 | 0.00 | 144,655.50 | 144,655.50 |
| 8  Diamond McCarthy LLP | 314,461.60 | 6,500.00 | 28,756.70 | 349,718.30 | 349,718.30 |
| 9  LoBuglio & Sigman | 29,623.05 | 5,000.00 | 352.09 | 34,975.14 | 34,975.14 |
| 10  Total Second Fee Request | $617,817.76 | $11,500.00 | $32,846.46 | $662,164.22 |  |

| 11  Total Requested Fees & Costs + Holdbacks from First Fee Request | $1,359,533.36 | $844,902.06 |

## CLASS 2:  INVESTORS' SECURED CLAIMS  (from Sales of Properties)

|  |  | Secured Investor Claims | Amount to be Paid | Percent of Claim Paid |
|---|---|---|---|---|
| 1 | Bartley | $7,247 | $7,247 | 100.000% |
| 2 | Martinez (Portovelo) | 243,458 | 243,458 | 100.000% |
|  | Secured Investor Subtotals | $250,705.00 | $250,705.00 |  |

Exhibit 1
Page No. 000047

EXHIBIT "D"

Exhibit 1
Page No. 000048

# CAPITAL COVE BANCORP, LLC - CLAIMS SUMMARY

## CLASS 3:  INVESTORS' UNSECURED CLAIMS

| Claim # | Investors | Original Amount Claimed | Total Allowed Claim | Secured Portion of Claim that was Paid | Secured Portion of Claim to be Paid | Unsecured Claims after Paid & to be Paid Items | Amount to be Paid on Claim | Percent of Claim to be Paid |
|---|---|---|---|---|---|---|---|---|
| | | | (a) | (b) | (c) | (d = a-b-c) | (e) | (f) = (e/d) |
| 1 | Yu | $250,000 | $250,000 | $0 | $0 | $250,000 | $32,656 | 13.062% |
| 2 | Agoncillo (Pyrk) | 30,000 | 30,000 | 0 | 0 | 30,000 | 3,919 | 13.062% |
| 3 | Alcantra | 625,000 | 370,097 | 0 | 0 | 370,097 | 48,344 | 13.062% |
| 4 | Asante | 75,000 | 75,000 | 0 | 0 | 75,000 | 9,797 | 13.062% |
| 5 | Avina | 140,278 | 140,278 | 0 | 0 | 140,278 | 18,324 | 13.062% |
| 6 | Bartley | 280,000 | 280,000 | 0 | 7,247 | 272,753 | 35,628 | 13.062% |
| 7 | Bemilier | 150,000 | 139,250 | 0 | 0 | 139,250 | 18,189 | 13.062% |
| 8 | Burns | 10,000 | 10,000 | 0 | 0 | 10,000 | 1,306 | 13.062% |
| 9 | Carrero | 105,000 | 90,330 | 0 | 0 | 90,330 | 11,799 | 13.062% |
| 10 | Centeno | 100,000 | 309,500 | 0 | 0 | 309,500 | 40,428 | 13.062% |
| 11 | Cook | 150,000 | 138,750 | 0 | 0 | 138,750 | 18,124 | 13.062% |
| 12 | Corlis | 300,000 | 295,944 | 0 | 0 | 295,944 | 38,657 | 13.062% |
| 13 | Costarakis | 200,000 | 150,375 | 0 | 0 | 150,375 | 19,643 | 13.062% |
| 14 | Divine Properity | 148,100 | 148,100 | 72,447 | 0 | 75,653 | 9,882 | 13.062% |
| 15 | Doezie | 650,000 | 612,501 | 0 | 0 | 612,501 | 80,007 | 13.062% |
| 16 | Duller | 100,000 | 80,000 | 0 | 0 | 80,000 | 10,450 | 13.062% |
| 17 | Empire Realty Group | 50,000 | 36,875 | 0 | 0 | 36,875 | 4,817 | 13.062% |
| 19 | Fellows | 250,000 | 136,875 | 136,875 | 0 | 0 | 0 | 0 |
| 20 | Fintland | 50,000 | 43,125 | 0 | 0 | 43,125 | 5,633 | 13.062% |
| 21 | Fleschman | 180,000 | 139,475 | 0 | 0 | 139,475 | 18,219 | 13.062% |
| 22 | Lee Property Group | 130,791 | 100,780 | 0 | 0 | 100,780 | 13,164 | 13.062% |
| 23 | Gomez | 50,000 | 45,000 | 0 | 0 | 45,000 | 5,878 | 13.062% |
| 24 | Goosby | 20,000 | 20,000 | 0 | 0 | 20,000 | 2,612 | 13.062% |
| 25 | Green | 49,784 | 49,375 | 49,375 | 0 | 0 | 0 | 0 |
| 26 | Griffith | 100,000 | 91,000 | 0 | 0 | 91,000 | 11,887 | 13.062% |
| 27 | Grochowski | 30,000 | 30,000 | 0 | 0 | 30,000 | 3,919 | 13.062% |
| 28 | Haas | 30,000 | 19,125 | 0 | 0 | 19,125 | 2,498 | 13.062% |
| 29 | Hackett | 100,000 | 100,000 | 0 | 0 | 100,000 | 13,062 | 13.062% |
| 30 | Harris | 250,000 | 246,875 | 0 | 0 | 246,875 | 32,248 | 13.062% |
| 31 | Herrera | 67,500 | 52,500 | 0 | 0 | 52,500 | 6,858 | 13.062% |
| 32 | Hutts | 150,000 | 138,750 | 0 | 0 | 138,750 | 18,124 | 13.062% |
| 33 | Jenkins | 64,000 | 43,000 | 0 | 0 | 43,000 | 5,617 | 13.062% |
| 34 | Johnson | 10,000 | 10,000 | 0 | 0 | 10,000 | 1,306 | 13.062% |
| 35 | Julien | 49,000 | 29,750 | 0 | 0 | 29,750 | 3,886 | 13.062% |
| 36 | Kabakibi | 180,000 | 134,550 | 0 | 0 | 134,550 | 17,575 | 13.062% |
| 37 | Kay | 50,000 | 35,000 | 0 | 0 | 35,000 | 4,572 | 13.062% |
| 38 | Hope | 15,000 | 15,000 | 0 | 0 | 15,000 | 1,959 | 13.062% |
| 39 | King | 40,400 | 40,400 | 0 | 0 | 40,400 | 5,277 | 13.062% |
| 40 | LaTorre | 85,000 | 97,795 | 97,795 | 0 | 0 | 0 | 0 |
| 41 | Lim | 50,000 | 35,000 | 0 | 0 | 35,000 | 4,572 | 13.062% |
| 42 | Lowe | 100,000 | 87,500 | 0 | 0 | 87,500 | 11,430 | 13.062% |
| 43 | Martinez | 193,093 | 22,656 | 0 | 0 | 22,656 | 2,959 | 13.062% |
| 44 | Martinez | 6,573,681 | 1,978,800 | 39,497 | 243,458 | 1,695,845 | 221,518 | 13.062% |
| 45 | Moreno | 530,000 | 216,124 | 0 | 0 | 216,124 | 28,231 | 13.062% |
| 46 | Mosqueda | 186,958 | 186,958 | 0 | 0 | 186,958 | 24,421 | 13.062% |
| 47 | Oison | 100,000 | 85,000 | 0 | 0 | 85,000 | 11,103 | 13.062% |
| 48 | Ortiz | 10,000 | 8,200 | 0 | 0 | 8,200 | 1,071 | 13.062% |

**(continued)**

Exhibit 1
Page No. 000049

# CAPITAL COVE BANCORP, LLC - CLAIMS SUMMARY

| Claim # | Investors' Unsecured Claims (continued) | Original Amount Claimed | Total Allowed Claim | Secured Portion of Claim that was Paid | Secured Portion of Claim to be Paid | Unsecured Claims after Paid & to be Paid Items | Amount to be Paid on Claim | Percent of Claim to be Paid |
|---|---|---|---|---|---|---|---|---|
| | | | (a) | (b) | (c) | (d = a-b-c) | (e) | (f) = (e/d) |
| | | | | (continued) | | | | |
| 49 | Pace | 15,000 | 15,000 | 0 | 0 | 15,000 | 1,959 | 13.062% |
| 50 | Palencia | 464,000 | 433,965 | 0 | 0 | 433,965 | 56,686 | 13.062% |
| 51 | Pastore | 71,000 | 71,000 | 0 | 0 | 71,000 | 9,274 | 13.062% |
| 52 | Pitt, Jr. | 243,000 | 221,750 | 0 | 0 | 221,750 | 28,966 | 13.062% |
| 53 | Pitt, Sr. | 100,000 | 62,500 | 0 | 0 | 62,500 | 8,164 | 13.062% |
| 55 | Reid | 103,575 | 68,158 | 0 | 0 | 68,158 | 8,903 | 13.062% |
| 56 | Reynon | 46,500 | 44,175 | 0 | 0 | 44,175 | 5,770 | 13.062% |
| 57 | Richardson | 0 | 44,780 | 0 | 0 | 44,780 | 5,849 | 13.062% |
| 58 | Roberts | 120,000 | 124,596 | 0 | 0 | 124,596 | 16,275 | 13.062% |
| 59 | Roy | 500,000 | 405,000 | 0 | 0 | 405,000 | 52,903 | 13.062% |
| 60 | Ruiz | 250,000 | 208,336 | 0 | 0 | 208,336 | 27,214 | 13.062% |
| 61 | Sadayoshi | 189,000 | 189,000 | 0 | 0 | 189,000 | 24,688 | 13.062% |
| 62 | Shaw | 42,500 | 4,500 | 0 | 0 | 4,500 | 588 | 13.062% |
| 63 | Silver | 25,000 | 23,125 | 0 | 0 | 23,125 | 3,021 | 13.062% |
| 64 | Thillman | 55,000 | 55,000 | 0 | 0 | 55,000 | 7,184 | 13.062% |
| 65 | Thornton | 100,000 | 15,939 | 0 | 0 | 15,939 | 2,082 | 13.062% |
| 66 | Turner | 119,000 | 115,055 | 0 | 0 | 115,055 | 15,029 | 13.062% |
| 67 | Vargas | 75,000 | 75,000 | 0 | 0 | 75,000 | 9,797 | 13.062% |
| 68 | Villegas | 15,000 | 15,000 | 0 | 0 | 15,000 | 1,959 | 13.062% |
| 69 | Vo | 500,000 | 500,000 | 0 | 0 | 500,000 | 65,312 | 13.062% |
| 70 | Walker | 50,000 | 50,000 | 0 | 0 | 50,000 | 6,531 | 13.062% |
| 71 | Wang | 200,000 | 200,000 | 0 | 0 | 200,000 | 26,125 | 13.062% |
| 72 | Williams | 5,600 | 4,302 | 0 | 0 | 4,302 | 562 | 13.062% |
| 73 | Winings | 150,000 | 150,000 | 0 | 0 | 150,000 | 19,594 | 13.062% |
| 74 | Winings | 675,000 | 400,000 | 200,000 | 0 | 200,000 | 26,125 | 13.062% |
| 75 | Woodson | 100,000 | 0 | 0 | 0 | 0 | 0 | 0 |
| 76 | Yoshikawa | 50,000 | 42,500 | 0 | 0 | 42,500 | 5,552 | 13.062% |
| **Unsecured Investor Subtotals** | | $17,322,760 | $10,934,293 | $595,989 | $250,705 | $10,087,599 | $1,317,684 | 13.062% |

## CLASS 4:  TAX CLAIMS

| | ENTITY NAMED on CLAIM/TAX STATEMENT | DESCRIPTION of TAX | AMOUNTS per CLAIM / STATEMENTS | Amount to be Paid on Claim |
|---|---|---|---|---|
| 1 | Capital Cove Bancorp LLC | EDD (4/1/2012 - 3/31/2016) | $378,748 | $0 |
| 2 | Capital Cove International, Inc. | Franchise Tax Board (2012-2015 Taxes) | 38,466 | 0 |
| 3 | Internal Revenue Service | Late Filing Penalty for FYE 6/30/2015 | 4,680 | 0 |
| 4 | Capital Cove REO Opportunities Fund | Franchise Tax Board (2015 Tax) | 250 | 0 |
| | | **Subtotal for Tax Claims** | $422,144 | $0 |

Exhibit 1
Page No. 000050

# CAPITAL COVE BANCORP, LLC - CLAIMS SUMMARY

### CLASS 5:  NON-INVESTOR CLAIMS

| | Claim # | VENDOR | CLAIMS FILED | Amount to be Paid on Claim |
|---|---|---|---|---|
| 1 | 77 | ABS Air Con | $8,490 | $0 |
| 2 | 78 | The Termite Guy | 8,070 | 0 |
| 3 | 79 | Maverick RC LLC | 102,043 | 0 |
| 4 | 80 | Precision Air Con | 250 | 0 |
| 5 | 81 | Robert Half Int'l | 17,500 | 0 |
| 6 | 82 | Maria Unkovich | 9,435 | 0 |
| 7 | 83 | Brian Silva | 1,700 | 0 |
| 8 | 84 | San Gabriel Water | 127 | 0 |
| 9 | 85 | San Gabriel Water | 110 | 0 |
| 10 | 86 | Thomasina Reed | 71,205 | 0 |
| 11 | 87 | Donald Clarke | 141,924 | 0 |
| 12 | 88 | Brafton Inc. | 36,829 | 0 |
| 13 | 89 | Albert Williams | 49,918 | 0 |
| 14 | 90 | Financial Credit Network | 1,639 | 0 |
| | | **Subtotal for Noninvestors** | **$449,241** | **$0** |

K:\1700FLDR\1713 Capital Cove SEC\[TOTAL PROF & ADMIN FEES.JANUARY 2016 - JANUARY 2018 TO CLOSE.xls]     2/12/2018 14:45

Exhibit 1
Page No. 000051

EXHIBIT "E"

Exhibit 1
Page No. 000052

# RECEIVERSHIP ESTATE of CAPITAL COVE INTERNATIONAL, LLC

## *CUMULATIVE*  SUMMARY of PROFESSIONAL FEES, ADMINISTRATIVE FEES & COSTS INCURRED

### FOR THE PERIOD from JUNE 2015 through JANUARY 2018 to CLOSE

| CUMULATIVE SUMMARY of ALL FEES and COSTS | HOURS | HOURLY RATE | TOTAL FEES | COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|
| RECEIVER | 653.98 | $336.47 | $220,043.60 | $0.00 | $220,043.60 | $85,949.08 | $134,094.52 |
| ADMINISTRATIVE FEES | 1,281.90 | $90.52 | 116,034.80 | 611.60 | 116,646.40 | 58,210.98 | 58,435.42 |
| ADMINISTRATIVE COSTS | | | | 8,538.91 | 8,538.91 | 5,922.02 | 2,616.89 |
| TOTAL RECEIVER + ADMINISTRATION | 1,935.88 | $173.60 | 336,078.40 | 9,150.51 | 345,228.91 | 150,082.08 | 195,146.83 |
| ACCOUNTING & BUDGETING | 1,289.30 | $219.68 | 283,236.50 | 362.25 | 283,598.75 | 97,259.93 | 186,338.83 |
| TOTAL FEES AND COSTS | 3,225.18 | $192.02 | $619,314.90 | $9,512.76 | $628,827.66 | $247,342.01 | $381,485.66 |

K:\1700FLDR\1713 Capital Cove SEC\[TOTAL PROF & ADMIN FEES.JANUARY 2018 TO CLOSE.xls]#2

Exhibit 1
Page No. 000053

## RECEIVERSHIP ESTATE of CAPITAL COVE INTERNATIONAL, LLC
### *CUMULATIVE* SUMMARY of *RECEIVER* FEES & COSTS INCURRED
### FOR THE PERIOD from JUNE 2015 through JANUARY 2018 TO CLOSE

| CUMULATIVE SUMMARY of ALL FEES and COSTS | HOURS | HOURLY RATE | TOTAL FEES | COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|
| ROBERT P. MOSIER | 653.98 | $336.47 | $220,043.60 | $0.00 | $220,043.60 | $85,949.08 | $134,094.52 |
| TOTAL RECEIVER | 653.98 | $336.47 | $220,043.60 | $0.00 | $220,043.60 | $85,949.08 | $134,094.52 |

| RECEIVER: ROBERT P. MOSIER | | HOURS | HOURLY RATE | TOTAL FEES | DIRECT COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|---|
| JUNE | 2015 | 68.80 | $324.95 | $22,356.80 | $0.00 | $22,356.80 | $15,649.76 | $6,707.04 |
| JULY | 2015 | 110.78 | $313.97 | 34,781.20 | 0.00 | 34,781.20 | 24,346.84 | 10,434.36 |
| AUGUST | 2015 | 60.80 | $356.00 | 21,644.80 | 0.00 | 21,644.80 | 15,151.36 | 6,493.44 |
| SEPTEMBER | 2015 | 42.40 | $356.00 | 15,094.40 | 0.00 | 15,094.40 | 10,566.08 | 4,528.32 |
| OCTOBER | 2015 | 23.90 | $356.00 | 8,508.40 | 0.00 | 8,508.40 | 5,955.88 | 2,552.52 |
| NOVEMBER | 2015 | 22.70 | $335.61 | 7,618.40 | 0.00 | 7,618.40 | 5,332.88 | 2,285.52 |
| DECEMBER | 2015 | 35.90 | $356.00 | 12,780.40 | 0.00 | 12,780.40 | 8,946.28 | 3,834.12 |
| JANUARY | 2016 | 19.00 | $356.00 | 6,764.00 | 0.00 | 6,764.00 | 0.00 | 6,764.00 |
| FEBRUARY | 2016 | 7.80 | $356.00 | 2,776.80 | 0.00 | 2,776.80 | 0.00 | 2,776.80 |
| MARCH | 2016 | 15.20 | $168.63 | 2,563.20 | 0.00 | 2,563.20 | 0.00 | 2,563.20 |
| APRIL | 2016 | 8.30 | $356.00 | 2,954.80 | 0.00 | 2,954.80 | 0.00 | 2,954.80 |
| MAY | 2016 | 13.20 | $275.09 | 3,631.20 | 0.00 | 3,631.20 | 0.00 | 3,631.20 |
| JUNE | 2016 | 12.80 | $356.00 | 4,556.80 | 0.00 | 4,556.80 | 0.00 | 4,556.80 |
| JULY | 2016 | 7.50 | $356.00 | 2,670.00 | 0.00 | 2,670.00 | 0.00 | 2,670.00 |
| AUGUST | 2016 | 13.50 | $356.00 | 4,806.00 | 0.00 | 4,806.00 | 0.00 | 4,806.00 |
| SEPTEMBER | 2016 | 11.70 | $356.00 | 4,165.20 | 0.00 | 4,165.20 | 0.00 | 4,165.20 |
| OCTOBER | 2016 | 11.40 | $356.00 | 4,058.40 | 0.00 | 4,058.40 | 0.00 | 4,058.40 |
| NOVEMBER | 2016 | 25.60 | $356.00 | 9,113.60 | 0.00 | 9,113.60 | 0.00 | 9,113.60 |
| DECEMBER | 2016 | 7.00 | $356.00 | 2,492.00 | 0.00 | 2,492.00 | 0.00 | 2,492.00 |
| JANUARY | 2017 | 14.00 | $356.00 | 4,984.00 | 0.00 | 4,984.00 | 0.00 | 4,984.00 |
| FEBRUARY | 2017 | 6.40 | $356.00 | 2,278.40 | 0.00 | 2,278.40 | 0.00 | 2,278.40 |
| MARCH | 2017 | 7.50 | $356.00 | 2,670.00 | 0.00 | 2,670.00 | 0.00 | 2,670.00 |
| APRIL | 2017 | 30.80 | $327.10 | 10,074.80 | 0.00 | 10,074.80 | 0.00 | 10,074.80 |
| MAY | 2017 | 15.70 | $356.00 | 5,589.20 | 0.00 | 5,589.20 | 0.00 | 5,589.20 |
| JUNE | 2017 | 9.40 | $280.26 | 2,634.40 | 0.00 | 2,634.40 | 0.00 | 2,634.40 |
| JULY | 2017 | 12.60 | $356.00 | 4,485.60 | 0.00 | 4,485.60 | 0.00 | 4,485.60 |
| AUGUST | 2017 | 6.90 | $356.00 | 2,456.40 | 0.00 | 2,456.40 | 0.00 | 2,456.40 |
| SEPTEMBER | 2017 | 6.80 | $356.00 | 2,420.80 | 0.00 | 2,420.80 | 0.00 | 2,420.80 |
| OCTOBER | 2017 | 2.80 | $356.00 | 996.80 | 0.00 | 996.80 | 0.00 | 996.80 |
| NOVEMBER | 2017 | 11.20 | $356.00 | 3,987.20 | 0.00 | 3,987.20 | 0.00 | 3,987.20 |
| DECEMBER | 2017 | 2.30 | $356.00 | 818.80 | 0.00 | 818.80 | 0.00 | 818.80 |
| JANUARY 2018 TO CLOSE | | 9.30 | $356.00 | 3,310.80 | 0.00 | 3,310.80 | 0.00 | 3,310.80 |
| RECEIVER'S FEES | | 653.98 | $336.47 | 220,043.60 | 0.00 | 220,043.60 | 85,949.08 | 134,094.52 |

K:\1700FLDR\1713 Capital Cove SEC\[TOTAL PROF & ADMIN FEES.JANUARY 2018 TO CLOSE.xls]#2

2/12/18 15:54

Exhibit 1
Page No. 000054

# RECEIVERSHIP ESTATE of CAPITAL COVE INTERNATIONAL, LLC
## *CUMULATIVE* SUMMARY of ADMINISTRATIVE FEES & COSTS INCURRED
### FOR THE PERIOD from JUNE 2015 through JANUARY 2018 TO CLOSE

| CUMULATIVE SUMMARY of ALL FEES and COSTS | HOURS | HOURLY RATE | TOTAL FEES | COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|
| ADMINISTRATIVE FEES | 1,281.90 | $90.52 | $116,034.80 | $611.60 | $116,646.40 | $58,210.98 | $58,435.42 |
| ADMINISTRATIVE COSTS | | | | 8,538.91 | 8,538.91 | 5,922.02 | 2,616.89 |
| TOTAL ADMINISTRATIVE | 1,281.90 | $90.52 | $116,034.80 | $9,150.51 | $125,185.31 | $64,133.00 | $61,052.31 |
| | | | | 0.00 | 0.00 | 0.00 | 0.00 |

| FIELD AGENTS: JIM LESIEUR | | HOURS | HOURLY RATE | TOTAL FEES | DIRECT COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|---|
| JUNE | 2015 | 89.50 | $150.00 | 13,425.00 | 0.00 | 13,425.00 | 9,397.50 | 4,027.50 |
| JULY | 2015 | 163.10 | $150.00 | 24,465.00 | 0.00 | 24,465.00 | 17,125.50 | 7,339.50 |
| AUGUST | 2015 | 31.80 | $150.00 | 4,770.00 | 0.00 | 4,770.00 | 3,339.00 | 1,431.00 |
| SEPTEMBER | 2015 | 22.40 | $150.00 | 3,360.00 | 0.00 | 3,360.00 | 2,352.00 | 1,008.00 |
| OCTOBER | 2015 | 25.50 | $150.00 | 3,825.00 | 0.00 | 3,825.00 | 2,677.50 | 1,147.50 |
| NOVEMBER | 2015 | 13.70 | $150.00 | 2,055.00 | 0.00 | 2,055.00 | 1,438.50 | 616.50 |
| DECEMBER | 2015 | 4.40 | $150.00 | 660.00 | 0.00 | 660.00 | 462.00 | 198.00 |
| JANUARY | 2016 | 0.60 | $150.00 | 90.00 | 0.00 | 90.00 | 0.00 | 90.00 |
| FEBRUARY | 2016 | 2.40 | $150.00 | 360.00 | 0.00 | 360.00 | 0.00 | 360.00 |
| MARCH | 2016 | 6.60 | $150.00 | 990.00 | 0.00 | 990.00 | 0.00 | 990.00 |
| APRIL | 2016 | 0.60 | $150.00 | 90.00 | 0.00 | 90.00 | 0.00 | 90.00 |
| MAY | 2016 | 0.40 | $150.00 | 60.00 | 0.00 | 60.00 | 0.00 | 60.00 |
| AUGUST | 2016 | 1.10 | $150.00 | 165.00 | 0.00 | 165.00 | 0.00 | 165.00 |
| SEPTEMBER | 2016 | 0.20 | $150.00 | 30.00 | 0.00 | 30.00 | 0.00 | 30.00 |
| NOVEMBER | 2016 | 0.40 | $150.00 | 60.00 | 0.00 | 60.00 | 0.00 | 60.00 |
| FIELD AGENTS | | 362.70 | $150.00 | $54,405.00 | $0.00 | $54,405.00 | $36,792.00 | $17,613.00 |

| BOOKKEEPING & PARALEGAL: NANCY E. MICHENAUD | | HOURS | HOURLY RATE | TOTAL FEES | DIRECT COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|---|
| JUNE | 2015 | 26.90 | $95.00 | $2,555.50 | $0.00 | $2,555.50 | $1,788.85 | $766.65 |
| JULY | 2015 | 52.80 | $95.00 | 5,016.00 | 0.00 | 5,016.00 | 3,511.20 | 1,504.80 |
| AUGUST | 2015 | 33.90 | $95.00 | 3,220.50 | 0.00 | 3,220.50 | 2,254.35 | 966.15 |
| SEPTEMBER | 2015 | 23.00 | $95.00 | 2,185.00 | 0.00 | 2,185.00 | 1,529.50 | 655.50 |
| OCTOBER | 2015 | 23.50 | $95.00 | 2,232.50 | 0.00 | 2,232.50 | 1,562.75 | 669.75 |
| NOVEMBER | 2015 | 16.40 | $95.00 | 1,558.00 | 0.00 | 1,558.00 | 1,090.60 | 467.40 |
| DECEMBER | 2015 | 18.00 | $95.00 | 1,710.00 | 0.00 | 1,710.00 | 1,197.00 | 513.00 |
| JANUARY | 2016 | 26.80 | $95.00 | 2,546.00 | 0.00 | 2,546.00 | 0.00 | 2,546.00 |
| FEBRUARY | 2016 | 6.40 | $95.00 | 608.00 | 0.00 | 608.00 | 0.00 | 608.00 |
| MARCH | 2016 | 4.40 | $95.00 | 418.00 | 0.00 | 418.00 | 0.00 | 418.00 |
| APRIL | 2016 | 3.10 | $95.00 | 294.50 | 0.00 | 294.50 | 0.00 | 294.50 |
| MAY | 2016 | 3.30 | $95.00 | 313.50 | 0.00 | 313.50 | 0.00 | 313.50 |
| JUNE | 2016 | 9.10 | $95.00 | 864.50 | 0.00 | 864.50 | 0.00 | 864.50 |
| JULY | 2016 | 2.80 | $95.00 | 266.00 | 0.00 | 266.00 | 0.00 | 266.00 |
| AUGUST | 2016 | 4.00 | $95.00 | 380.00 | 0.00 | 380.00 | 0.00 | 380.00 |
| SEPTEMBER | 2016 | 5.40 | $95.00 | 513.00 | 0.00 | 513.00 | 0.00 | 513.00 |
| OCTOBER | 2016 | 1.60 | $95.00 | 152.00 | 0.00 | 152.00 | 0.00 | 152.00 |
| NOVEMBER | 2016 | 4.60 | $95.00 | 437.00 | 0.00 | 437.00 | 0.00 | 437.00 |
| DECEMBER | 2016 | 2.50 | $95.00 | 237.50 | 0.00 | 237.50 | 0.00 | 237.50 |
| JANUARY | 2017 | 5.00 | $95.00 | 475.00 | 0.00 | 475.00 | 0.00 | 475.00 |
| FEBRUARY | 2017 | 1.50 | $95.00 | 142.50 | 0.00 | 142.50 | 0.00 | 142.50 |
| MARCH | 2017 | 10.30 | $95.00 | 978.50 | 0.00 | 978.50 | 0.00 | 978.50 |
| APRIL | 2017 | 7.70 | $95.00 | 731.50 | 0.00 | 731.50 | 0.00 | 731.50 |
| MAY | 2017 | 7.40 | $95.00 | 703.00 | 0.00 | 703.00 | 0.00 | 703.00 |
| JUNE | 2017 | 10.10 | $95.00 | 959.50 | 0.00 | 959.50 | 0.00 | 959.50 |
| JULY | 2017 | 4.50 | $95.00 | 427.50 | 0.00 | 427.50 | 0.00 | 427.50 |
| AUGUST | 2017 | 3.10 | $95.00 | 294.50 | 0.00 | 294.50 | 0.00 | 294.50 |
| SEPTEMBER | 2017 | 12.10 | $95.00 | 1,149.50 | 0.00 | 1,149.50 | 0.00 | 1,149.50 |
| OCTOBER | 2017 | 2.10 | $95.00 | 199.50 | 0.00 | 199.50 | 0.00 | 199.50 |
| NOVEMBER | 2017 | 2.60 | $95.00 | 247.00 | 0.00 | 247.00 | 0.00 | 247.00 |
| DECEMBER | 2017 | 0.70 | $95.00 | 66.50 | 0.00 | 66.50 | 0.00 | 66.50 |
| JANUARY 2018 TO CLOSE | | 40.00 | $95.00 | 3,800.00 | 0.00 | 3,800.00 | 0.00 | 3,800.00 |
| TOTAL MICHENAUD | | 375.60 | $95.00 | 35,682.00 | 0.00 | 35,682.00 | 12,934.25 | 22,747.75 |

K:\1700\FLDR\1713 Capital Cove SEC\[TOTAL PROF & ADMIN FEES JANUARY 2018 TO CLOSE.xl

Exhibit 1
Page No. 000055

# RECEIVERSHIP ESTATE of CAPITAL COVE INTERNATIONAL, LLC
## *CUMULATIVE* SUMMARY of ADMINISTRATIVE FEES & COSTS INCURRED
### FOR THE PERIOD from JUNE 2015 through JANUARY 2018 TO CLOSE
#### (CONTINUED)

**BOOKKEEPING & PARALEGAL (Continued):**

| AURORA BLOOM | | HOURS | HOURLY RATE | TOTAL FEES | DIRECT COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|---|
| JUNE | 2015 | 3.20 | $50.00 | 160.00 | 0.00 | 160.00 | 112.00 | 48.00 |
| JULY | 2015 | 82.90 | $50.00 | 4,145.00 | 281.60 | 4,426.60 | 3,183.10 | 1,243.50 |
| AUGUST | 2015 | 40.80 | $50.00 | 2,040.00 | 20.00 | 2,060.00 | 1,448.00 | 612.00 |
| SEPTEMBER | 2015 | 24.70 | $50.00 | 1,235.00 | 20.00 | 1,255.00 | 884.50 | 370.50 |
| OCTOBER | 2015 | 19.60 | $50.00 | 980.00 | 10.00 | 990.00 | 696.00 | 294.00 |
| NOVEMBER | 2015 | 21.00 | $50.00 | 1,050.00 | 0.00 | 1,050.00 | 735.00 | 315.00 |
| DECEMBER | 2015 | 20.90 | $50.00 | 1,045.00 | 190.00 | 1,235.00 | 921.50 | 313.50 |
| JANUARY | 2016 | 22.60 | $50.00 | 1,130.00 | 10.00 | 1,140.00 | 0.00 | 1,140.00 |
| FEBRUARY | 2016 | 17.40 | $50.00 | 870.00 | 0.00 | 870.00 | 0.00 | 870.00 |
| MARCH | 2016 | 13.40 | $50.00 | 670.00 | 10.00 | 680.00 | 0.00 | 680.00 |
| APRIL | 2016 | 9.80 | $50.00 | 490.00 | 0.00 | 490.00 | 0.00 | 490.00 |
| MAY | 2016 | 7.30 | $50.00 | 365.00 | 0.00 | 365.00 | 0.00 | 365.00 |
| JUNE | 2016 | 6.10 | $50.00 | 305.00 | 10.00 | 315.00 | 0.00 | 315.00 |
| JULY | 2016 | 12.50 | $50.00 | 625.00 | 0.00 | 625.00 | 0.00 | 625.00 |
| AUGUST | 2016 | 7.40 | $50.00 | 370.00 | 0.00 | 370.00 | 0.00 | 370.00 |
| SEPTEMBER | 2016 | 6.00 | $50.00 | 300.00 | 0.00 | 300.00 | 0.00 | 300.00 |
| OCTOBER | 2016 | 9.60 | $50.00 | 480.00 | 0.00 | 480.00 | 0.00 | 480.00 |
| NOVEMBER | 2016 | 7.10 | $50.00 | 355.00 | 0.00 | 355.00 | 0.00 | 355.00 |
| DECEMBER | 2016 | 7.30 | $50.00 | 365.00 | 0.00 | 365.00 | 0.00 | 365.00 |
| JANUARY | 2017 | 18.00 | $50.00 | 900.00 | 10.00 | 910.00 | 0.00 | 910.00 |
| FEBRUARY | 2017 | 7.70 | $50.00 | 385.00 | 0.00 | 385.00 | 0.00 | 385.00 |
| MARCH | 2017 | 4.20 | $50.00 | 210.00 | 0.00 | 210.00 | 0.00 | 210.00 |
| APRIL | 2017 | 6.20 | $50.00 | 310.00 | 40.00 | 350.00 | 0.00 | 350.00 |
| MAY | 2017 | 5.20 | $50.00 | 260.00 | 0.00 | 260.00 | 0.00 | 260.00 |
| JUNE | 2017 | 10.20 | $50.00 | 510.00 | 0.00 | 510.00 | 0.00 | 510.00 |
| JULY | 2017 | 5.80 | $50.00 | 290.00 | 0.00 | 290.00 | 0.00 | 290.00 |
| AUGUST | 2017 | 5.70 | $50.00 | 285.00 | 10.00 | 295.00 | 0.00 | 295.00 |
| SEPTEMBER | 2017 | 14.50 | $50.00 | 725.00 | 0.00 | 725.00 | 0.00 | 725.00 |
| OCTOBER | 2017 | 7.80 | $50.00 | 390.00 | 0.00 | 390.00 | 0.00 | 390.00 |
| NOVEMBER | 2017 | 7.70 | $50.00 | 385.00 | 0.00 | 385.00 | 0.00 | 385.00 |
| DECEMBER | 2017 | 5.60 | $50.00 | 280.00 | 0.00 | 280.00 | 0.00 | 280.00 |
| JANUARY 2018 TO CLOSE | | 49.30 | $50.00 | 2,465.00 | 0.00 | 2,465.00 | 0.00 | 2,465.00 |
| TOTAL BLOOM | | 487.50 | $50.00 | 24,375.00 | 611.60 | 24,986.60 | 7,980.10 | 17,006.50 |
| | | | | | | | | |
| KRISTINA GODINEZ | | | | | | | | |
| SEPTEMBER | 2017 | 0.30 | $34.00 | 10.20 | 0.00 | 10.20 | 0.00 | 10.20 |
| JANUARY 2018 TO CLOSE | | 8.00 | $34.00 | 272.00 | 0.00 | 272.00 | 0.00 | 272.00 |
| TOTAL GODINEZ | | 8.30 | $34.00 | 282.20 | 0.00 | 282.20 | 0.00 | 282.20 |
| | | | | | | | | |
| KAYLYN KELLY | | | | | | | | |
| JUNE | 2015 | 4.40 | $27.00 | 118.80 | 0.00 | 118.80 | 83.16 | 35.64 |
| JULY | 2015 | 17.20 | $27.00 | 464.40 | 0.00 | 464.40 | 325.08 | 139.32 |
| AUGUST | 2015 | 1.60 | $27.00 | 43.20 | 0.00 | 43.20 | 30.24 | 12.96 |
| SEPTEMBER | 2015 | 0.00 | $27.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| OCTOBER | 2015 | 1.10 | $27.00 | 29.70 | 0.00 | 29.70 | 20.79 | 8.91 |
| NOVEMBER | 2015 | 0.10 | $27.00 | 2.70 | 0.00 | 2.70 | 1.89 | 0.81 |
| DECEMBER | 2015 | 2.30 | $27.00 | 62.10 | 0.00 | 62.10 | 43.47 | 18.63 |
| JANUARY | 2016 | 1.30 | $27.00 | 35.10 | 0.00 | 35.10 | 0.00 | 35.10 |
| FEBRUARY | 2016 | 9.20 | $27.00 | 248.40 | 0.00 | 248.40 | 0.00 | 248.40 |
| MARCH | 2016 | 2.60 | $27.00 | 70.20 | 0.00 | 70.20 | 0.00 | 70.20 |
| APRIL | 2016 | 8.00 | $27.00 | 216.00 | 0.00 | 216.00 | 0.00 | 216.00 |
| TOTAL KELLY | | 47.80 | $27.00 | 1,290.60 | 0.00 | 1,290.60 | 504.63 | 785.97 |
| | | | | | | | | |
| BOOKKEEPING/PARALEGAL | | 919.20 | $67.05 | $61,629.80 | $611.60 | $62,241.40 | $21,418.98 | $40,822.42 |

K:\1700\FLDR\1713 Capital Cove SEC\TOTAL PROF & ADMIN FEES\JANUARY 2018 TO CLOSE.xls|#

Exhibit 1
Page No. 000056

# RECEIVERSHIP ESTATE of CAPITAL COVE INTERNATIONAL, LLC
## *CUMULATIVE* SUMMARY of ADMINISTRATIVE FEES & COSTS INCURRED
### FOR THE PERIOD from JUNE 2015 through JANUARY 2018 TO CLOSE

### (CONTINUED)

| ADMINISTRATIVE COSTS: | | MISC. CHARGES | TELE-PHONE | POSTAGE | FACSIMILE & XEROX | DELIVERY, FEDEX, etc | TOTAL ADM COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|---|---|
| JUNE | 2015 | $0.00 | $22.85 | $10.02 | $151.90 | $0.00 | $184.77 | $184.77 | $0.00 |
| JULY | 2015 | 0.00 | 5.77 | 153.75 | 661.70 | 207.51 | 1,028.73 | 1,028.73 | 0.00 |
| AUGUST | 2015 | 0.00 | 2.33 | 36.59 | 206.00 | 254.45 | 499.37 | 499.37 | 0.00 |
| SEPTEMBER | 2015 | 0.00 | 0.72 | 35.02 | 119.10 | 66.46 | 221.30 | 221.30 | 0.00 |
| OCTOBER | 2015 | 0.00 | 0.00 | 34.14 | 115.70 | 83.06 | 232.90 | 232.90 | 0.00 |
| NOVEMBER | 2015 | 0.00 | 4.64 | 15.25 | 252.00 | 36.84 | 308.73 | 308.73 | 0.00 |
| DECEMBER | 2015 | 2,188.82 | 0.00 | 41.82 | 184.80 | 0.00 | 2,415.44 | 2,415.44 | 0.00 |
| JANUARY | 2016 | 0.00 | 0.31 | 21.22 | 257.90 | 86.84 | 366.27 | 366.27 | 0.00 |
| FEBRUARY | 2016 | 59.55 | 0.00 | 8.24 | 223.00 | 0.00 | 290.79 | 290.79 | 0.00 |
| MARCH | 2016 | 0.00 | 0.00 | 2.45 | 264.10 | 0.00 | 266.55 | 176.06 | 90.49 |
| APRIL | 2016 | 0.00 | 0.00 | 2.36 | 224.30 | 0.00 | 226.66 | 0.00 | 226.66 |
| MAY | 2016 | 0.00 | 0.00 | 0.47 | 17.80 | 0.00 | 18.27 | 0.00 | 18.27 |
| JUNE | 2016 | 0.00 | 0.00 | 0.00 | 13.00 | 21.99 | 34.99 | 21.99 | 13.00 |
| JULY | 2016 | 0.00 | 0.00 | 0.00 | 21.00 | 0.00 | 21.00 | 0.00 | 21.00 |
| AUGUST | 2016 | 0.00 | 0.00 | 0.94 | 9.40 | 0.00 | 10.34 | 0.00 | 10.34 |
| SEPTEMBER | 2016 | 0.00 | 0.00 | 0.94 | 6.20 | 0.00 | 7.14 | 0.00 | 7.14 |
| OCTOBER | 2016 | 0.00 | 0.00 | 0.47 | 8.80 | 0.00 | 9.27 | 0.00 | 9.27 |
| NOVEMBER | 2016 | 0.00 | 0.00 | 1.41 | 21.40 | 0.00 | 22.81 | 0.00 | 22.81 |
| DECEMBER | 2016 | 0.00 | 0.00 | 0.47 | 0.20 | 0.00 | 0.67 | 0.00 | 0.67 |
| JANUARY | 2017 | 13.40 | 0.00 | 4.96 | 27.20 | 22.84 | 68.40 | 22.84 | 45.56 |
| FEBRUARY | 2017 | 0.00 | 0.00 | 0.94 | 37.20 | 0.00 | 38.14 | 0.00 | 38.14 |
| MARCH | 2017 | 0.00 | 0.00 | 1.41 | 8.40 | 0.00 | 9.81 | 0.00 | 9.81 |
| APRIL | 2017 | 0.00 | 0.00 | 1.65 | 5.60 | 77.74 | 84.99 | 77.74 | 7.25 |
| MAY | 2017 | 0.00 | 0.00 | 0.92 | 10.80 | 75.09 | 86.81 | 75.09 | 11.72 |
| JUNE | 2017 | 0.00 | 0.00 | 4.14 | 35.60 | 0.00 | 39.74 | 0.00 | 39.74 |
| JULY | 2017 | 0.00 | 0.00 | 2.76 | 21.00 | 0.00 | 23.76 | 0.00 | 23.76 |
| AUGUST | 2017 | 0.00 | 0.00 | 2.30 | 1.80 | 0.00 | 4.10 | 0.00 | 4.10 |
| SEPTEMBER | 2017 | 0.00 | 0.00 | 1.38 | 42.00 | 0.00 | 43.38 | 0.00 | 43.38 |
| OCTOBER | 2017 | 0.00 | 0.00 | 0.46 | 10.80 | 0.00 | 11.26 | 0.00 | 11.26 |
| NOVEMBER | 2017 | 0.00 | 0.00 | 55.26 | 9.20 | 0.00 | 64.46 | 0.00 | 64.46 |
| DECEMBER | 2017 | 0.00 | 0.00 | 0.46 | 16.40 | 0.00 | 16.86 | 0.00 | 16.86 |
| JANUARY 2018 TO CLOSE | | 1,258.00 | 0.00 | 246.00 | 377.20 | 0.00 | 1,881.20 | 0.00 | 1,881.20 |
| **TOTAL ADMIN COSTS** | | **$3,519.77** | **$36.62** | **$688.20** | **$3,361.50** | **$932.82** | **$8,538.91** | **$5,922.02** | **$2,616.89** |

K\1700\FLDR\1713 Capital Cove SEC\[TOTAL PROF & ADMIN FEES.JANUARY 2018 TO CLOSE.xls]#2

Exhibit 1
Page No. 000057

# RECEIVERSHIP ESTATE of CAPITAL COVE INTERNATIONAL, LLC

## *CUMULATIVE* SUMMARY of RECEIVER FEES, ADMINISTRATIVE FEES & COSTS INCURRED

### FOR THE PERIOD from JUNE 2015 through JANUARY 2018 TO CLOSE

| CUMULATIVE SUMMARY of ALL FEES and COSTS | HOURS | HOURLY RATE | TOTAL FEES | COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|
| RECEIVER FEES | 653.98 | $336.47 | $220,043.60 | $0.00 | $220,043.60 | $85,949.08 | $134,094.52 |
| ADMINISTRATIVE FEES | 1,281.90 | $90.52 | 116,034.80 | 611.60 | 116,646.40 | 58,210.98 | 58,435.42 |
| ADMINISTRATIVE COSTS | | | | 8,538.91 | 8,538.91 | 5,922.02 | 2,616.89 |
| TOTAL FEES AND COSTS | 1,935.88 | $173.60 | $336,078.40 | $9,150.51 | $345,228.91 | $150,082.08 | $195,146.83 |

K:\1700FLDR\1713 Capital Cove SEC\TOTAL PROF & ADMIN FEES.JANUARY 2018 TO CLOSE.xls#2

Exhibit 1
Page No. 000058

# RECEIVERSHIP ESTATE of CAPITAL COVE INTERNATIONAL, LLC
## *CUMULATIVE* SUMMARY of *ACCOUNTING & BUDGETING* FEES & COSTS INCURRED
### FOR THE PERIOD from JUNE 2015 through JANUARY 2018 TO CLOSE

| CUMULATIVE SUMMARY of ALL FEES and COSTS | HOURS | HOURLY RATE | TOTAL FEES | COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|
| CRAIG M. COLLINS | 640.10 | $265.00 | $169,626.50 | $0.00 | $169,626.50 | $56,985.60 | $112,640.90 |
| RYAN C. BAKER | 649.20 | $175.00 | 113,610.00 | 362.25 | 113,972.25 | 40,274.33 | 73,697.93 |
| TOTAL  ACCOUNTING & BUDGETING | 1,289.30 | $219.68 | $283,236.50 | $362.25 | $283,598.75 | $97,259.93 | $186,338.83 |

| ACCOUNTING & BUDGETING: CRAIG M. COLLINS | | HOURS | HOURLY RATE | TOTAL FEES | DIRECT COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|---|
| JUNE | 2015 | 54.00 | $265.00 | 14,310.00 | 0.00 | 14,310.00 | 10,017.00 | 4,293.00 |
| JULY | 2015 | 60.30 | $265.00 | 15,979.50 | 0.00 | 15,979.50 | 11,185.65 | 4,793.85 |
| AUGUST | 2015 | 47.40 | $265.00 | 12,561.00 | 0.00 | 12,561.00 | 8,792.70 | 3,768.30 |
| SEPTEMBER | 2015 | 39.70 | $265.00 | 10,520.50 | 0.00 | 10,520.50 | 7,364.35 | 3,156.15 |
| OCTOBER | 2015 | 23.60 | $265.00 | 6,254.00 | 0.00 | 6,254.00 | 4,377.80 | 1,876.20 |
| NOVEMBER | 2015 | 38.60 | $265.00 | 10,229.00 | 0.00 | 10,229.00 | 7,160.30 | 3,068.70 |
| DECEMBER | 2015 | 43.60 | $265.00 | 11,554.00 | 0.00 | 11,554.00 | 8,087.80 | 3,466.20 |
| JANUARY | 2016 | 29.30 | $265.00 | 7,764.50 | 0.00 | 7,764.50 | 0.00 | 7,764.50 |
| FEBRUARY | 2016 | 7.50 | $265.00 | 1,987.50 | 0.00 | 1,987.50 | 0.00 | 1,987.50 |
| MARCH | 2016 | 8.50 | $265.00 | 2,252.50 | 0.00 | 2,252.50 | 0.00 | 2,252.50 |
| APRIL | 2016 | 12.40 | $265.00 | 3,286.00 | 0.00 | 3,286.00 | 0.00 | 3,286.00 |
| MAY | 2016 | 5.80 | $265.00 | 1,537.00 | 0.00 | 1,537.00 | 0.00 | 1,537.00 |
| JUNE | 2016 | 5.80 | $265.00 | 1,537.00 | 0.00 | 1,537.00 | 0.00 | 1,537.00 |
| JULY | 2016 | 4.00 | $265.00 | 1,060.00 | 0.00 | 1,060.00 | 0.00 | 1,060.00 |
| AUGUST | 2016 | 23.40 | $265.00 | 6,201.00 | 0.00 | 6,201.00 | 0.00 | 6,201.00 |
| SEPTEMBER | 2016 | 16.30 | $265.00 | 4,319.50 | 0.00 | 4,319.50 | 0.00 | 4,319.50 |
| OCTOBER | 2016 | 13.90 | $265.00 | 3,683.50 | 0.00 | 3,683.50 | 0.00 | 3,683.50 |
| NOVEMBER | 2016 | 23.10 | $265.00 | 6,121.50 | 0.00 | 6,121.50 | 0.00 | 6,121.50 |
| DECEMBER | 2016 | 10.70 | $265.00 | 2,835.50 | 0.00 | 2,835.50 | 0.00 | 2,835.50 |
| JANUARY | 2017 | 24.70 | $265.00 | 6,545.50 | 0.00 | 6,545.50 | 0.00 | 6,545.50 |
| FEBRUARY | 2017 | 10.10 | $265.00 | 2,676.50 | 0.00 | 2,676.50 | 0.00 | 2,676.50 |
| MARCH | 2017 | 26.40 | $265.00 | 6,996.00 | 0.00 | 6,996.00 | 0.00 | 6,996.00 |
| APRIL | 2017 | 28.30 | $265.00 | 7,499.50 | 0.00 | 7,499.50 | 0.00 | 7,499.50 |
| MAY | 2017 | 11.20 | $265.00 | 2,968.00 | 0.00 | 2,968.00 | 0.00 | 2,968.00 |
| JUNE | 2017 | 9.70 | $265.00 | 2,570.50 | 0.00 | 2,570.50 | 0.00 | 2,570.50 |
| JULY | 2017 | 16.70 | $265.00 | 4,425.50 | 0.00 | 4,425.50 | 0.00 | 4,425.50 |
| AUGUST | 2017 | 6.40 | $265.00 | 1,696.00 | 0.00 | 1,696.00 | 0.00 | 1,696.00 |
| SEPTEMBER 2017 TO CLOSE | | 38.70 | $265.00 | 10,255.50 | 0.00 | 10,255.50 | 0.00 | 10,255.50 |
| TOTAL COLLINS | | 640.10 | $265.00 | 169,626.50 | 0.00 | 169,626.50 | 56,985.60 | 112,640.90 |

K1H700FLDR\1713 Capital Cove SEC\[TOTAL PROF & ADMIN FEES.JANUARY 2018 TO CLOSE.xls]#2

Exhibit 1
Page No. 000059

## RECEIVERSHIP ESTATE of CAPITAL COVE INTERNATIONAL, LLC
### *CUMULATIVE* SUMMARY of *ACCOUNTING & BUDGETING* FEES & COSTS INCURRED
### FOR THE PERIOD from JUNE 2015 through JANUARY 2018 TO CLOSE
### (CONTINUED)

**ACCOUNTING & BUDGETING (Continued):**

| RYAN C. BAKER | | HOURS | HOURLY RATE | TOTAL FEES | DIRECT COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|---|
| JUNE | 2015 | 53.40 | $175.00 | 9,345.00 | 258.75 | 9,603.75 | 6,722.63 | 2,881.13 |
| JULY | 2015 | 92.60 | $175.00 | 16,205.00 | 103.50 | 16,308.50 | 11,415.95 | 4,892.55 |
| AUGUST | 2015 | 77.00 | $175.00 | 13,475.00 | 0.00 | 13,475.00 | 9,432.50 | 4,042.50 |
| SEPTEMBER | 2015 | 31.00 | $175.00 | 5,425.00 | 0.00 | 5,425.00 | 3,797.50 | 1,627.50 |
| OCTOBER | 2015 | 20.60 | $175.00 | 3,605.00 | 0.00 | 3,605.00 | 2,523.50 | 1,081.50 |
| NOVEMBER | 2015 | 20.90 | $175.00 | 3,657.50 | 0.00 | 3,657.50 | 2,560.25 | 1,097.25 |
| DECEMBER | 2015 | 31.20 | $175.00 | 5,460.00 | 0.00 | 5,460.00 | 3,822.00 | 1,638.00 |
| JANUARY | 2016 | 40.20 | $175.00 | 7,035.00 | 0.00 | 7,035.00 | 0.00 | 7,035.00 |
| FEBRUARY | 2016 | 15.90 | $175.00 | 2,782.50 | 0.00 | 2,782.50 | 0.00 | 2,782.50 |
| MARCH | 2016 | 35.60 | $175.00 | 6,230.00 | 0.00 | 6,230.00 | 0.00 | 6,230.00 |
| APRIL | 2016 | 16.90 | $175.00 | 2,957.50 | 0.00 | 2,957.50 | 0.00 | 2,957.50 |
| MAY | 2016 | 3.00 | $175.00 | 525.00 | 0.00 | 525.00 | 0.00 | 525.00 |
| JUNE | 2016 | 8.10 | $175.00 | 1,417.50 | 0.00 | 1,417.50 | 0.00 | 1,417.50 |
| JULY | 2016 | 13.00 | $175.00 | 2,275.00 | 0.00 | 2,275.00 | 0.00 | 2,275.00 |
| AUGUST | 2016 | 16.50 | $175.00 | 2,887.50 | 0.00 | 2,887.50 | 0.00 | 2,887.50 |
| SEPTEMBER | 2016 | 0.80 | $175.00 | 140.00 | 0.00 | 140.00 | 0.00 | 140.00 |
| OCTOBER | 2016 | 15.00 | $175.00 | 2,625.00 | 0.00 | 2,625.00 | 0.00 | 2,625.00 |
| NOVEMBER | 2016 | 22.10 | $175.00 | 3,867.50 | 0.00 | 3,867.50 | 0.00 | 3,867.50 |
| DECEMBER | 2016 | 17.00 | $175.00 | 2,975.00 | 0.00 | 2,975.00 | 0.00 | 2,975.00 |
| JANUARY | 2017 | 30.30 | $175.00 | 5,302.50 | 0.00 | 5,302.50 | 0.00 | 5,302.50 |
| FEBRUARY | 2017 | 4.20 | $175.00 | 735.00 | 0.00 | 735.00 | 0.00 | 735.00 |
| MARCH | 2017 | 7.70 | $175.00 | 1,347.50 | 0.00 | 1,347.50 | 0.00 | 1,347.50 |
| APRIL | 2017 | 12.40 | $175.00 | 2,170.00 | 0.00 | 2,170.00 | 0.00 | 2,170.00 |
| MAY | 2017 | 6.40 | $175.00 | 1,120.00 | 0.00 | 1,120.00 | 0.00 | 1,120.00 |
| JUNE | 2017 | 4.00 | $175.00 | 700.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| JULY | 2017 | 15.60 | $175.00 | 2,730.00 | 0.00 | 2,730.00 | 0.00 | 2,730.00 |
| AUGUST | 2017 | 10.00 | $175.00 | 1,750.00 | 0.00 | 1,750.00 | 0.00 | 1,750.00 |
| SEPTEMBER | 2017 | 0.50 | $175.00 | 87.50 | 0.00 | 87.50 | 0.00 | 87.50 |
| OCTOBER | 2017 | 3.90 | $175.00 | 682.50 | 0.00 | 682.50 | 0.00 | 682.50 |
| NOVEMBER | 2017 | 2.10 | $175.00 | 367.50 | 0.00 | 367.50 | 0.00 | 367.50 |
| DECEMBER | 2017 | 6.60 | $175.00 | 1,155.00 | 0.00 | 1,155.00 | 0.00 | 1,155.00 |
| JANUARY 2018 TO CLOSE | | 14.70 | $175.00 | 2,572.50 | 0.00 | 2,572.50 | 0.00 | 2,572.50 |
| TOTAL BAKER | | 649.20 | $175.00 | 113,610.00 | 362.25 | 113,972.25 | 40,274.33 | 73,697.93 |
| | | | | | | | | |
| **ACCOUNTING & BUDGETING** | | **1,289.30** | **$219.68** | **$283,236.50** | **$362.25** | **$283,598.75** | **$97,259.93** | **$186,338.83** |

Exhibit 1
Page No. 000060

K\1700\FLDR\1713 Capital Cove SEC\TOTAL PROF & ADMIN FEES-JANUARY 2018 TO CLOSE.xls\#2

EXHIBIT 2

# STANDARDIZED FUND ACCOUNTING REPORT (CASH BASIS) for
## CHRISTOPHER M. LEE, aka RASHID K. KHALFANI, et. al.
### RECEIVERSHIP;  CIVIL COURT DOCKET NO. 8:15-cv-2110-JLS-JCx
### REPORTING PERIOD from JUNE 18, 2015 through JANUARY 30, 2018

**FUND ACCOUNTING (See Instructions):**

| | | SCHEDULE | DETAIL | SUBTOTAL | GRAND TOTAL |
|---|---|---|---|---|---|
| Line 1 | Beginning Balance of the Fund | | | | $0 |
| | *Increases in Fund Balances:* | | | | |
| Line 2 | Business Income  (Receipts) | Schedule 1 | | | 73,461 |
| Line 3 | Cash and Securities | | | | 0 |
| Line 4 | Interest / Dividend Income | | | | 0 |
| Line 5 | Business Asset Liquidation | Schedule 1 | | | 3,787,544 |
| Line 6 | Personal Asset Liquidation | | | | 0 |
| Line 7 | Third-Party Litigation | | | | 0 |
| Line 8 | Miscellaneous - Other | Schedule 1 | | | 172,153 |
| | Total Funds Available (Lines 1-8) | | | | 4,033,158 |
| | *Decreases in Fund Balance:* | | | | |
| Line 9 | Disbursements to Investors | | | | 0 |
| Line 10 | Disbursements for Receivership Operations | | | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | Schedule 2 | | $306,259 | |
| Line 10b | *Business Asset Expenses* | Schedule 3 | | 277,298 | |
| Line 10c | *Personal Asset Liquidation* | | | 0 | |
| Line 10d | *Investment Expenses* | | | 0 | |
| Line 10e | *Third-Party Litigation Expenses* | | | | |
| | 1.  Attorney Fees | Schedule 2 | $1,036,311 | | |
| | 2.  Litigation Expenses | | 0 | | |
| | *Total Third-Party Litigation Expenses* | | | 1,036,311 | |
| Line 10f | *Tax Administrator Fees and Bonds* | Schedule 2 | | 0 | |
| Line 10g | *Federal and State Tax Payments* | | | 0 | |
| | Total Disbursements for Receivership Operations | | | | 1,619,868 |
| Line 11 | Disbursements for Distribution Expenses Paid by the Fund: | | | | |
| Line 11a | *Distribution Plan Development Expenses:* | | | | |
| | 1.  Fees: | | | | |
| | Fund Administrator | | | | |
| | Independent Distribution Consultant (IDC) | | 0 | | |
| | Distribution Agent | | 0 | | |
| | Consultants | | 0 | | |
| | Legal Advisors | | | | |
| | Tax Advisors | | | | |
| | 2.  Administrative Expenses | | 0 | | |
| | 3.  Miscellaneous | | 0 | | |
| | Total Plan Development Expenses | | | 0 | |
| Line 11b | *Distribution Plan Implementation Expenses:* | | | | |
| | 1.  Fees: | | | | |
| | Fund Administrator | | 0 | | |
| | Independent Distribution Consultant (IDC) | | 0 | | |
| | Distribution Agent | | 0 | | |
| | Consultants  (Forensic Accountants) | | 0 | | |
| | Legal Advisors | | 0 | | |
| | Tax Advisors | | 0 | | |
| | 2.  Administrative Expenses | | 0 | | |
| | 3.  Investor Identification: | | | | |
| | Notice/Publishing Approved Plan | | 0 | | |
| | Claimant Identification | | 0 | | |
| | Claims Processing | | 0 | | |
| | Web Site Maintenance / Call Center | | 0 | | |
| | 4.  Fund Administrator Bond | | 0 | | |
| | 5.  Miscellaneous | | 0 | | |
| | 6.  Fair Account for Investor Restitution | | 0 | | |
| | (FAIR) Reporting Expenses | | | | |
| | *Total Plan Implementation Expenses* | | | 0 | |
| | Total Disbursements for Distribtion Expenses Paid by the Fund | | | | 0 |
| Line 12 | Disbursements to Court / Other: | | | | |
| Line 12a | *Investment Expenses / Court Registry Investment System (DRIS) Fees* | | | 0 | |
| Line 12b | *Federal Tax Payments* | | | 0 | |
| | Total Disbursements to Court / Other | | | | 0 |
| | Total Funds Disbursed  (Lines 9-12) | | | | 1,619,868 |
| Line 13 | Ending Balance of the Fund as of January 30, 2018 | | | | $2,413,291 |

Exhibit 2

STANDARDIZED FUND ACCOUNTING REPORT (CASH BASIS) for
Case 8:15-cv-00980-JLS-JC   Document 489   Filed 02/20/18   Page 67 of 81   Page ID
CHRISTOPHER M. LEE aka RASHID K. KHALFANI, et. al.
#:6374
RECEIVERSHIP;  CIVIL COURT DOCKET NO. 8:15-cv-2110-JLS-JCx
REPORTING PERIOD from JUNE 18, 2015 through JANUARY 30, 2018

| Line 14 | Ending Balance of Fund - Net Assets: | | | | | |
|---|---|---|---|---|---|---|
| Line 14a | Cash & Cash Equivalents | Schedule 4 | | | | $2,413,290 |
| Line 14b | Investments | | | | | 0 |
| Line 14c | Other Assets or Uncleared Funds | | | | | 0 |
| | Total Ending Balance of Fund - Net Assets | | | | | $2,413,290 |

| OTHER SUPPLEMENTAL INFORMATION: | | DETAIL | SUBTOTAL | GRAND TOTAL |
|---|---|---|---|---|
| | Report of Items NOT to be Paid by the Fund: | | | |
| Line 15 | Disbursements for Plan Administration Expenses Not Paid by the Fund: | | | |
| Line 15a | Plan Development Expenses Not Paid by the Fund | | | |
| | 1. Fees: | | | |
| | Fund Administrator | | $0 | |
| | Independent Distribution Consultant (IDC) | | 0 | |
| | Distribution Agent | | 0 | |
| | Consultants | | 0 | |
| | Legal Advisors | | 0 | |
| | Tax Advisors | | 0 | |
| | 2. Administrative Expenses | | 0 | |
| | 3. Miscellaneous | | 0 | |
| | Total Plan Development Expenses Not Paid by the Fund | | | $0 |
| Line 15b | Plan Implementation Expenses Not Paid by the Fund | | | |
| | 1. Fees: | | | |
| | Fund Administrator | | 0 | |
| | Independent Distribution Consultant (IDC) | | 0 | |
| | Distribution Agent | | 0 | |
| | Consultants | | 0 | |
| | Legal Advisors | | 0 | |
| | Tax Advisors | | 0 | |
| | 2. Administrative Expenses | | 0 | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | | 0 | |
| | Claimant Identification | | 0 | |
| | Claims Processing | | 0 | |
| | Web Site Maintenance / Call Center | | 0 | |
| | 4. Fund Administrator Bond | | 0 | |
| | 5. Miscellaneous | | 0 | |
| | 6. FAIR Reporting Expenses | | 0 | |
| | Total Plan Implementation Expenses Not Paid by the Fund | | | 0 |
| Line 15c | Tax Administrator Fees & Bonds Not Paid by the Fund | | | 0 |
| | Total Disbursements for Plan Administration Expenses Not Paid by the Fund | | | $0 |
| Line 16 | Disbursements to Court / Other Not Paid by the Fund: | | | |
| Line 16a | Investment Expenses / CRIS Fees | | $0 | |
| Line 16b | Federal Tax Payments | | 0 | |
| | Total Disbursements to Court / Other Not Paid by the Fund: | | | $0 |
| Line 17 | DC & State Tax Payments | | | $0 |
| Line 18 | Number of Claims: | | | |
| Line 18a | Number of Claims Received This Reporting Period ................................................................ | | | 0 |
| Line 18b | Number of Claims Received Since Inception of Fund ................................................................ | | | 0 |
| Line 19 | Number of Claimants / Investors: | | | |
| Line 18a | Number of Claimants / Investors Paid This Reporting Period ................................................. | | | 0 |
| Line 18b | Number of Claimants / Investors Paid Since Inception of Fund ............................................. | | | 0 |

Receiver:

By: _(signature)_

Robert P. Mosier
(printed name)

Date: 1 - 3 0 - 1 7

# STANDARDIZED FUND ACCOUNTING REPORT (CASH BASIS) for
# CHRISTOPHER M. LEE aka RASHID K. KHALFANI, et. al.

### RECEIVERSHIP;  CIVIL COURT DOCKET NO. 8:15-cv-2110-JLS-JCx

#### REPORTING PERIOD from JUNE 18, 2015 through JANUARY 30, 2018

| SCHEDULE 1 |
|---|

**LINE 2**   **BUSINESS INCOME:**

| | |
|---|---|
| RENTAL REVENUE | $55,961 |
| REFUND of ESCROW DEPOSIT at 4448 ROSE | 17,500 |
| TOTAL BUSINESS INCOME | $73,461 |

**LINE 5**   **BUSINESS ASSET LIQUIDATION:**

| | | TOTAL GROSS SALES PRICE | MORTGAGES PAID-OFF INCLUDING ACCRUED INTEREST | SALES COMMISS-IONS and AUCTION EXPENSES | REAL and OTHER PROPERTY TAXES | ALL OTHER COSTS | NET REAL ESTATE INCOME |
|---|---|---|---|---|---|---|---|
| **REAL ESTATE SALES:** | | | | | | | |
| 1 7830 Elden Avenue | Whittier | $650,000 | $590,516 | $13,000 | $5,968 | 0 | $40,516 |
| 2 864 West 20th Street | San Bernadino | 132,000 | 76,931 | 9,600 | 5,029 | 45 | 40,395 |
| 3 1200 Wilmington Avenue | Compton | 335,500 | 297,205 | 18,300 | 4,921 | 0 | 15,075 |
| 4 2222 W Garvey Avenue S | West Covina | 297,000 | 0 | 21,600 | 21,136 | 0 | 254,264 |
| 5 1539 Pumalo Street | San Bernadino | 1,325,500 | 750,000 | 60,250 | 25,976 | 2,359 | 486,915 |
| 6 1350 Hollencrest Drive | West Covina | 770,000 | 0 | 70,000 | 15,754 | 0 | 684,246 |
| 7 842 Sheffield Way | Perris | 209,000 | 0 | 15,200 | 7,668 | 0 | 186,132 |
| 8 321 South Enid Avenue | Azusa | 354,750 | 0 | 25,800 | 6,797 | 0 | 322,153 |
| 9 332 Stepney Street | Inglewood | 332,266 | 0 | 24,165 | 9,704 | 0 | 298,397 |
| 10 1208 So. Hollencrest Ave | West Covina | 693,000 | 0 | 50,400 | 29,261 | 0 | 613,339 |
| 11 1452 2nd Street | Simi Valley | 341,000 | 0 | 24,800 | 7,232 | 0 | 308,968 |
| 12 5984 Elmwood Avenue | San Bernadino | 165,000 | 0 | 12,000 | 3,923 | 814 | 148,263 |
| 13 77220 Iroquois Drive | Indian Wells | 654,500 | 0 | 47,600 | 16,992 | 6,055 | 583,853 |
| 14 38125 Camino Sierra Road | Temecula | 332,750 | 0 | 30,250 | 19,026 | 21,562 | 261,912 |
| 15 2136 West 20th Street | Los Angeles | 715,000 | 0 | 52,000 | 24,696 | 3,038 | 635,265 |
| 16 215 Briar Creek Road | Diamond Bar | 517,000 | 0 | 37,600 | 3,883 | 300 | 475,217 |
| 17 2208 Gregory Avenue | Palmdale | 165,000 | 97,795 | 9,000 | 2,091 | 383 | 55,731 |
| 18 2979 West Birch Street | San Bernadino | 231,000 | 136,875 | 16,800 | 3,300 | 0 | 74,025 |
| 19 5591 Rockledge Drive | Buena Park | 610,500 | 0 | 33,300 | 2,244 | 0 | 574,956 |
| 20 3065 Rockford Avenue | San Bernadino | 203,500 | 0 | 14,800 | 1,392 | 270 | 187,038 |
| 21 5221 East Fairlee Court | Anaheim | 725,000 | 0 | 54,350 | 6,348 | 6,300 | 658,003 |
| 22 135 Spinks Canyon Road | Bradbury | 850,300 | 0 | 46,380 | 8,476 | 0 | 795,444 |
| 23 1485 Sea Isle Road | Memphis, TN | 32,670 | 0 | 2,970 | 5,898 | 7,101 | 16,701 |
| 24 228 Pomello | Claremont | 1,419,000 | 894,375 | 110,355 | 60,506 | 12,871 | 340,893 |
| 25 600 Central Ave, #363 | Riverside | 244,300 | 200,000 | 13,195 | 1,085 | 1,352 | 28,668 |
| 26 945-947 W. 2nd Street | Rialto | 310,000 | 150,000 | 9,300 | 16,675 | 6,034 | 127,991 |
| 27 1447 E. Pumalo Avenue | San Bernadino | 800,000 | 694,497 | 24,000 | 11,281 | 14,725 | 55,497 |
| 28 9564 Del Mar Avenue | Hesperia | 133,000 | 0 | 0 | 2,246 | 2,250 | 128,504 |
| 29 6926 Eastwood Avenue | Alta Loma | 400,000 | 339,385 | 12,000 | 330 | 7,152 | 41,133 |
| 30 520 N. Valley Center Ave | Glendora | 742,500 | 0 | 21,000 | 19,204 | 9,979 | 692,317 |
| 31 2431 South Seagull Ave | Ontario | 375,000 | 324,315 | 11,250 | 1,738 | 8,418 | 29,279 |
| **TOTAL REAL ESTATE SALES** | | $15,066,036 | $4,551,894 | $891,265 | $350,781 | $111,007 | 9,161,090 |

| | | |
|---|---|---|
| LESS PAYMENTS on MORTGAGE LOAN SETTLEMENT AGREEMENTS: | LENDER #1 | $3,238,546 |
| | LENDER #2 | 1,985,000 |
| | LENDER #3 | 150,000 |
| TOTAL MORTGAGE LOAN SETTLEMENT AGREEMENT PAYMENTS | | 5,373,546 |
| NET REAL ESTATE PROCEEDS after MORTGAGE LOAN SETTLEMENTS | | $3,787,544 |

# STANDARDIZED FUND ACCOUNTING REPORT (CASH BASIS) for
# CHRISTOPHER M. LEE aka RASHID K. KHALFANI, et. al.
### RECEIVERSHIP; CIVIL COURT DOCKET NO. 8:15-cv-2110-JLS-JCx
#### REPORTING PERIOD from JUNE 18, 2015 through JANUARY 30, 2018 (continued)

| SCHEDULE 1 (continued) | | |
|---|---|---|
| LINE 8    MISCELLANEOUS - OTHER: | TURNOVER of FUNDS from the DEFENDANT | $155,317 |
| | OTHER RECEIPTS | 16,836 |
| | TOTAL MISCELLANEOUS - OTHER RECEIPTS | $172,153 |

| SCHEDULE 2 | | |
|---|---|---|
| LINE 10a    DISBURSEMENTS to RECEIVER or OTHER PROFESSIONALS: | | |
| RECEIVER | PERMANENT RECEIVER, ROBERT P. MOSIER and ACCOUNTANT & STAFF | $260,942 |
| FORENSIC ACCOUNTANTS:   BRANDLIN & ASSOCIATES | | 45,317 |
| | TOTAL DISBURSEMENTS to RECEIVER or OTHER PROFESSIONALS | $306,259 |
| LINE 10e    THIRD-PARTY LITIGATION EXPENSES: | | |
| 1. ATTORNEY FEES   DIAMOND McCARTHY LLP | (HOURLY FEES & COSTS) | $208,372 |
| DIAMOND McCARTHY LLP | (CONTINGENT FEES & COSTS) | 827,939 |
| TOTAL HOURLY plus CONTINGENT FEES | | $1,036,311 |
| LINE 10f    TAX ADMINISTRATOR FEE and BONDS: | | |
| INCOME TAX PREPARER:   LoBUGLIO & SIGMAN, CPA's | | $0 |

| SCHEDULE 3 | | |
|---|---|---|
| LINE 10b    BUSINESS ASSET EXPENSES: | REPAIRS & MAINTENANCE | $74,734 |
| | SUBCONTRACTORS | 46,534 |
| | PROPERTY INSURANCE | 41,828 |
| | CCB STAFF HOLDOVERS | 16,892 |
| | WATER & SEWER | 15,456 |
| | LANDSCAPING | 13,378 |
| | RENT, MOVING & STORAGE | 13,545 |
| | ELECTRICITY | 9,429 |
| | TAKEOVER & SECURE PROPERTIES | 9,063 |
| | POOL SERVICE / MAINTENANCE | 6,279 |
| | PROPERTY MANAGEMENT | 3,550 |
| | TRASH | 3,270 |
| | ADMINISTRATIVE COSTS | 3,100 |
| | GAS | 2,689 |
| | HEATING & VENTILATION | 2,072 |
| | SECURITY / ALARM SERVICE | 1,940 |
| | ADVERTISING & MARKETING (SIGNS) | 1,379 |
| | ALL OTHER DISBURSEMENTS | 12,161 |
| | TOTAL BUSINESS ASSET EXPENSES | $277,298 |

| SCHEDULE 4 | | | | |
|---|---|---|---|---|
| LINE 14a   CASH & CASH EQUIVALENTS: | NAME of BANK | TYPE of ACCOUNT | ACCT # | BALANCE |
| | EAST WEST BANK | OPERATING: GENERAL ACCOUNT | ... 3480 | $1,852,350 |
| | EAST WEST BANK | OPERATING: 1539 PUMALO | ... 4285 | 486,915 |
| | EAST WEST BANK | OPERATING: 2979 WEST BIRCH | ... 4299 | 74,025 |
| | | TOTAL CASH & CASH EQUIVALENTS: | | $2,413,290 |

Exhibit 2
Page No.000064

EXHIBIT 3

# CAPITAL COVE BANCORP, LLC - CLAIMS SUMMARY

**ESTIMATED TOTAL CASH AVAILABLE for ALL ALLOWED CLAIMS**      | $2,413,291

### PROPOSED DISTRIBUTION by CLASS of CLAIM:

| | | Amount of Claims | Amount to be Paid | Percent of Claims Paid |
|---|---|---|---|---|
| CLASS 1 | ADMINISTRATIVE PROFESSIONAL FEES | $844,902 | $844,902 | 100.000% |
| CLASS 2 | INVESTORS' SECURED CLAIMS (from Property Sales) | 250,705 | 250,705 | 100.000% |
| | TOTAL CLAIMS TO BE PAID at 100% | 1,095,607 | 1,095,607 | |
| CLASS 3 | INVESTORS' UNSECURED CLAIMS | 10,087,599 | 1,317,684 | 13.062% |
| CLASS 4 | TAX CLAIMS | 422,144 | 0 | 0.000% |
| CLASS 5 | NON-INVESTOR CLAIMS | 449,241 | 0 | 0.000% |
| | TOTAL PROPOSED DISTRIBUTIONS | $12,054,591 | $2,413,291 | |

## CLASS 1:  ADMINISTRATIVE PROFESSIONAL FEES

| First Fee Award & Holdbacks: | Fees Paid | Expenses Paid | Holdback | Total Requested | Proposed Final Distribution Amounts |
|---|---|---|---|---|---|
| 1   Receiver | $145,441.45 | $5,412.84 | $62,332.05 | $213,186.34 | $62,332.05 |
| 2   Mosier & Company, Inc. | 110,087.43 | 0.00 | 41,682.82 | 151,770.25 | 41,682.82 |
| 3   Diamond McCarthy LLP | 183,686.95 | 24,685.30 | 78,722.98 | 287,095.23 | 78,722.98 |
| 4   Brandlin & Associates | 45,317.33 | 0.00 | 0.00 | 45,317.33 | 0.00 |
| 5   Total First Fee Award | $484,533.16 | $30,098.14 | $182,737.84 | $697,369.14 | |

| Second (and Final) Fee Request: | Fees Incurred | Reserve Requested | Expenses | Total Requested | |
|---|---|---|---|---|---|
| 6   Receiver | $129,077.61 | $0.00 | $3,737.67 | $132,815.28 | 132,815.28 |
| 7   Mosier & Company, Inc. | 144,655.50 | | | 144,655.50 | 144,655.50 |
| 8   Diamond McCarthy LLP | 314,461.60 | 6,500.00 | 28,756.70 | 349,718.30 | 349,718.30 |
| 9   LoBuglio & Sigman | 29,623.05 | 5,000.00 | 352.09 | 34,975.14 | 34,975.14 |
| 10  Total Second Fee Request | $617,817.76 | $11,500.00 | $32,846.46 | $662,164.22 | |

| 11 **Total Requested Fees & Costs + Holdbacks from First Fee Request** | $1,359,533.36 | $844,902.06 |
|---|---|---|

## CLASS 2:  INVESTORS' SECURED CLAIMS  (from Sales of Properties)

| | | Secured Investor Claims | Amount to be Paid | Percent of Claim Paid |
|---|---|---|---|---|
| 1 | Bartley | $7,247 | $7,247 | 100.000% |
| 2 | Martinez (Portovelo) | 243,458 | 243,458 | 100.000% |
| | **Secured Investor Subtotals** | $250,705.00 | $250,705.00 | |

Exhibit 3
Page No. 000065

# CAPITAL COVE BANCORP, LLC - CLAIMS SUMMARY

## CLASS 3:  INVESTORS' UNSECURED CLAIMS

| Claim # | Investors | Original Amount Claimed | Total Allowed Claim | Secured Portion of Claim that was Paid | Secured Portion of Claim to be Paid | Unsecured Claims after Paid & to be Paid Items | Amount to be Paid on Claim | Percent of Claim to be Paid |
|---|---|---|---|---|---|---|---|---|
| | | | | (a) | (b) | (c) | (d = a-b-c) | (e) | (f) = (e/d) |
| 1 | Yu | $250,000 | $250,000 | $0 | $0 | $250,000 | $32,656 | 13.062% |
| 2 | Agoncillo (Pyrk) | 30,000 | 30,000 | 0 | 0 | 30,000 | 3,919 | 13.062% |
| 3 | Alcantra | 625,000 | 370,097 | 0 | 0 | 370,097 | 48,344 | 13.062% |
| 4 | Asante | 75,000 | 75,000 | 0 | 0 | 75,000 | 9,797 | 13.062% |
| 5 | Avina | 140,278 | 140,278 | 0 | 0 | 140,278 | 18,324 | 13.062% |
| 6 | Bartley | 280,000 | 280,000 | 0 | 7,247 | 272,753 | 35,628 | 13.062% |
| 7 | Berniller | 150,000 | 139,250 | 0 | 0 | 139,250 | 18,189 | 13.062% |
| 8 | Burns | 10,000 | 10,000 | 0 | 0 | 10,000 | 1,306 | 13.062% |
| 9 | Carrero | 105,000 | 90,330 | 0 | 0 | 90,330 | 11,799 | 13.062% |
| 10 | Centeno | 100,000 | 309,500 | 0 | 0 | 309,500 | 40,428 | 13.062% |
| 11 | Cook | 150,000 | 138,750 | 0 | 0 | 138,750 | 18,124 | 13.062% |
| 12 | Corils | 300,000 | 295,944 | 0 | 0 | 295,944 | 38,657 | 13.062% |
| 13 | Costarakis | 200,000 | 150,375 | 0 | 0 | 150,375 | 19,643 | 13.062% |
| 14 | Divine Properity | 148,100 | 148,100 | 72,447 | 0 | 75,653 | 9,882 | 13.062% |
| 15 | Doezie | 650,000 | 612,501 | 0 | 0 | 612,501 | 80,007 | 13.062% |
| 16 | Duller | 100,000 | 80,000 | 0 | 0 | 80,000 | 10,450 | 13.062% |
| 17 | Empire Realty Group | 50,000 | 36,875 | 0 | 0 | 36,875 | 4,817 | 13.062% |
| 19 | Fellows | 250,000 | 136,875 | 136,875 | 0 | 0 | 0 | 0 |
| 20 | Fintland | 50,000 | 43,125 | 0 | 0 | 43,125 | 5,633 | 13.062% |
| 21 | Fleschman | 180,000 | 139,475 | 0 | 0 | 139,475 | 18,219 | 13.062% |
| 22 | Lee Property Group | 130,791 | 100,780 | 0 | 0 | 100,780 | 13,164 | 13.062% |
| 23 | Gomez | 50,000 | 45,000 | 0 | 0 | 45,000 | 5,878 | 13.062% |
| 24 | Goosby | 20,000 | 20,000 | 0 | 0 | 20,000 | 2,612 | 13.062% |
| 25 | Green | 49,784 | 49,375 | 49,375 | 0 | 0 | 0 | 0 |
| 26 | Griffith | 100,000 | 91,000 | 0 | 0 | 91,000 | 11,887 | 13.062% |
| 27 | Grochowski | 30,000 | 30,000 | 0 | 0 | 30,000 | 3,919 | 13.062% |
| 28 | Haas | 30,000 | 19,125 | 0 | 0 | 19,125 | 2,498 | 13.062% |
| 29 | Hackett | 100,000 | 100,000 | 0 | 0 | 100,000 | 13,062 | 13.062% |
| 30 | Harris | 250,000 | 246,875 | 0 | 0 | 246,875 | 32,248 | 13.062% |
| 31 | Herrera | 67,500 | 52,500 | 0 | 0 | 52,500 | 6,858 | 13.062% |
| 32 | Hutts | 150,000 | 138,750 | 0 | 0 | 138,750 | 18,124 | 13.062% |
| 33 | Jenkins | 64,000 | 43,000 | 0 | 0 | 43,000 | 5,617 | 13.062% |
| 34 | Johnson | 10,000 | 10,000 | 0 | 0 | 10,000 | 1,306 | 13.062% |
| 35 | Julien | 49,000 | 29,750 | 0 | 0 | 29,750 | 3,886 | 13.062% |
| 36 | Kabakibi | 180,000 | 134,550 | 0 | 0 | 134,550 | 17,575 | 13.062% |
| 37 | Kay | 50,000 | 35,000 | 0 | 0 | 35,000 | 4,572 | 13.062% |
| 38 | Hope | 15,000 | 15,000 | 0 | 0 | 15,000 | 1,959 | 13.062% |
| 39 | King | 40,400 | 40,400 | 0 | 0 | 40,400 | 5,277 | 13.062% |
| 40 | LaTorre | 85,000 | 97,795 | 97,795 | 0 | 0 | 0 | 0 |
| 41 | Lim | 50,000 | 35,000 | 0 | 0 | 35,000 | 4,572 | 13.062% |
| 42 | Lowe | 100,000 | 87,500 | 0 | 0 | 87,500 | 11,430 | 13.062% |
| 43 | Martinez | 193,093 | 22,656 | 0 | 0 | 22,656 | 2,959 | 13.062% |
| 44 | Martinez | 6,573,681 | 1,978,800 | 39,497 | 243,458 | 1,695,845 | 221,518 | 13.062% |
| 45 | Moreno | 530,000 | 216,124 | 0 | 0 | 216,124 | 28,231 | 13.062% |
| 46 | Mosqueda | 186,958 | 186,958 | 0 | 0 | 186,958 | 24,421 | 13.062% |
| 47 | Olson | 100,000 | 85,000 | 0 | 0 | 85,000 | 11,103 | 13.062% |
| 48 | Ortiz | 10,000 | 8,200 | 0 | 0 | 8,200 | 1,071 | 13.062% |

**(continued)**

Exhibit 3
Page No. 000066

# CAPITAL COVE BANCORP, LLC - CLAIMS SUMMARY

| Claim # | Investors' Unsecured Claims (continued) | Original Amount Claimed | Total Allowed Claim | Secured Portion of Claim that was Paid | Secured Portion of Claim to be Paid | Unsecured Claims after Paid & to be Paid Items | Amount to be Paid on Claim | Percent of Claim to be Paid |
|---|---|---|---|---|---|---|---|---|
| | | | (a) | (b) | (c) | (d = a-b-c) | (e) | (f) = (e/d) |
| | | | | (continued) | | | | |
| 49 | Pace | 15,000 | 15,000 | 0 | 0 | 15,000 | 1,959 | 13.062% |
| 50 | Palencia | 464,000 | 433,965 | 0 | 0 | 433,965 | 56,686 | 13.062% |
| 51 | Pastore | 71,000 | 71,000 | 0 | 0 | 71,000 | 9,274 | 13.062% |
| 52 | Pitt, Jr. | 243,000 | 221,750 | 0 | 0 | 221,750 | 28,966 | 13.062% |
| 53 | Pitt, Sr. | 100,000 | 62,500 | 0 | 0 | 62,500 | 8,164 | 13.062% |
| 55 | Reid | 103,575 | 68,158 | 0 | 0 | 68,158 | 8,903 | 13.062% |
| 56 | Reynon | 46,500 | 44,175 | 0 | 0 | 44,175 | 5,770 | 13.062% |
| 57 | Richardson | 0 | 44,780 | 0 | 0 | 44,780 | 5,849 | 13.062% |
| 58 | Roberts | 120,000 | 124,596 | 0 | 0 | 124,596 | 16,275 | 13.062% |
| 59 | Roy | 500,000 | 405,000 | 0 | 0 | 405,000 | 52,903 | 13.062% |
| 60 | Ruiz | 250,000 | 208,336 | 0 | 0 | 208,336 | 27,214 | 13.062% |
| 61 | Sadayoshi | 189,000 | 189,000 | 0 | 0 | 189,000 | 24,688 | 13.062% |
| 62 | Shaw | 42,500 | 4,500 | 0 | 0 | 4,500 | 588 | 13.062% |
| 63 | Silver | 25,000 | 23,125 | 0 | 0 | 23,125 | 3,021 | 13.062% |
| 64 | Thillman | 55,000 | 55,000 | 0 | 0 | 55,000 | 7,184 | 13.062% |
| 65 | Thornton | 100,000 | 15,939 | 0 | 0 | 15,939 | 2,082 | 13.062% |
| 66 | Turner | 119,000 | 115,055 | 0 | 0 | 115,055 | 15,029 | 13.062% |
| 67 | Vargas | 75,000 | 75,000 | 0 | 0 | 75,000 | 9,797 | 13.062% |
| 68 | Villegas | 15,000 | 15,000 | 0 | 0 | 15,000 | 1,959 | 13.062% |
| 69 | Vo | 500,000 | 500,000 | 0 | 0 | 500,000 | 65,312 | 13.062% |
| 70 | Walker | 50,000 | 50,000 | 0 | 0 | 50,000 | 6,531 | 13.062% |
| 71 | Wang | 200,000 | 200,000 | 0 | 0 | 200,000 | 26,125 | 13.062% |
| 72 | Williams | 5,600 | 4,302 | 0 | 0 | 4,302 | 562 | 13.062% |
| 73 | Winings | 150,000 | 150,000 | 0 | 0 | 150,000 | 19,594 | 13.062% |
| 74 | Winings | 675,000 | 400,000 | 200,000 | 0 | 200,000 | 26,125 | 13.062% |
| 75 | Woodson | 100,000 | 0 | 0 | 0 | 0 | 0 | 0 |
| 76 | Yoshikawa | 50,000 | 42,500 | 0 | 0 | 42,500 | 5,552 | 13.062% |
| **Unsecured Investor Subtotals** | | **$17,322,760** | **$10,934,293** | **$595,989** | **$250,705** | **$10,087,599** | **$1,317,684** | **13.062%** |

## CLASS 4:  TAX CLAIMS

| | ENTITY NAMED on CLAIM/TAX STATEMENT | DESCRIPTION of TAX | AMOUNTS per CLAIM / STATEMENTS | Amount to be Paid on Claim |
|---|---|---|---|---|
| 1 | Capital Cove Bancorp LLC | EDD (4/1/2012 - 3/31/2016) | $378,748 | $0 |
| 2 | Capital Cove International, Inc. | Franchise Tax Board (2012-2015 Taxes) | 38,466 | 0 |
| 3 | Internal Revenue Service | Late Filing Penalty for FYE 6/30/2015 | 4,680 | 0 |
| 4 | Capital Cove REO Opportunities Fund | Franchise Tax Board (2015 Tax) | 250 | 0 |
| | | **Subtotal for Tax Claims** | **$422,144** | **$0** |

Exhibit 3
Page No. 000067

# CAPITAL COVE BANCORP, LLC - CLAIMS SUMMARY

## CLASS 5:  NON-INVESTOR CLAIMS

|   | Claim # | VENDOR | CLAIMS FILED | Amount to be Paid on Claim |
|---|---|---|---|---|
| 1 | 77 | ABS Air Con | $8,490 | $0 |
| 2 | 78 | The Termite Guy | 8,070 | 0 |
| 3 | 79 | Maverick RC LLC | 102,043 | 0 |
| 4 | 80 | Precision Air Con | 250 | 0 |
| 5 | 81 | Robert Half Int'l | 17,500 | 0 |
| 6 | 82 | Maria Unkovich | 9,435 | 0 |
| 7 | 83 | Brian Silva | 1,700 | 0 |
| 8 | 84 | San Gabriel Water | 127 | 0 |
| 9 | 85 | San Gabriel Water | 110 | 0 |
| 10 | 86 | Thomasina Reed | 71,205 | 0 |
| 11 | 87 | Donald Clarke | 141,924 | 0 |
| 12 | 88 | Brafton Inc. | 36,829 | 0 |
| 13 | 89 | Albert Williams | 49,918 | 0 |
| 14 | 90 | Financial Credit Network | 1,639 | 0 |
|   |   | **Subtotal for Noninvestors** | **$449,241** | **$0** |

K:\1700FLDR\1713 Capital Cove SEC\[Capital Cove Claims Summary 2-10-18.xlsx]REVISED 3          2/12/2018 16:29

Exhibit 3
Page No. 000068

EXHIBIT 4

# CAPITAL COVE PROPERTIES – SCHEDULE of NET PROCEEDS from PROPERTY SALES

| # | AUCTIONED PROPERTIES | City | TOTAL PRICE at AUCTION | PROPERTY TAXES | MORTGAGES PAID — FIRST | MORTGAGES PAID — SECOND & LATER | OTHER ITEMS | PROCEEDS before SETTLED DEBT | CENTER STREET LENDING — PAID AMOUNTS | CENTER STREET LENDING — PRESERVED for ESTATE | NORKAT | CAMS | OTHER REMAINING to be Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 7830 Elden Avenue | Whittier | $637,000 | $5,968 | $550,000 <LUKES | $40,516 DIVINE PROS (50%) | 0 | $40,516 | 444,780 | 464,175 | | | |
| 2 | 864 West 20th Street | San Berdoo | 122,400 | 5,029 | 50,000 <G. WININGS | 26,931 DIVINE PROS (40%) | 45 | 40,395 | | | | | |
| 3 | 1200 Wilmington Avenue | Compton | 317,200 | 4,921 | 247,830 <McCORMACK | 49,375 RON GREEN IRA | 0 | 15,075 | | | | | |
| 4 | 2222 W Garvey Avenue S | West Covina | 275,400 | 21,136 | | 0 | 0 | 254,264 | | | | | |
| 5 | 1539 Pumalo Street | San Berdoo | 1,265,250 | 25,976 | 750,000 <LUKES | 0 | 2,359 | 488,915 | | | | PORTOVELLO (60%) > | 243,460 > |
| 6 | 1350 Hollencrest Drive | West Covina | 700,000 | 15,754 | 0 | 0 | 0 | 684,246 | | | | | |
| 7 | 842 Sheffield Way | Perris | 193,800 | 7,668 | 0 | 0 | 0 | 186,132 | 96,332 | 100,533 | | WINING (50% to $50K) > | |
| 8 | 321 South Enid Avenue | Azusa | 328,950 | 6,797 | 0 | 0 | 0 | 322,153 | 191,153 | 199,489 | | | |
| 9 | 332 Stepney Street | Inglewood | 306,101 | 9,704 | 0 | 0 | 0 | 298,397 | 190,848 | 199,170 | | | |
| 10 | 1208 So. Hollencrest Ave | West Covina | 642,600 | 29,261 | 0 | 0 | 0 | 613,339 | 434,412 | 453,356 | | BARTLEY (15%) > | |
| 11 | 1452 2nd Street | Simi Valley | 316,000 | 7,232 | 0 | 0 | 0 | 308,868 | 167,718 | 175,031 | | | |
| 12 | 5984 Elmwood Avenue | San Berdoo | 153,000 | 3,923 | 0 | 0 | 814 | 148,263 | 86,182 | 92,027 | | | |
| 13 | 77220 Iroquois Drive | Indian Wells | 606,900 | 16,992 | 0 | 0 | 6,055 | 583,853 | 375,862 | 392,252 | | | |
| 14 | 38125 Camino Sierra Road | Temecula | 302,500 | 19,026 | 0 | 0 | 21,562 | 261,912 | 215,265 | 224,652 | | ROBERTS > | |
| 15 | 2135 West 20th Street | Los Angeles | 663,000 | 24,696 | 0 | 0 | 3,038 | 635,285 | 307,046 | 320,436 | 53,571 | WININGS > | |
| 16 | 2136 Briar Creek Road | Diamond Bar | 479,400 | 3,863 | 0 | 0 | 300 | 475,217 | 278,264 | 290,398 | 21,429 | MOSQUEDA > | |
| 17 | 2208 Gregory Avenue | Palmdale | 166,000 | 2,091 | 97,795 <LATORRE | 0 | 383 | 55,731 | | | 17,143 | | |
| 18 | 2979 West Birch Street | San Berdoo | 214,200 | 3,300 | 138,875 <FELLOWS | 0 | 0 | 74,025 | | | 25,714 | BARTLEY (10%) > | |
| 19 | 5591 Rockledge Drive | Buena Park | 577,200 | 2,244 | 0 | 0 | 0 | 574,956 | | | 32,143 | BILLY RAY PITT (15%) > | |
| 20 | 3065 Rockford Avenue | San Berdoo | 188,700 | 1,382 | 0 | 0 | 270 | 187,038 | | | | 149,409 | |
| 21 | 5221 East Fairfee Court | Anaheim | 670,650 | 6,348 | 0 | 0 | 6,300 | 658,003 | | | | 533,602 | |
| 22 | 135 Spinks Canyon Road | Bradbury | 803,920 | 8,476 | 0 | 0 | 0 | 795,444 | | | | 768,387 | |
| | **TOTAL AUCTIONED PROPERTIES** | | 9,922,371 | 231,817 | 1,832,500 | 116,822 | 41,125 | 7,700,107 | 2,789,862 | 2,911,518 | 150,000 | 1,985,000 | 250,750 |

## PROPERTIES SOLD before the AUCTION

| # | Property | City | TOTAL PRICE at AUCTION | PROPERTY TAXES | FIRST | SECOND & LATER | OTHER ITEMS | PROCEEDS before SETTLED DEBT | PAID AMOUNTS | PRESERVED for ESTATE | NORKAT | CAMS | OTHER REMAINING |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 600 Central Ave, #363 | Riverside | 244,300 | 1,085 | 100,000 <FELLOWS | 100,000 <IRA TRES | 14,548 | 28,667 | | | | | |
| 2 | 945-947 W. 2nd St | Rialto | 310,000 | 16,675 | 150,000 <WININGS | 0 | 15,334 | 127,991 | | | | | |
| 3 | 1447 E. Pumalo Ave | San Berdoo | 800,000 | 11,281 | 650,000 <LUKES | 5,000 <DIVINE PROS / 39,497 <PORTOVELO | 38,725 | 55,497 | 70,502 | 73,576 | | | |
| 4 | 958d Del Mar Ave | Hesperia | 133,000 | 2,246 | 0 | 0 | 2,250 | 128,504 | | | | | |
| 5 | 6926 Eastwood Ave. | Alta Loma | 400,000 | 330 | 0 | 0 | 19,152 | 41,133 | | | | | |
| 6 | 520 N. Valley Center Ave | Glendora | 742,500 | 19,204 | 312,862 <SETERUS | 28,423 <NATIONS | 30,979 | 692,317 | 378,183 | 394,674 | | | |
| | **TOTAL PROPERTIES SOLD before AUCTION** | | 2,629,800 | 50,821 | 1,212,862 | | 120,988 | 1,074,109 | 448,684 | 468,250 | 0 | 0 | 0 |

| | **GRAND TOTALS** | | $12,552,171 | $282,638 | $3,045,462 | $116,822 | $162,113 | $8,774,216 | $3,238,546 | $3,379,768 | $150,000 | $1,985,000 | $250,750 |

## PROPERTY in ESCROW WHEN RECEIVER WAS APPOINTED

| # | Property | City | TOTAL PRICE | PROPERTY TAXES | FIRST | SECOND & LATER | OTHER ITEMS | PROCEEDS | PAID | PRESERVED | NORKAT | CAMS | OTHER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2431 South Seagull Ave | Ontario | $375,000 | $1,738 | $294,315 CENTER ST | 30,000 <LEE | $19,668 | $29,279 | 0 | 0 | 0 | 0 | 0 |

K:\1700\FLDR1\1713 Capital Cove SEC\[Capital Cove Property Value less Debt & Expenses 3-20-2017.xlsx]ACTUAL #5

Exhibit 4
Page No. 000069

EXHIBIT 5

KATHY BAZOIAN PHELPS (State Bar No. 155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

*Counsel for Robert P. Mosier, Permanent Receiver*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL COVE BANCORP LLC; CHRISTOPHER M. LEE aka RASHID K. KHALFANI, <br><br> Defendants | Case No. CV15-00980-JLS(JCx) <br><br> **NOTICE OF:** <br><br> **MOTION TO (1) APPROVE RECEIVER'S FINAL REPORT AND ACCOUNT;  (2) APPROVE FINAL DISTRIBUTION PLAN; (3) ABANDON PROPERTY; (4) CLOSE THE RECEIVERSHIP; (5) DISCHARGE THE RECEIVER;  AND (6) AUTHORIZE STORAGE AND DESTRUCTION OF RECEIVERSHIP RECORDS** <br><br> **AND** <br><br> **SECOND AND FINAL FEE APPLICATION** <br><br> Date:  April  13, 2018 <br> Time:   2:30 p.m. <br> Dept.    10 A <br> Place:  411 West Fourth Street <br>              Santa Ana, CA 92701-4516 |

PLEASE TAKE NOTICE that on April 13, 2018, at 2:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 10A of the above-entitled Court, located at 411 West Fourth Street, Room 1053, Santa Ana, California 92701, Receiver Robert P. Mosier (the "Receiver"), the Court-appointed permanent receiver of Capital Cove Bancorp and its subsidiaries and affiliates (collectively, "Capital Cove"), will and hereby does move for an order granting the following relief ("Receivership Closing Motion"):

1.  Approving the Receiver's Final Report and Accounting, a copy of which is attached to the Motion as Exhibit "1";

2.  Approving the Receiver's Distribution Plan attached to the Motion as Exhibit "3, which proposes to distribute approximately $1,317,684 to the allowed Investor claims following payment of administrative and secured claims;

3.  Authorizing the Receiver to turn over to the California Department of Financial Services Bureau of Unclaimed Property those distributions to claimants which are not negotiated within sixty (60) days of the date of issuance of the check;

4.  Authorizing abandonment of the remaining nominal assets;

5.  Authorizing the Receiver to take all steps necessary or appropriate to complete the administration of the Receivership and its assets;

6.  Authorizing the Receiver to retain the books and records necessary to support the tax returns filed by the Receiver for a period of five (5) years and thereafter destroy those books and records and computer equipment, other computer related-devices, and other items related to the Receivership in the Receiver's discretion and at such time as he deems proper;

7.  Discharging the Receiver and his agents, employees, members, officers, independent contractors, attorneys, representatives, predecessors, successors and assignees, and relieving them of all duties, liabilities and responsibilities pertaining to the Receivership;

NOTICE OF MOTION TO CLOSE RECEIVERSHIP AND OF FINAL FEE APPLICATION

8.      Enjoining all persons from commencing or prosecuting, without leave of this Court, any action against the Receiver or his agents in connection with or arising out of the Receiver's or his agents' services to this Court in this Receivership;

9.      Retaining jurisdiction for the purpose of (a) implementing and enforcing the provisions of the order on the Receivership Closing Motion, including but not limited to for the purpose of enforcing the above injunctive relief; and (b) reopening the case to administer any subsequently obtained assets;

10.     Closing this Receivership.

The estimated fees and costs set forth in the Second and Final Fee Application are fair and reasonable and are summarized as follows:

**Previous Fee Award and Holdbacks**

The Receiver has already paid Court-approved professional fees and costs in the total amount of $514,631.30 as follows:

| Professional | Fees Paid | Expenses Paid | Holdback |
|---|---|---|---|
| Receiver | $145,441.45 | $5,412.84 | $62,332.05 |
| Mosier & Co | $97,259.93 | | $41,682.82 |
| Mosier & Co. (litigation cost) | $12,827.50 | | |
| Diamond McCarthy LLP[1] | $183,686.95 | $24,685.30 | $78,722.98 |
| Brandlin & Associates | $45,317.33 | | |
| **Totals:** | **$484,533.16** | **$30,098.14** | **$182,737.85** |

**Current Fee Request**

The accrued fees and costs of the professionals incurred during the reporting period of January 1, 2016 through the close of the case, are as follows:

| Professional | Fees Incurred | Reserve | Costs | Total Requested |
|---|---|---|---|---|

---

[1] Diamond McCarthy has also been paid contingency fees of $805,623.68 and reimbursed costs in the contingency litigation of $22,314.99 which were paid directly from the funds generated as a result of that litigation and which were approved by the Court.

| | | | | |
|---|---|---|---|---|
| Receiver | $129,077.61 | | $3,737.67 | $132,815.28 |
| Mosier & Company Inc. | $144,655.50 | | $0 | $144,655.50 |
| Diamond McCarthy LLP | $314,461.60 | $6,500 | $28,756.70 | $349,718.30 |
| LoBuglio & Sigman | $29,623.05 | $5,000 | $352.09 | $34,975.14 |
| **Total Requested** | $617,817.76 | | $32,846.46 | $662,164.22 |

Therefore, the total additional amounts to be paid to all professionals for fees, inclusive of prior holdbacks of $182,737.85, is $800,203.52, reimbursement of costs of $32,846.46, and reserves of $11,500, for a total of $844,902.06 to be set aside for administrative fees.

The Receiver has posted this Notice as well as the Receivership Closing Motion and the Second and Final Fee Application on his website at cloud.mosierco.com, Username: CapitalCove, Password: investor.

PLEASE TAKE FURTHER NOTICE that pursuant to Local Rule 7-9, any party who opposes the Motion must, not later than 21 days before the date of the hearing on the motion, serve upon all other parties and file with the Clerk at 411 W. Fourth Street, Santa Ana, California 92701, either (a) the evidence upon which the opposing party will rely in opposition to the motion and a brief but complete memorandum which shall contain a statement of all the reasons in opposition thereto and the points and authorities upon which the opposing party will rely, or (b) a written statement that that party will not oppose the motion. Evidence presented in all opposing papers shall comply with the requirements of L.R. 7-6, 7-7 and 7-8.

DATED: February 20 , 2018

DIAMOND McCARTHY LLP
By:   /s/ *Kathy Bazoian Phelps*
Kathy Bazoian Phelps
Counsel for Robert P. Mosier
Permanent Receiver